| **Summons** | CIVIL DOCKET NO. 2284CVo2613 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:
**Gabriel Boustani and**
**Antoun Boustani**

Plaintiff(s)

vs.

**MetLife, Inc**

Defendant(s)

Michael Joseph Donovan          Clerk of Courts

Suffolk                          County

COURT NAME & ADDRESS:

SUPERIOR CIVIL COURT

SUFFOLK COUNTY COURTHOUSE

THREE PEMBERTON SQ. 12th Floor

BOSTON, MASSACHUSETTS 02108

---

THIS SUMMONS IS DIRECTED TO _____ **MetLife, Inc.** (Defendant's name)

<u>You are being sued.</u> The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Suffolk Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. <u>You must respond to this lawsuit in writing within 20 days.</u>

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business,          Suffolk          Court 3 Pemberton Sq., Boston, MA 02108     (address), by mail or in person **AND**

   b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

Demeo LLP, 66Long Wharf, Boston, MA 02110

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

Attest: a true copy

_Constable_

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate *Michael Joseph Donovan*

Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

### PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: *1/5/23*

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY |

| Plaintiff: | Antoun Boustani | Defendant: | MetLife, Inc. |
|---|---|---|---|
| ADDRESS: | Hakim Building, second floor | ADDRESS: | c/o CT Corporation System |
| Zouk Mikael, Lebanon | | 155 Federal Street | |
| | | Boston, MA 02110 | |
| Plaintiff: | Gabriel Boustani | Defendant Attorney: | |
| ADDRESS: | 140 Greenwood St | ADDRESS: | |
| Newton, MA 02459 | | | |
| | | BBO: | |
| Plaintiff Attorney: | Joseph L. Demeo | Defendant Attorney: | |
| ADDRESS: | 66 Long Wharf | ADDRESS: | |
| Boston, MA 02110 | | | |
| BBO: | 561254 | BBO: | |
| Plaintiff Attorney: | Mitchell Perne | Defendant Attorney: | |
| ADDRESS: | 66 Long Wharf | ADDRESS: | |
| Boston, MA 02110 | | | |
| BBO: | 703808 | BBO: | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A06 | Breach of Insurance Contract | F | ☒ YES   ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☒ YES   ☐ NO

Is there a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, §3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date

   1. Total hospital expenses                         _____

   2. Total doctor expenses                          _____

   3. Total chiropractic expenses                  _____

   4. Total physical therapy expenses             _____

   5. Total other expenses (describe below)      _____

                         Subtotal (1-5):   **$0.00**

B. Documented lost wages and compensation to date      _____

C. Documented property damages to date      _____

D. Reasonably anticipated future medical and hospital expenses      _____

E. Reasonably anticipated lost wages      _____

F. Other documented items of damages (describe below)

                         TOTAL (A-F):   **$0.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item #. | Detailed Description of Each Claim | Amount |
|---|---|---|

| | | | |
|---|---|---|---|
| 1. | Defendant failed to pay insurance claim owed under the policy | | $300,000.00 |
| 2. | Defendant engaged in pattern of conduct to prevent its insured from recieving payments owed under contract | | $600,000.00 |
| | | Total | $900,000.00 |

| | | |
|---|---|---|
| Signature of Attorney/Unrepresented Plaintiff: X | Date: | November 16, 2022 |

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution:

| | |
|---|---|
| Signature of Attorney/Unrepresented Plaintiff: X | Date: November 16, 2022 |

## CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P.a.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify (F) | |

*\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).*

*† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).*

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (F) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | |
|---|---|
| S01 Summary Process: Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (F) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E(X) | |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond; G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c. 12, § 11H | (A) |
| E24 Appeal from District Court Commitment; G.L. c. 123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only; G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M (X) | |
| E27 Minor Seeking Consent, G.L. c.112, § 12S(X) | |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

## COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                                      Superior Court Department
                                                                 of the Trial Court

| | |
|---|---|
| GABRIEL BOUSTANI and ANTOUN BOUSTANI, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. _____ ) |
| METLIFE, INC., | ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

Plaintiffs Gabriel Boustani and Antoun Boustani (collectively, "Plaintiffs" or the "Boustanis"), through their attorneys, Demeo LLP, allege the following as their Complaint against the Defendant MetLife, Inc. ("MetLife"):

## INTRODUCTION

1. This action arises from MetLife's refusal to honor the terms of several life insurance policies and distribute payments clearly owed to Plaintiffs. As detailed below, MetLife has refused to pay the Plaintiffs for meritorious claims, deliberately ignored Plaintiffs' communications regarding these claims, and engaged in a pattern of unfair and deceptive behavior designed to deter and frustrate Plaintiffs from exercising their contractual rights.

## PARTIES

2. Plaintiff Antoun Boustani ("Antoun") is an individual who resides in Beirut, Lebanon and is Gabriel Boustani's father.

1

3. Plaintiff Gabriel Boustani ("Gabriel") is an individual who resides in Newton, Massachusetts and is Antoun Boustani's son.

4. Upon information and belief, Defendant MetLife, Inc. is a Delaware corporation with a principal place of business at 200 Park Avenue, New York, New York. MetLife is one of the largest global providers of insurance with over 90 million customers in 60 countries and acquired American Life Insurance Company ("ALICO") in 2010 for $16 billion.

5. MetLife transacts business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to G.L. c. 212, §§3-4 and G.L. c. 223A §3.

7. Venue is proper in this Court pursuant to G.L. c. 223, §§ 1 and 8.

## FACTUAL ALLEGATIONS

### I.    The Life Insurance Policies

8. Between 1988 and 1997, Antoun purchased six life insurance policies (each individually a "Policy" and together, the "Policies") from ALICO in Beirut, Lebanon.

9. Four of these of these Policies are so-called "Income Growth Plans." Income Growth Plans provide the insured with a policy that combines life insurance and savings protection—providing death benefits in case of the insured's demise, but also providing dividends or other cash benefits to the insured if certain benchmarks are met.

10. The other two Policies are so-called "Flex Plans." Flex Plans are life insurance policies designed to give the insured numerous options in terms of premiums, face amounts, and investment objectives. Each Policy is described in detail below.

2

11. On June 28, 1988, Antoun purchased Policy ███7896, an Income Growth Plan with a Maturity Date[1] of June 28, 2022. The Basic Policy Face Amount is $50,000 and Antoun paid a $1,000 annual premium. Gabriel is one of the Policy's beneficiaries. A copy of Policy ███2896 is attached to this Complaint as Exhibit A.

12. On August 20, 1991, Antoun purchased Policy ███5486, an Income Growth Plan with a Maturity Date of August 20, 2021. The Basic Policy Face Amount is $50,000 and Antoun paid a $1,185 annual premium. Gabriel is one of the Policy's beneficiaries. A copy of Policy ███5486 is attached to this Complaint as Exhibit B.

13. On September 6, 1991, Antoun purchased Policy ███5677, an Income Growth Plan naming Gabriel as the insured with a Maturity Date of September 6, 2052. The Policy, which had a Cash Value of $19,089.59 in August 2022, will continue to increase in value until the Maturity Date. The Basic Policy Face Amount is $50,000 and Antoun paid a $415 annual premium. A copy of Policy ███5677 is attached to this Complaint as Exhibit C.

14. On July 17, 1995, Antoun purchased Policy ███5964, an Income Growth Plan with a Maturity Date of July 17, 2022. The Basic Policy Face Amount is $50,000 and Antoun paid a $1,350 annual premium. Gabriel is one of the Policy's beneficiaries. A copy of Policy ███5964 is attached to this Complaint as Exhibit D.

15. On September 9, 1997, Antoun purchased Policy ███1562, a Flex Plan, with a maturity date of September 9, 2022. The Basic Policy Face Amount is $50,000 and Antoun paid a $1,700 annual premium. Gabriel is the Policy's sole beneficiary. A copy of Policy ███1562 is attached to this Complaint as Exhibit E.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Policies.

16. On September 9, 1997, Antoun purchased Policy ████1563, a Flex Plan naming Gabriel as the insured with a Maturity Date of September 9, 2052. The Policy, which had a Cash Value of $80,330.52 in August 2022, will continue to increase in value until the Maturity Date. The Basic Policy Face Amount is $100,000 and Antoun paid a $2,150 annual premium. A copy of Policy ████1563 is attached to this Complaint as Exhibit F.

17. Each Policy purports to be a contract "made in consideration of the application for th[e] Policy and the payment, in advance of premiums."

18. Each Policy states that "all sums payable hereunder… shall be payable in the currency stated in the Policy Specification Schedule and shall be paid… in the Country of Payment stated in the Policy Specification Schedule."

19. For each Policy, the Policy Specification Schedules lists the country of payment as the United States.

20. For each Policy, the Policy Specification Schedules lists the currency of payment as the United States dollar.

21. Moreover, under the terms of these agreements, the Policy Owner is entitled to receive the Cash Value of the Policy upon written notice to the insurer.

22. Antoun is the Owner of all six ALICO Policies and has paid all insurance premiums due under the Policies.

## II.     The MetLife Acquisition of ALICO

23. In 2010, MetLife purchased ALICO for $16.2 billion. In doing so, it assumed all of ALICO's debt and contractual obligations, including the obligations ALICO owed to Plaintiffs pursuant to the Policies.

24. According to a March 2010 press release, MetLife's acquisition of ALICO, which it described as "one of the world's largest and most diversified international life insurance companies," aimed to "accelerate international expansion" and serve "as a powerful growth engine for the company."

25. MetLife also claimed to have "a proven track record in integrating complex multi-national acquisitions" and stated that it was "committed to ensuring a smooth transition for ALICO's customers...who will benefit by joining a financially strong, industry-leading organization."

26. Finally, MetLife boasted that its ALICO acquisition moved it into "a top five market position in many high growth emerging markets in...the Middle East."

27. Despite MetLife's assurances, it has only partially integrated ALICO's business into its own and has failed to honor the terms of existing ALICO polices or provide any sort of recourse for existing ALICO customers for disputed policy terms.

28. ALICO no longer has a website or any physical locations separate from MetLife's.

29. ALICO has no publicly-available contact information.

30. All documents relating to the Policies, including the Policy summaries attached to this Complaint as Exhibit G contain MetLife letterhead.

31. MetLife agents in Lebanon servicing ALICO polices do so under the name "MetLife Lebanon."

### III.    MetLife's Refusal to Payout on the Policies

32. In the fall of 2021, Antoun contacted MetLife Lebanon and asked to surrender the Policies for their Cash Value.

33. Despite the Policies requiring all payments be made in United States dollars, the MetLife Lebanon agent refused to pay the Policies' Cash Value in anything except Lebanese pounds.

34. Shortly thereafter, Gabriel and Antoun attempted to contact MetLife in the United States in order to obtain payment in the correct currency.

35. When MetLife customer service representatives were informed that the ALICO Policies were sold in Lebanon and required payment in the United States, they advised the Boustanis to execute a power of attorney permitting Gabriel to conduct all business relating to the Policies and to complete MetLife's policy surrender request forms ("Surrender Request Forms").

36. MetLife customer service representatives also informed the Boustanis that if any additional information was needed, they would reach out once they reviewed the Surrender Request Forms.

37. On December 9, 2021, Antoun executed a limited power of attorney at the United States embassy in Lebanon permitting Gabriel to conduct all business relating to the Policies.

38. On January 24, 2022, the Boustanis submitted the Surrender Request Forms to MetLife's mailing address in Warwick, RI—as instructed.

39. In February and March of 2022, the Boustanis' attorneys reached out to MetLife several times to check on the status of the Surrender Request Forms. Each time, MetLife stated that it was unable to find the Policies.

40. On March 18, 2022, Plaintiffs sent a demand letter (the "Demand Letter") by certified mail to MetLife's General Counsel at 200 Park Ave, New York, NY 10017 demanding payment of the Polices. A copy of the Demand Letter is attached hereto as Exhibit H. The Demand Letter was received and signed for by MetLife on March 23, 2022.

41. MetLife never responded to the Demand Letter.

42. From April through June of 2022, the Boustanis' attorneys tried several different methods of contacting MetLife.

43. Specifically, in May, Plaintiffs' attorneys spoke with MetLife's Head of External Communications and asked for the contact information of anyone at MetLife who could help. The MetLife employee stated that she could not give out anyone's contact information, but that someone from MetLife's legal department would be in touch.

44. Nobody from MetLife's legal department ever reached out, even after the Boustanis' attorney followed-up on May 26th, June 1st, and June 10th.

45. Plaintiffs' attorneys also completed a form on MetLife Lebanon's website requesting help with the Policies. Several weeks later, a representative from MetLife Lebanon reached out asking for additional information. Plaintiffs' attorneys responded the same day providing all of the information and received an automated email acknowledging receipt of the information. Over a month later, Plaintiffs' attorney received another automated email stating "request raised by you was closed" and that "this is an automated mail. Do not reply."

46. Plaintiffs' attorneys also called MetLife's attorneys at its corporate office. MetLife's attorneys refused to provide information about ALICO polices or even confirm whether there was anyone at MetLife who handled said polices. One MetLife attorney provided a phone number and suggested Plaintiffs call it, but the number was no longer in service. When Plaintiffs' attorneys tried calling the MetLife attorney back, she neither answered nor returned their voice message.

## COUNT I
### (Breach of Contract/Policy █████2896)

47. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

48. Policy █████2896 is an insurance contract originally between Antoun and ALICO. MetLife assumed ALICO's obligations under the agreement when it purchased ALICO in 2010.

49. Antoun paid all premiums owed under the Policy.

50. MetLife has refused to distribute the insurance proceeds owed under the Policy.

51. As a result, Plaintiffs have suffered, and will continue to suffer, significant financial harm in an amount to be determined at trial, but no less than $50,000.

## COUNT II
### (Breach of Contract/Policy ███5486)

52. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

53. Policy ███5486 is an insurance contract originally between Antoun and ALICO. MetLife assumed ALICO's obligations under the agreement when it purchased ALICO in 2010.

54. Antoun paid all premiums owed under the Policy.

55. MetLife has refused to distribute the insurance proceeds owed under the Policy.

56. As a result, Plaintiffs have suffered, and will continue to suffer, significant financial harm in an amount to be determined at trial, but no less than $50,000.

## COUNT III
### (Breach of Contract/Policy ███5677)

57. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

58. Policy ███5677 is an insurance contract originally between Antoun and ALICO. MetLife assumed ALICO's obligations under the agreement when it purchased ALICO in 2010.

59. Antoun paid all premiums owed under the Policy.

60. MetLife has refused to distribute the insurance proceeds owed under the Policy.

61. As a result, Plaintiffs have suffered, and will continue to suffer, significant financial harm in an amount to be determined at trial, but no less than $19,089.59.

## COUNT IV
### (Breach of Contract/Policy ███5964)

62. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

63. Policy ███5964 is an insurance contract originally between Antoun and ALICO. MetLife assumed ALICO's obligations under the agreement when it purchased ALICO in 2010.

64. Antoun paid all premiums owed under the Policy.

65. MetLife has refused to distribute the insurance proceeds owed under the Policy.

66. As a result, Plaintiffs have suffered, and will continue to suffer, significant financial harm in an amount to be determined at trial, but no less than $50,000.

## COUNT V
### (Breach of Contract/Policy ███1562)

67. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

68. Policy ███1562 is an insurance contract originally between Antoun and ALICO. MetLife assumed ALICO's obligations under the agreement when it purchased ALICO in 2010.

69. Antoun paid all premiums owed under the Policy.

70. MetLife has refused to distribute the insurance proceeds owed under the Policy.

71. As a result, Plaintiffs have suffered, and will continue to suffer, significant financial harm in an amount to be determined at trial, but no less than $50,000.

## COUNT VI
### (Breach of Contract/Policy ███1563)

72. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

73. Policy ▮▮▮1563 is an insurance contract originally between Antoun and ALICO. MetLife assumed ALICO's obligations under the agreement when it purchased ALICO in 2010.

74. Antoun paid all premiums owed under the Policy.

75. MetLife has refused to distribute the insurance proceeds owed under the Policy.

76. As a result, Plaintiffs have suffered, and will continue to suffer, significant financial harm in an amount to be determined at trial, but no less than $80,330.52.

## COUNT VII
(Breach of the Implied Covenant of Good Faith and Fair Dealing/Policy ▮▮▮2896)

77. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

78. Antoun was the Owner of Policy ▮▮▮2896, which is a contract and includes an implied covenant of good faith and fair dealing.

79. MetLife nevertheless undertook actions to destroy Plaintiffs' rights to receive the fruits of the Policy, by refusing to pay meritorious claims, deliberately ignoring Plaintiffs' communications regarding these claims, and engaging in a pattern of unfair and deceptive behavior designed to deter and frustrate Plaintiffs from exercising their contractual rights.

80. Plaintiffs have been damaged by MetLife's breach of the covenant of good faith and fair dealing in an amount to be determined at trial.

## COUNT VIII
(Breach of the Implied Covenant of Good Faith and Fair Dealing/Policy ▮▮▮5486)

81. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

82. Antoun was the Owner of Policy ▮▮▮5486, which is a contract and includes an implied covenant of good faith and fair dealing.

83. MetLife nevertheless undertook actions to destroy Plaintiffs' rights to receive the fruits of the Policy, by refusing to pay meritorious claims, deliberately ignoring Plaintiffs' communications regarding these claims, and engaging in a pattern of unfair and deceptive behavior designed to deter and frustrate Plaintiffs from exercising their contractual rights.

84. Plaintiffs have been damaged by MetLife's breach of the covenant of good faith and fair dealing in an amount to be determined at trial.

## COUNT IX
(Breach of the Implied Covenant of Good Faith and Fair Dealing/Policy ███5677)

85. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

86. Antoun was the Owner of Policy███5677, which is a contract and includes an implied covenant of good faith and fair dealing.

87. MetLife nevertheless undertook actions to destroy Plaintiffs' rights to receive the fruits of the Policy, by refusing to pay meritorious claims, deliberately ignoring Plaintiffs' communications regarding these claims, and engaging in a pattern of unfair and deceptive behavior designed to deter and frustrate Plaintiffs from exercising their contractual rights.

88. Plaintiffs have been damaged by MetLife's breach of the covenant of good faith and fair dealing in an amount to be determined at trial.

## COUNT X
(Breach of the Implied Covenant of Good Faith and Fair Dealing/Policy ███5964)

89. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

90. Antoun was the Owner of Policy███5964, which is a contract and includes an implied covenant of good faith and fair dealing.

91. MetLife nevertheless undertook actions to destroy Plaintiffs' rights to receive the fruits of the Policy, by refusing to pay meritorious claims, deliberately ignoring Plaintiffs' communications regarding these claims, and engaging in a pattern of unfair and deceptive behavior designed to deter and frustrate Plaintiffs from exercising their contractual rights.

92. Plaintiffs have been damaged by MetLife's breach of the covenant of good faith and fair dealing in an amount to be determined at trial.

## COUNT XI
### (Breach of the Implied Covenant of Good Faith and Fair Dealing/Policy ████1562)

93. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

94. Antoun was the Owner of Policy ████1562, which is a contract and includes an implied covenant of good faith and fair dealing.

95. MetLife nevertheless undertook actions to destroy Plaintiffs' rights to receive the fruits of the Policy, by refusing to pay meritorious claims, deliberately ignoring Plaintiffs' communications regarding these claims, and engaging in a pattern of unfair and deceptive behavior designed to deter and frustrate Plaintiffs from exercising their contractual rights.

96. Plaintiffs have been damaged by MetLife's breach of the covenant of good faith and fair dealing in an amount to be determined at trial.

## COUNT XII
### (Breach of the Implied Covenant of Good Faith and Fair Dealing/Policy ████1563)

97. Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

98. Antoun was the Owner of Policy ████1563, which is a contract and includes an implied covenant of good faith and fair dealing.

99. MetLife nevertheless undertook actions to destroy Plaintiffs' rights to receive the fruits of the Policy, by refusing to pay meritorious claims, deliberately ignoring Plaintiffs' communications regarding these claims, and engaging in a pattern of unfair and deceptive behavior designed to deter and frustrate Plaintiffs from exercising their contractual rights.

100.    Plaintiffs have been damaged by MetLife's breach of the covenant of good faith and fair dealing in an amount to be determined at trial.

### COUNT XIII
### (Violation of c. 93A and 176D)

101.    Plaintiffs repeat and incorporate by reference the allegations contained in the preceding Paragraphs of this Complaint.

102.    At all material times, MetLife was engaged in trade or commerce and was a "Person" as defined by Chapters 93A and 176D.

103.    MetLife is an insurance entity subject to the provisions of M.G.L. c. 176D.

104.    MetLife engaged in unfair and deceptive acts and practices by, among other things, engaging in a pattern of behavior designed to frustrate policyholders, prevent them from filing meritorious insurance claims, or receive insurance proceeds owed under ALICO policies.

105.    MetLife's conduct constitutes unfair and deceptive trade practices under G.L. c. 93A § 11.

106.    MetLife's unfair or deceptive acts and practices occurred primarily and substantially in the Commonwealth.

107.    Plaintiffs have suffered, and will continue to suffer, significant financial harm as a result of MetLife's misconduct.

108.    Plaintiffs are entitled to recover their reasonable attorney's fees and costs against MetLife pursuant to G.L. c. 9A, §11.

109.    MetLife's misconduct was willful and/or deliberate, warranting an award of multiple damages pursuant to G.L. c. 93A, §11.

### PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Plaintiffs hereby pray for the following relief from this Court:

(1) enter judgment in favor of the Plaintiffs and against Defendant on all counts in the Complaint; and

(2) award Plaintiffs damages plus interests, costs, and treble damages and attorneys' fees under M.G.L. c. 93A; and

(3) enter such other relief as this Court deems just, appropriate and equitable.

### JURY DEMAND

Plaintiffs hereby demand trial by jury on all claims so triable.

Respectfully submitted,

ANTOUN BOUSTANI and
GABRIEL BOUSTANI

By their attorneys,

Joseph L. Demeo (BBO No. 561254)
Mitchell J. Perne (BBO No. 703808)
Demeo LLP
66 Long Wharf
Boston, MA 02110
Tel: (617) 263-2600
Email: jdemeo@demeollp.com
         mperne@demeollp.com

Dated: November 16, 2022

14

# Exhibit A

№    2113



American Life
Insurance Company
WILMINGTON, DELAWARE, U.S.A.
INCORPORATED 1921
Registered in Lebanon Sub. No. 130 on 29 Nov. 1956
Covered by Decree No. 9817 of May 4, 1968

## INCOME GROWTH PLAN

HEREBY INSURES the Insured stated in the Policy Specification Schedule and agrees to pay the benefits provided herein subject to the terms and conditions hereof.

PREMIUMS for the Basic Policy are payable as of the Policy Date and thereafter during the lifetime of the Insured as stated in the Policy Specification Schedule.

ADDITIONAL PREMIUMS for any Supplementary Contracts attached hereto are payable on the same date as the premium payment date of the Basic Policy, such payments to continue until termination of such Supplementary Contracts in accordance with the terms thereof.

THIS CONTRACT is made in consideration of the application for this Policy and the payment, in advance, of premiums as herein provided.

POLICY YEARS, months and anniversaries will be determined from the Policy Date stated in the Policy Specification Schedule.

THE BENEFITS, provisions and conditions set forth in the Policy Specification Schedule and on this and the following pages are a part of this contract.

ALL SUMS payable hereunder by or to the Company shall be payable in the currency stated in the Policy Specification Schedule and shall be paid at the office of the Company in the Country of Payment stated in the Policy Specification Schedule.

IN WITNESS WHEREOF, AMERICAN LIFE INSURANCE COMPANY has caused this Policy to be executed as of the date of issue stated in the Policy Specification Schedule.



Registrar

President

## GENERAL PROVISIONS

**THE CONTRACT, ITS PROVISIONS AND LIMITA-TIONS:** This policy and the application for it, a copy of which is attached hereto and made a part hereof, together with any Supplementary Contract applied for which are attached hereto and stated to be a part hereof, constitute the entire Contract. All Statements made in applying for the Contract will be deemed, in the absence of fraud, representations and not warranties. No statement will be used to invalidate the Contract nor to defend against a claim under it unless contained in the written application.

**MODIFICATIONS:** Only the Chairman of the Board, President, Vice President, Regional Vice President, Actuary, Secretary, Assistant Vice President, Regional Secretary or Registrar of the Company can make or modify this Contract, extend the time for payment of any premium, or waive any of the Company's rights or requirements.

**BENEFITS:** Benefits are only payable by the Company upon delivery of this Policy together with satisfactory proof of the age of Insured and the title of Claimant.

**CHANGE IN PLAN:** This Policy may be changed to another plan of insurance with the consent of the Company, subject to such requirements and upon payment of such cost, if any, as the Company shall determine.

**INCONTESTABILITY:** This Policy, but not any part thereof granting Disability or Accident Benefits, shall be incontestable after it has been in force during the life time of the Insured for two years from its Date of Issue except for non-payment of premium.

**SUICIDE:** If the Insured commits suicide, while sane or insane, within two years from the date of Issue or from the date of any reinstatement of the Policy, the insurance under this Contract shall be a sum equal to the premiums paid and no more.

**AGE:** If the age of the Insured has been mis-stated, any amount payable under this Policy shall be such as the premium paid would have purchased at the correct age.

**OWNERSHIP AND RIGHTS UNDER THIS POLICY:** Subject to any statutory restrictions, all rights, privileges and options provided under this Contract not specifically granted to any other person shall be reserved to the owner alone, if the right to change the Beneficiary has been reserved; otherwise to the owner and Beneficiary jointly.

**CHANGES IN OWNERSHIP AND BENEFICIARY:** At any time during the continuance of this Contract, by filing written notice satisfactory to the Company.

a) The Owner may transfer his entire ownership to take effect during his lifetime, and

b) Unless otherwise provided herein the Beneficiary may be changed, with or without reserving the future right to change the Beneficiary in so far as the laws governing this Policy allow. No such transfer or change will take effect unless recorded by the Company, but when so recorded shall become effective as of the date the notice was signed, subject to any payment made or other action taken by the Company before such recording.

**RIGHTS IN EVENT OF DEATH OF OWNER OR BENEFICIARY:** The rights of an Owner other than the Insured whose death occurs during the continuance of this Contract shall pass to the Administrators, Executors or Assigns of the Owner unless otherwise provided herein. The rights of a Beneficiary whose death occurs prior to the expiration of a period of fifteen days commencing with the death of the Insured shall pass to the Owner, unless payment has been made to such Beneficiary or unless otherwise provided herein.

**ASSIGNMENT:** No assignment of this Policy, or of any interest therein, shall be binding on the Company unless recorded by the Company. Any assignment shall be subject to any payment made or other action taken by the Company before the assignment is received and recorded by the Company. The Company assumes no responsibility for the validity, effect or sufficiency of any assignment.

**OTHER WAYS IN WHICH THE PROCEEDS OF THIS POLICY MAY BE PAID:** The whole or part of the proceeds of this Policy may, with the Company's consent, be settled under one of the Optional methods of settlement then made available by the Company.

**TRANSFER OF RESIDENCE:** In the event that the Insured establishes residence outside the country of payment specified in the Policy Specification Schedule and in a country where the Company writes a similar Policy, the Policy may be transferred to the new country of residence, with the currency, Face Amount, Premium and Cash Values redetermined in accordance with the rules of the Company then in effect, subject to the payment by the Owner of any taxes and other direct expenses directly resulting from such transfer, provided, however, that no such transfer shall be effected if it would be in violation of any law or governmental regulation then in effect.

**GENERAL AND SPECIAL PROVISIONS REGULATING THE POLICY:** The above General Provisions shall apply to the Policy as long as the Contract is in force.

The following Special Provisions—PART I and PART II—shall apply to the Policy depending on the period the Contract has been in force and as provided in each of PART I and PART II.

# SPECIAL PROVISIONS—PART 1

The following Special Provisions — Part 1 shall apply to the Policy during the first seven years of the continuance of the Contract and shall be of no effect at the expiry of said period, unless the Policy, at Said Date, is under one of the Option (2) or (3) of the Elective Non-Forfeiture Provision defined herebelow under this Part.

**DEATH BENEFIT:** Subject to the provisions of this Policy, in case of death of the Insured, the Company shall pay to the Beneficiary the Basic Face Amount less any debt on the Policy.

**DIVIDENDS:** The Company will declare a Dividend at the end of the 7th Policy year. Prior to this date, No Dividends will be declared. The Dividend will be transferred to the IPA at the beginning of the 8th Policy year and will be subject to the Provisions of Part II of this Policy.

**PAYMENT OF PREMIUMS AND GRACE PERIOD:** All premiums are payable in advance, in exchange for a receipt signed by an Officer of the Company listed in the "Modifications" provision of this Policy. A grace period of 31 days from its due date will be allowed for payment of each premium after the first, during which period the Policy will remain in force. If death occurs within the Grace period any premium then due and unpaid will be deducted in settlement of this Policy.

**LAPSE:** If at the expiration of the Grace period, the premium remains unpaid and the Policy has not yet acquired a Basic Cash Value, the Policy shall lapse and have no further value.

**GUARANTEE OF MINIMUM BASIC VALUES:** The Company guarantees that the Basic Cash Value, the Basic reduced Paid Up Insurance and the Extended Term Insurance period will not be less than the values shown in the attached Table for the appropriate Plan, Age and Duration. The Basic Values shown assume (1) that premiums have been paid in full to the end of the period shown and (2) that there is no existing indebtedness.

**POLICY LOANS:** The Company will lend on sole security and proper assignment of this Policy during its continuance, an amount not exceeding the then current Loan Value. The Loan Value of this Policy is the amount which with interest to the next interest due date or next premium due date, if earlier, will equal the Basic Cash Value of the Policy less any existing indebtedness. The Company reserves the right to defer the granting of a loan, other than a loan to pay premiums, for a period not exceeding six months. Interest on the loan will accrue from day to day at a rate of interest determined by the Company, payable on each anniversary of the Policy. The Company shall have the right to redetermine the rate of interest applicable to new and existing loans. Interest not paid when due will be added to the principal of the loan upon which interest is calculated. The loan principal and accrued interest thereon will be deducted from any settlement under the Policy.

**AUTOMATIC NON-FORFEITURE PROVISIONS:** If, at the expiration of the Grace period, the premium remains unpaid and no non-forfeiture provision has been elected and the Policy has acquired a Basic Cash Value, the Policy will automatically continue in force as follows:
a) If the Loan Value is equal to or greater than the unpaid premium the Company will advance the premium due as an Automatic Premium Loan.
b) If the Loan Value is insufficient to cover any premium in default the Policy shall be continued in force for such proportion of the period covered by the premium due as the loan value bears to the premium.

**ELECTIVE NON-FORFEITURE PROVISION:**
**OPTION 1—CASH SURRENDER:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can surrender the Policy and receive the Basic Cash Value, less any indebtedness.

**OPTION 2 REDUCED PAID UP INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can continue the Policy as non-participating Reduced Paid Up Insurance for such amount as the Cash Value, less any indebtedness would purchase at the attained age of the Insured and on a basis determined by the Company. The Reduced Paid Up amount will be paid at age 75 or upon earlier death of the Insured.

**OPTION 3—EXTENDED TERM INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the company, the owner may continue the Policy as non-participating Extended Term Insurance in an amount equal to the Face Amount less any existing indebtedness. The period for which such extended Term Insurance will be continued shall be such as the Basic Cash Value less any indebtedness will purchase at the attained age of the Insured.

**REINSTATEMENT:** Unless this Policy has been cash surrendered, it may be reinstated at any time within three years after default in payment of premium, upon written application to the Company with the production of evidence of insurability, including good health, satisfactory to the Company together with payment of all overdue premiums and repayment or reinstatement of any loan, both with interest to the date of reinstatement at a rate of interest determined by the Company, compounded annually. In addition to the provisions of the Incontestability Clause herein, a reinstated Policy shall be contestable on account of fraud or misrepresentation of material facts pertaining to the reinstatement for two years from the date of reinstatement.

## SPECIAL PROVISIONS—PART II

The following Special Provisions—Part II shall apply to the Policy after the first seven years of its continuance provided the Policy is not then under Option (2) or Option (3) of the Elective Non-Forfeiture Provision stated in PART I.

### INVESTMENT AND PROTECTION ACCOUNT (IPA) PROVISIONS

**TRANSFER TO INVESTMENT AND PROTECTION ACCOUNT:** On the 7th Anniversary Date of the Policy, the Basic Cash Value of the Policy and the dividend, if any, as at the end of the 7th year of the Policy will be transferred to the Investment and Protection Account hereinafter called IPA as the opening balance of the Owner's account at the beginning of the 8th year of the Policy.

**PREMIUM:** The premium amount and the frequency are shown on the Policy Specification Schedule. Changes in frequency and increases and decreases in the amount of premium payments may be made at any time by the Owner subject to the minimum amount acceptable by the Company on such policies at that time.

**GRACE PERIOD:** If the Surrender value on any monthly due date is insufficient to cover the next monthly deduction, a grace period of 31 days shall be allowed for the payment of a premium sufficient to cover the monthly deduction. If the Insured dies within the grace period, the amount of the overdue monthly deduction will be deducted from the proceeds.

If sufficient premium is not paid by the end of the grace period, all coverage under this Policy will terminate and the Policy will end without value.

**REINSTATEMENT:** If the Policy is terminated because the grace period expired without sufficient premium being paid, this Policy may be reinstated during the Insured's life within 3 years after the expiry of the grace period. The reinstatement is subject to production of evidence of insurability satisfactory to the Company together with a payment of a minimum premium sufficient to keep the Policy in force for atleast 3 months. Said minimum premium shall not be less than the minimum deposit acceptable by the Company. Any Policy debt which existed at the end of the grace period will be reinstated if it is not paid. The effective date of reinstatement will be the monthly due date following the date of approval of reinstatement. The Policy cannot be reinstated if it has been surrendered by the Owner for its surrender value.

**IPA VALUE:** The IPA Value on any monthly due date is calculated as follows:

the IPA Value on the prior monthly due date;

less partial surrenders since the prior monthly due date;

less the Monthly Deduction;

plus one month's interest;

plus all net premiums received since the prior monthly due date.

**INTEREST:** The guaranteed minimum interest rate on IPA Value is shown on the Policy Specification Schedule. Interest in excess of the guaranteed rate may be applied in calculation of IPA Values at such increased rates as the Company may determine.

**NET PREMIUMS:** The net premium is equal to the premium paid. The net premium shall be added to the IPA account of the Policy.

**MONTHLY DEDUCTIONS:** The Company shall deduct monthly from the IPA Value the cost of life insurance if any and the premium for additional benefits provided by the Supplementary Contracts attached to the Policy. The cost of insurance rates shall not be greater than 1958 CSO Mortality Table.

### INSURANCE COVERAGE PROVISIONS

**Death Benefit:** The Company agrees to pay the Basic Face Amount or the IPA Value whichever is greater, to the Beneficiary in case of death of the Insured. The death benefit will be reduced by any Policy debt or partial surrenders.

**Changes in Basic Face Amount:** The Basic Face Amount of the Policy may be increased or decreased by written request from the Owner. The Basic Face Amount can never be less than the minimum as determined by the Company at that time. Any request for increase must be made on a supplemental application and shall be subject to evidence of insurability satisfactory to the Company. An increase will become effective on the monthly due date after the date of approval.

**Maturity Benefit:** The Policy will mature on the Elective Maturity Date shown on the Policy Specification Schedule. The maturity benefit shall be the IPA value less any indebtedness. The Owner can change the Elective Maturity date of the Policy by making a written request to the Company at least 3 months prior to the Elective Maturity Date. The Elective Maturity Date cannot be earlier than 10 years from the Policy date and later than the Policy Anniversary at age 75 last birthday of the Insured.

### SURRENDER AND LOAN PROVISIONS

**Surrender Value:** The Surrender Value of the Policy is its IPA Value less any Policy debt and less any surrender charge. The surrender charge, if any, will be applied only on the dividend transferred to IPA at the end of the 7th Policy year. There will be no surrender charge after the Policy has completed three years under the IPA.

**Total & Partial Surrenders:** The Policy may be surrendered on any monthly due date upon written request by the Owner to the Company. The amount payable on surrender shall be the surrender value of the Policy.

A partial surrender of this Policy may be made on any monthly due date during the lifetime of the Insured by written request of the Owner. The amount of the partial surrender must not exceed the surrender value less an amount to be determined by the Company. The Company will deduct a partial surrender charge from the partial surrender amount. The Company can defer payment of the partial surrender amount for a period not exceeding 6 months. The Company can also limit the number of partial surrenders in a Policy year.

When a partial surrender is made, the amount of the partial surrender will be deducted from the IPA Value and also from the Basic Face Amount. Partial surrender will not be permitted if it will result in a reduction of Basic Face Amount to less than the minimum Basic Face Amount as determined by the Company.

**Policy Loans:** Policy loan provisions as in part 1 will apply except that the Loan Value will be an amount which with interest to the end of Policy year will not exceed Surrender Value as of the date of the Policy loan.

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

Columns per age block: Cash Value | Paid Up Value | Ext. Term Yrs | Ext. Term Days

### AGE—35
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 12 | 48 | 3 | 313 |
| 25 | 95 | 7 | 18 |
| 37 | 136 | 9 | 94 |
| 51 | 180 | 11 | 117 |
| 64 | 217 | 12 | 272 |

### AGE—36
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 13 | 50 | 3 | 311 |
| 26 | 95 | 6 | 283 |
| 39 | 138 | 9 | 4 |
| 53 | 180 | 10 | 326 |
| 67 | 219 | 12 | 126 |

### AGE—37
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 13 | 48 | 3 | 204 |
| 27 | 95 | 6 | 183 |
| 41 | 139 | 8 | 271 |
| 55 | 179 | 10 | 167 |
| 70 | 220 | 11 | 340 |

### AGE—38
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 14 | 49 | 3 | 194 |
| 28 | 95 | 6 | 84 |
| 42 | 137 | 8 | 105 |
| 57 | 179 | 10 | 9 |
| 73 | 220 | 11 | 185 |

### AGE—39
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 14 | 47 | 3 | 97 |
| 29 | 95 | 5 | 350 |
| 44 | 138 | 8 | 3 |
| 60 | 181 | 9 | 266 |
| 76 | 221 | 11 | 28 |

### AGE—40
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 15 | 49 | 3 | 81 |
| 30 | 94 | 5 | 248 |
| 46 | 139 | 7 | 260 |
| 62 | 180 | 9 | 106 |
| 79 | 221 | 10 | 235 |

### AGE—41
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 16 | 50 | 3 | 59 |
| 32 | 97 | 5 | 206 |
| 48 | 139 | 7 | 151 |
| 65 | 182 | 8 | 359 |
| 82 | 221 | 10 | 77 |

### AGE—42
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 16 | 48 | 2 | 333 |
| 33 | 96 | 5 | 104 |
| 50 | 140 | 7 | 42 |
| 68 | 183 | 8 | 242 |
| 86 | 223 | 9 | 322 |

### AGE—43
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 17 | 49 | 2 | 306 |
| 34 | 95 | 5 | 4 |
| 52 | 140 | 6 | 297 |
| 70 | 182 | 8 | 86 |
| 89 | 223 | 9 | 164 |

### AGE—44
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 18 | 50 | 2 | 276 |
| 36 | 97 | 4 | 317 |
| 54 | 140 | 6 | 188 |
| 73 | 183 | 7 | 335 |
| 92 | 222 | 9 | 10 |

### AGE—45
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 18 | 49 | 2 | 193 |
| 37 | 96 | 4 | 218 |
| 56 | 140 | 6 | 81 |
| 76 | 183 | 7 | 218 |
| 96 | 223 | 8 | 252 |

### AGE—46
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 19 | 49 | 2 | 362 |
| 39 | 96 | 4 | 164 |
| 59 | 142 | 6 | 11 |
| 79 | 184 | 7 | 103 |
| 100 | 224 | 8 | 129 |

### AGE—47
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 20 | 50 | 2 | 130 |
| 40 | 96 | 4 | 72 |
| 61 | 142 | 5 | 270 |
| 82 | 184 | 6 | 354 |
| 103 | 223 | 7 | 345 |

### AGE—48
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 21 | 51 | 2 | 97 |
| 42 | 96 | 4 | 18 |
| 63 | 141 | 5 | 167 |
| 85 | 184 | 6 | 239 |
| 107 | 224 | 7 | 224 |

### AGE—49
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 21 | 49 | 2 | 30 |
| 43 | 97 | 3 | 295 |
| 66 | 143 | 5 | 94 |
| 88 | 184 | 6 | 137 |
| 111 | 224 | 7 | 104 |

### AGE—50
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 22 | 49 | 2 | 0 |
| 45 | 97 | 3 | 241 |
| 68 | 142 | 4 | 360 |
| 91 | 184 | 6 | 18 |
| 115 | 224 | 6 | 351 |

### AGE—51
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 23 | 50 | 3 | 334 |
| 47 | 98 | 3 | 185 |
| 71 | 143 | 4 | 286 |
| 95 | 185 | 5 | 296 |
| 120 | 226 | 6 | 253 |

### AGE—52
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 24 | 50 | 1 | 304 |
| 48 | 97 | 3 | 106 |
| 73 | 142 | 4 | 191 |
| 98 | 185 | 5 | 190 |
| 124 | 226 | 6 | 337 |

### AGE—53
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 25 | 50 | 1 | 273 |
| 50 | 98 | 3 | 53 |
| 76 | 143 | 4 | 120 |
| 102 | 186 | 5 | 105 |
| 128 | 225 | 6 | 25 |

### AGE—54
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 26 | 51 | 1 | 242 |
| 52 | 98 | 3 | 1 |
| 79 | 144 | 4 | 49 |
| 106 | 186 | 5 | 21 |
| 133 | 226 | 5 | 295 |

### AGE—55
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 27 | 51 | 1 | 212 |
| 54 | 98 | 2 | 314 |
| 82 | 144 | 3 | 345 |
| 109 | 185 | 4 | 287 |
| 137 | 225 | 5 | 186 |

### AGE—56
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 0 | 0 | 0 |
| 28 | 51 | 1 | 183 |
| 56 | 99 | 2 | 263 |
| 85 | 145 | 3 | 276 |
| 113 | 186 | 4 | 206 |
| 142 | 226 | 5 | 94 |

### AGE—57
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 2 | 0 | 20 |
| 30 | 53 | 1 | 173 |
| 59 | 100 | 2 | 229 |
| 88 | 145 | 3 | 209 |
| 118 | 187 | 4 | 139 |
| 148 | 227 | 4 | 152 |

### AGE—58
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 4 | 0 | 37 |
| 32 | 54 | 1 | 160 |
| 62 | 102 | 2 | 195 |
| 93 | 148 | 3 | 170 |
| 123 | 189 | 4 | 72 |
| 154 | 229 | 4 | 301 |

### AGE—59
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 7 | 0 | 66 |
| 35 | 58 | 1 | 161 |
| 66 | 105 | 2 | 173 |
| 97 | 149 | 3 | 117 |
| 129 | 191 | 4 | 16 |
| 161 | 231 | 4 | 235 |

### AGE—60
| Cash Value | Paid Up Value | Yrs | Days |
|---|---|---|---|
| 0 | 10 | 0 | 91 |
| 38 | 60 | 1 | 158 |
| 70 | 108 | 2 | 147 |
| 102 | 151 | 3 | 74 |
| 135 | 194 | 3 | 324 |
| 168 | 233 | 4 | 169 |

Age 35 – Age 60

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

**AGE—0**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 2 | 29 | 1 | 183 |
| 4 | 4 | 57 | 3 | 139 |
| 5 | 6 | 82 | 5 | 222 |
| 6 | 9 | 120 | 9 | 3 |
| 7 | 11 | 141 | 10 | 349 |

**AGE—1**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 2 | 25 | 1 | 211 |
| 4 | 5 | 69 | 4 | 196 |
| 5 | 7 | 93 | 6 | 296 |
| 6 | 10 | 128 | 9 | 332 |
| 7 | 13 | 161 | 12 | 263 |

**AGE—2**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 9 |
| 3 | 2 | 27 | 1 | 233 |
| 4 | 5 | 66 | 4 | 235 |
| 5 | 10 | 103 | 7 | 300 |
| 6 | 10 | 174 | 9 | 233 |
| 7 | 14 | 166 | 13 | 125 |

**AGE—3**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 3 | 40 | 2 | 227 |
| 4 | 5 | 64 | 2 | 251 |
| 5 | 9 | 99 | 7 | 238 |
| 6 | 11 | 132 | 10 | 193 |
| 7 | 14 | 162 | 12 | 309 |

**AGE—4**

| End Of Yr | Cash Value | Paid Up Value | Ext. Yrs |
|---|---|---|---|
| 2 | 0 | 0 | 0 |
| 3 | 3 | 39 | 2 |
| 4 | 6 | 74 | 5 |
| 5 | 9 | 108 | 8 |
| 6 | 12 | 139 | 10 |
| 7 | 15 | 167 | 13 |

**AGE—5**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 3 | 37 | 2 | 258 |
| 4 | 6 | 72 | 5 | 192 |
| 5 | 9 | 104 | 8 | 14 |
| 6 | 13 | 145 | 11 | 133 |
| 7 | 16 | 172 | 13 | 325 |

**AGE—6**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 3 | 36 | 2 | 253 |
| 4 | 6 | 69 | 5 | 124 |
| 5 | 10 | 111 | 8 | 213 |
| 6 | 13 | 140 | 10 | 329 |
| 7 | 17 | 176 | 14 | 148 |

**AGE—7**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 3 | 35 | 2 | 234 |
| 4 | 7 | 78 | 5 | 356 |
| 5 | 10 | 107 | 8 | 76 |
| 6 | 14 | 145 | 11 | 146 |
| 7 | 18 | 180 | 14 | 338 |

**AGE—8**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 3 | 33 | 2 | 202 |
| 4 | 7 | 75 | 5 | 255 |
| 5 | 11 | 114 | 8 | 255 |
| 6 | 15 | 150 | 11 | 334 |
| 7 | 19 | 183 | 15 | 166 |

**AGE—9**

| End Of Yr | Cash Value | Paid Up Value | Ext. Yrs |
|---|---|---|---|
| 2 | 0 | 0 | 0 |
| 3 | 4 | 33 | 3 |
| 4 | 7 | 72 | 5 |
| 5 | 11 | 110 | 8 |
| 6 | 15 | 144 | 11 |
| 7 | 19 | 176 | 14 |

**AGE—10**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 4 | 41 | 3 | 36 |
| 4 | 8 | 80 | 5 | 345 |
| 5 | 12 | 115 | 8 | 316 |
| 6 | 16 | 148 | 12 | 30 |
| 7 | 20 | 179 | 15 | 151 |

**AGE—11**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 4 | 49 | 2 | 345 |
| 4 | 8 | 77 | 5 | 256 |
| 5 | 12 | 111 | 8 | 214 |
| 6 | 16 | 143 | 11 | 276 |
| 7 | 21 | 181 | 16 | 22 |

**AGE—12**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 3 | 0 | 0 |
| 3 | 4 | 36 | 2 | 293 |
| 4 | 8 | 73 | 5 | 179 |
| 5 | 13 | 113 | 9 | 59 |
| 6 | 17 | 157 | 12 | 196 |
| 7 | 22 | 183 | 16 | 203 |

**AGE—13**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 4 | 37 | 2 | 247 |
| 4 | 8 | 73 | 5 | 115 |
| 5 | 13 | 112 | 8 | 346 |
| 6 | 18 | 150 | 12 | 341 |
| 7 | 22 | 176 | 16 | 38 |

**AGE—14**

| End Of Yr | Cash Value | Paid Up Value | Ext. Yrs |
|---|---|---|---|
| 2 | 0 | 0 | 0 |
| 3 | 4 | 36 | 2 |
| 4 | 9 | 78 | 5 |
| 5 | 13 | 108 | 8 |
| 6 | 18 | 144 | 12 |
| 7 | 23 | 178 | 16 |

**AGE—15**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 4 | 34 | 2 | 181 |
| 4 | 9 | 75 | 5 | 278 |
| 5 | 14 | 112 | 8 | 136 |
| 6 | 19 | 147 | 13 | 63 |
| 7 | 24 | 179 | 16 | 273 |

**AGE—16**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 5 | 42 | 3 | 22 |
| 4 | 10 | 80 | 6 | 134 |
| 5 | 15 | 116 | 9 | 350 |
| 6 | 20 | 149 | 13 | 233 |
| 7 | 25 | 179 | 16 | 328 |

**AGE—17**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 5 | 40 | 2 | 364 |
| 4 | 10 | 77 | 6 | 95 |
| 5 | 15 | 112 | 9 | 276 |
| 6 | 21 | 151 | 14 | 6 |
| 7 | 27 | 187 | 17 | 207 |

**AGE—18**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 5 | 39 | 3 | 345 |
| 4 | 10 | 74 | 6 | 59 |
| 5 | 16 | 115 | 10 | 102 |
| 6 | 22 | 152 | 14 | 103 |
| 7 | 28 | 186 | 17 | 167 |

**AGE—19**

| End Of Yr | Cash Value | Paid Up Value | Ext. Yrs |
|---|---|---|---|
| 2 | 0 | 0 | 0 |
| 3 | 5 | 37 | 2 |
| 4 | 11 | 79 | 6 |
| 5 | 17 | 117 | 10 |
| 6 | 23 | 153 | 14 |
| 7 | 25 | 186 | 17 |

**AGE—20**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 5 | 43 | 3 | 176 |
| 4 | 12 | 83 | 7 | 99 |
| 5 | 18 | 120 | 11 | 47 |
| 6 | 24 | 156 | 14 | 198 |
| 7 | 31 | 191 | 17 | 105 |

**AGE—21**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 6 | 41 | 3 | 158 |
| 4 | 12 | 80 | 7 | 39 |
| 5 | 19 | 122 | 11 | 182 |
| 6 | 25 | 154 | 14 | 152 |
| 7 | 33 | 196 | 17 | 223 |

**AGE—22**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 6 | 40 | 3 | 137 |
| 4 | 13 | 83 | 7 | 206 |
| 5 | 20 | 123 | 11 | 219 |
| 6 | 27 | 160 | 14 | 235 |
| 7 | 36 | 194 | 17 | 66 |

**AGE—23**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 7 | 45 | 3 | 325 |
| 4 | 13 | 80 | 7 | 130 |
| 5 | 21 | 124 | 11 | 250 |
| 6 | 28 | 160 | 14 | 222 |
| 7 | 36 | 197 | 17 | 38 |

**AGE—24**

| End Of Yr | Cash Value | Paid Up Value | Ext. Yrs |
|---|---|---|---|
| 2 | 0 | 0 | 0 |
| 3 | 7 | 43 | 3 |
| 4 | 14 | 83 | 7 |
| 5 | 22 | 125 | 11 |
| 6 | 30 | 164 | 14 |
| 7 | 38 | 200 | 16 |

**AGE—25**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 7 | 41 | 3 | 258 |
| 4 | 15 | 85 | 8 | 1 |
| 5 | 23 | 126 | 11 | 217 |
| 6 | 31 | 163 | 14 | 112 |
| 7 | 40 | 202 | 16 | 252 |

**AGE—26**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 8 | 36 | 4 | 53 |
| 4 | 16 | 83 | 8 | 73 |
| 5 | 24 | 126 | 11 | 162 |
| 6 | 33 | 167 | 14 | 95 |
| 7 | 42 | 204 | 16 | 137 |

**AGE—27**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 8 | 44 | 4 | 143 |
| 4 | 17 | 89 | 8 | 143 |
| 5 | 25 | 126 | 11 | 85 |
| 6 | 35 | 170 | 14 | 47 |
| 7 | 44 | 205 | 16 | 3 |

**AGE—28**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 9 | 47 | 4 | 143 |
| 4 | 17 | 85 | 7 | 330 |
| 5 | 27 | 134 | 13 | 123 |
| 6 | 36 | 168 | 13 | 222 |
| 7 | 47 | 211 | 15 | 312 |

**AGE—29**

| End Of Yr | Cash Value | Paid Up Value | Ext. Yrs |
|---|---|---|---|
| 2 | 0 | 0 | 0 |
| 3 | 9 | 46 | 4 |
| 4 | 18 | 87 | 7 |
| 5 | 28 | 131 | 11 |
| 6 | 38 | 170 | 13 |
| 7 | 49 | 211 | 15 |

**AGE—30**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 9 | 44 | 4 | 76 |
| 4 | 19 | 89 | 7 | 223 |
| 5 | 30 | 135 | 10 | 349 |
| 6 | 40 | 182 | 12 | 226 |
| 7 | 51 | 211 | 14 | 321 |

**AGE—31**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 10 | 47 | 4 | 94 |
| 4 | 20 | 90 | 7 | 342 |
| 5 | 31 | 134 | 10 | 198 |
| 6 | 42 | 174 | 12 | 262 |
| 7 | 54 | 215 | 14 | 211 |

**AGE—32**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 10 | 45 | 4 | 6 |
| 4 | 21 | 90 | 7 | 177 |
| 5 | 33 | 137 | 10 | 141 |
| 6 | 45 | 175 | 12 | 126 |
| 7 | 56 | 216 | 14 | 15 |

**AGE—33**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs | Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 11 | 47 | 4 | 43 |
| 4 | 21 | 91 | 7 | 99 |
| 5 | 34 | 138 | 9 | 342 |
| 6 | 46 | 176 | 11 | 349 |
| 7 | 59 | 216 | 13 | 250 |

**AGE—34**

| End Of Yr | Cash Value | Paid Up Value | Ext. Yrs |
|---|---|---|---|
| 2 | 0 | 0 | 0 |
| 3 | 12 | 50 | 4 |
| 4 | 23 | 93 | 7 |
| 5 | 36 | 137 | 9 |
| 6 | 49 | 180 | 11 |
| 7 | 62 | 219 | 13 |

Paid up value is payable at age 75 or earlier death

Age 0

## POLICY SPECIFICATION SCHEDULE

| | | | |
|---|---|---|---|
| POLICY NUMBER | ███2,896 | POLICY DATE | : JUNE 28, 1988 |
| INSURED | ANTOUN GEBRAN BOUSTANI | AGE | : 41 |
| OWNER | THE INSURED | MATURITY AGE | : 75 YEARS OR EARLIER |
| BENEFICIARY | : AS STATED IN APPLICATION | ELECTIVE MATURITY DATE | : JUNE 28, 2022 |
| COUNTRY OF PAYMENT | : WILMINGTON, DELAWARE, U.S.A. | CURRENCY OF PAYMENT | : U.S.$. |
| BASIC POLICY FACE AMOUNT | : $50,000*** | PREMIUM | : $1,000.00 |
| SUPPLEMENTARY CONTRACTS | : FORM 160A- | | 529.20 |

| | | | |
|---|---|---|---|
| PREMIUM FREQUENCY | EVERY 12 MONTHS | TOTAL | : $1,529.20 |

"See Endorsements shown herebelow"

"See War Restriction Clause M2 Attached hereto"

DATE OF ISSUE    : JUNE 30, 1988          REGISTRAR :

### ENDORSEMENTS

(to be made by Company only)

1. The Company guarantees that the Minimum interest rate on Investment and Protection Account will not be less than 4½ % per annum.

2. The Company guarantees that it will declare a Dividend at the end of the 7th Policy year which will not be less than 25 % of the 7th year Cash Value

The Company shall not be obliged to accept or make any payment under this Policy except by cheque or draft in the currency of this Policy on a banking office operating where the currency of this Policy is legal tender for payment of all debts, and such cheque or draft shall constitute payment only if and to the extent that it is paid by such banking office in due course.

In the event of the Company agreeing to accept or make any payment hereunder in a way or at a place or time different from the requirements prescribed herein such payment shall not prevent, waive, diminish, or impair the applicability of such requirements to any other transaction than the one thus made.

AMENDMENT To Policy No. ███2,896          attached thereto and
forming an integral part thereof:

### WAR RESTRICTION CLAUSE

It is hereby agreed that, notwithstanding the provisions of this Policy and any
Supplementary Contracts made a part thereof, (excluding Accidental Death
Benefit Supplementary Contracts), if the Insured dies as a direct or indirect
consequence of war or warlike operations (whether war be declared or not),
or of invasion, act of foreign enemy, hostilities, mutiny, riot, civil commotion,
civil war, rebellion, revolution, insurrection, conspiracy, military or usurped
power, martial law or state of siege, or any of the events or causes which
determine the proclamation or maintenance of martial law or state of siege,
the Company's liability under this policy shall be limited to the reserves under
the Policy reduced by any indebtedness to the Company existing against this
Policy including interest due or accrued.

**AMERICAN LIFE INSURANCE COMPANY**



M—2

SUPPLEMENTARY CONTRACT - FORM 160 A

# FAMILY MEDICAL ASSISTANCE INSURANCE

American Life Insurance Company of Wilmington, Delaware, U.S.A. has issued this Supplementary Contract in conjunction with but not as a part of policy to which it is attached. It is valid only if the above Form and Serial Numbers are stated on the face of the policy or are endorsed on the policy.

## TABLE OF BENEFIT AMOUNTS

| | | |
|---|---|---|
| Hospital Daily Benefit: | $100.00 | per day for up to 70 days. |
| Miscellaneous Hospital Expense Benefit: | 10 times the Hospital Daily Benefit. | |
| Emergency Accident Out-Patient Benefit: | 2 times the Hospital Daily Benefit. | |
| Surgical Benefit Maximum: | $1,600 | per confinement. |
| In-Hospital Medical Expense Benefit: | $20.00 | per visit for up to 70 visits |

## DESCRIPTION OF BENEFITS

Subject to the provisions, conditions, and limitations of this Supplementary Contract the Company will pay the following benefits if, while this Supplementary Contract is in force, the Insured or an Insured Dependent, as a result of injury or sickness, is confined in a hospital, on the recommendation of a qualified physician or surgeon other than himself:

HOSPITAL DAILY ROOM AND BOARD BENEFIT: The Company will pay the amount actually charged by the hospital for room and board for each day the Insured or an Insured Dependent is so confined as a registered bed patient but not to exceed per day the Hospital Daily Benefit set forth in the above nor to exceed in the aggregate 70 days for any one period of confinement. Two or more confinements for the same cause of for any complications arising therefrom shall be regarded for this purpose as one confinement if such confinements are not separated by more than 90 days.

MISCELLANEOUS HOSPITAL EXPENSE BENEFIT: If benefits are payable under 1 above the Company will also pay the amount actually charged by hospital for any of the following services customarily supplied by the hospital, but not to exceed in the aggregate the Miscellaneous Hospital Expense Benefit set forth in the Table above for all such services rendered during any one period of confinement:

Use of operating room, treatment rooms and equipment.
Drugs and medicines prescribed by the attending physician.
Dressings, ordinary splints and plaster casts but excluding special braces, appliances and equipment.
Laboratory examinations.
Electrocardiograms.
Physical therapy.
Basal metabolism tests.
Anesthesia and oxygen and administration thereof.
X-ray examinations, but excluding X-ray therapy, radium therapy, radium and isotopes.
Intravenous injections and solutions.
Administration of blood and blood plasma, but excluding the cost of blood or blood plasma.
Ambulance service to or from the hospital of confinement but not to exceed the amount of the Daily Benefit.

EMERGENCY ACCIDENT OUT-PATIENT BENEFIT: If as a result of injury the Insured or an Insured Dependent receives necessary emergency out-patient treatment in a hospital within 24 hours after the accident causing such injury, the Company will pay the amount actually charged by the hospital for services listed under 2 above but not to exceed in the aggregate the Emergency Accident Out-Patient Benefit set forth in the Table above for all such services rendered for any one injury.

SURGICAL BENEFIT: The Company will pay the amount actually charged for any surgical procedures performed in the hospital during a period of hospital confinement for which benefits are payable under 1 or 3 above, but not to exceed the appropriate percentage of the Surgical Benefit Maximum set forth in Table above, such percentage being shown in the Schedule of Operations on the back page.

If more than one surgical operation is performed during any one period of hospital confinement, the Surgical Benefit Maximum is the maximum payable for all such operations.

For any operation not listed in the Schedule of Operations the Company will pay an amount based on a listed operation of comparable severity or gravity as determined by the Company unless payment for such operation is expressly excepted in such Schedule or by the provisions of this Supplementary Contract.

IN-HOSPITAL MEDICAL EXPENSE BENEFIT: If benefits are payable under 1 above and the hospital confinement for which such benefits are payable does not involve a surgical operation or procedure for which benefits are payable under 4 above, the Company will pay the amount actually charged for medical care and treatment by a duly licensed physician during such confinement, but not to exceed the In-Hospital Medical Expense Benefit set forth in the above for each treatment nor for more than one treatment per day nor for more than 70 such treatments for any one period of confinement.

TOTAL AND PERMANENT DISABILITY BENEFIT: If the Insured becomes disabled and premiums on the policy are waived under the terms of a Total and Permanent Disability Supplementary Contract, the Company will also waive the premium for this Supplementary Contract.

## DEFINITIONS

**INSURED:** means the person named as the Insured on the face of the policy to which this Supplementary Contract is attached.

**INSURED DEPENDENT:** means only (1) the Insured's wife named in the application for this Supplementary Contract or in an endorsement hereto and each of the Insured's children named in such application or endorsement who is at least 14 days old and who at the date of application has not attained 17.

**HOSPITAL:** means a lawfully operated institution for the care and treatment of injured or sick persons which provides facilities for diagnosis, major surgery and full time nursing services and is not primarily a rest or convalescent home or similar establishment or, other than incidentally, a place for alcoholics or drug addicts.

**INJURY:** means bodily injury to the Insured or an Insured Dependent caused by an accident which is sustained and causes loss commencing while this Supplementary Contract is in force and resulting directly and independently of all other causes in loss covered hereunder.

**SICKNESS:** means sickness or disease of the Insured or an Insured Dependent having its inception more than thirty days after the effective date or statement date of this Supplementary Contract or the date if later, such person was first included hereunder, and causing loss covered hereunder.

## EXCLUSIONS

This Supplementary Contract does not cover any charges for or in respect of:

1. Any injury or sickness caused directly or indirectly, wholly or partly, by (a) self-destruction or intentionally self-inflicted injury or any attempt at, while sane or insane; (b) declared or undeclared war or any act thereof, or strikes, riots, civil war, revolution or any warlike operations; (c) service in armed forces of any country, combination of countries or International Authority; or (d) any violation or attempted violation of the law or resistance to arrest;

2. (a) Pregnancy, miscarriage or childbirth; (b) mental or nervous disorders, chronic alcoholism, drug addiction or pulmonary tuberculosis (diagnosis as such); (c) cosmetic or plastic surgery; (d) dental care or surgery unless occasioned by a covered injury; or (e) general check-up, convalescent, custodial or rest care;

3. Treatment or surgery for tonsils, adenoids, hernia or a disease peculiar to the female generative organs until the person undergoing such treatment or surgery has been continuously covered under this Supplementary Contract for a period of 120 days immediately preceding such treatment or surgery;

4. Any injury or illness for which compensation is payable under any government law or program, or for which benefits are payable under any medical assistance insurance policy except to the extent that such charges are not reimbursed by such laws, programs or other policies.

## GENERENAL PROVISIONS

**ENTIRE CONTRACT; CHANGES:** This Supplementary Contract, including the application therefor and any endorsements hereto, constitute the entire contract of insurance. No change in this Supplementary Contract shall be valid until approved by an executive officer of the Company and unless approval be endorsed hereon or attached hereto. No agent has authority to change this Supplementary Contract or to waive any of its provisions.

**RENEWAL AND GRACE PERIOD:** This Supplementary Contract may be renewed with the consent of the Company at the end of any period for which premium hereon has been paid, by the payment before the grace period expires of the premium then due at the Company's premium rate then in force for loss prior to any premium due date the Company shall have delivered to the Insured or mailed to his last address shown on the Company's records, a written notice of its intention not to accept renewal of this Supplementary Contract, the grace period provided in the policy to which this Supplementary Contract is attached shall be granted for the payment of any premium under this Supplementary Contract after the first, and during this period of grace the insurance under this Supplementary Contract shall continue in force. If, at the expiration of the grace period, any premium due and payable under this Supplementary Contract shall not have been paid and the Automatic Premium Loans provision of the policy to which this Supplementary Contract is attached is effective, the said provision shall apply to the premium hereunder. Should this Supplementary Contract terminate within the grace period by the death of the Insured, any premium then due and unpaid will be deducted from any amount payable under the policy or this Supplementary Contract.

**TERMINATION:** Unless otherwise provided for in the relevant laws of the country, this Supplementary Contract shall automatically terminate: (1) if any premium remains unpaid after the grace period; (2) if the policy is surrendered or converted under one of the Options provided for therein; (3) if the policy becomes paid-up, matures or terminates; and (4) on policy anniversary date occurring on or directly following the Insured 60th birthday.

Termination of this Supplementary Contract by the Insured or by the Company shall be without prejudice to any claim arising prior to such termination.

Insurance coverage under this Supplementary Contract for an Insured Dependent will automatically terminate (1) in the case of the wife on the anniversary date occurring on or directly following her 55th birthday and (2) in the case of a child on policy anniversary date occurring on or directly following his 18th birthday or on earlier marriage.

Whenever this Supplementary Contract or coverage hereunder shall be terminated, the additional premium therefore shall no longer be payable, there shall be no value on account thereof except for the return of the unearned portion, if any, of such additional premium paid which covered the period during which termination became effective, together with any additional premiums paid which fall due after termination. The subsequent payment or acceptance of any premium hereunder shall not create any liability except for the return of such premium.

**MISSTATEMENT OF AGE:** If the age of the Insured or an Insured Dependent has been misstated, any amount payable under this Supplementary Contract shall be such as the premiums paid would have purchased at the correct age. If at the correct age the Insured or Insured Dependent would not have been eligible for coverage under this Supplementary Contract no benefits will be payable.

**REINSTATEMENT:** If default is made in the payment of the agreed premium for this Supplementary Contract, the insurance hereunder may be reinstated with the consent of the Company but only if the policy to which this Supplementary Contract is attached is in full force with no premium in default thereon. In the event of such reinstatement, this Supplementary Contract shall only cover loss resulting from such injury as may be sustained after the date of reinstatement and loss due to sickness as may begin more than 30 days after the date of reinstatement.

**NOTICE OF CLAIM:** Written notice of claim must be given to the Company within ten days after the date of commencement of confinement in the spital. Notice given by or on behalf of the Insured to the Company at its office specified on the face of the policy or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

**CLAIM FORMS:** Upon receipt of a notice of claim, the Company will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice, the claimant shall be deemed to have complied with the requirements of this Supplementary Contract as to proof of loss upon submitting, within the time fixed on the Supplementary Contract for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

**PROOF OF LOSS:** Affirmative proof of hospital confinement and surgery in such forms as the Company shall prescribe must be furnished to it at the Insured's expense within 31 days after the date of termination of such hospital confinement.

**PAYMENT OF CLAIMS:** Benefits payable under this Supplementary Contract will be paid as they accrue immediately upon receipt of due written proof of loss and shall be payable to the Owner named on the face of the policy. Any benefits unpaid at the Insured's death shall be paid to the beneficiary under the policy.

**PHYSICAL EXAMINATION:** The Company at its own expense shall have the right and opportunity to examine the person of the Insured or an Insured Dependent when and as often as it may reasonably require during the pendency of a claim hereunder.

**LEGAL ACTIONS:** No action at law or in equity shall be brought to recover on this Supplementary Contract prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this Supplementary Contract. No such action shall be brought after the expiration of two years after the time written proof of loss is required to be furnished.

**ASSIGNMENT:** No assignee under the policy shall have the right to receive any benefit payable under this Supplementary Contract.

**NON-PARTICIPATION:** This Supplementary Contract does not participate in the profits or surplus of the Company.

**CONSIDERATION:** This Supplementary Contract is issued in consideration of the application for this Supplementary Contract, a copy of which is attached to the policy, and payment of the premium for this Supplementary Contract. The premium for this Supplementary Contract is included in the premium stated in the policy data on the face of the policy or by endorsement thereto and is payable under the same conditions, except that such premium shall continue to be payable whenever this Supplementary Contract terminates.

**CURRENCY:** All sums payable hereunder by or to the Company shall be paid in the Currency specified on the face of the policy.

**EFFECTIVE DATE:** The effective date of this Supplementary Contract shall be the policy Date of the policy unless a different effective date is shown.

IN WITNESS WHEREOF, the American Life Insurance Company has caused this Supplementary Contract to be executed as of JUNE 30, 1988 which is its date of issue.

Richard R Collins
President

ICOME-FORM 160-A - IM-1-87

# SCHEDULE OF OPERATIONS

| Description of Surgical Operation | Percentage of Maximum Benefit |
|---|---|
| **ABDOMEN** — Appendectomy | 50.00% |
| Resection of bowel | 75.00 |
| Resection of stomach | 75.00 |
| Gastro-enterostomy | 62.50 |
| Removal of gall bladder | 75.00 |
| Cutting into abdominal cavity for diagnosis, treatment or removal of one or more organs therein except as otherwise herein provided | 50.00 |
| Two or more surgical procedures performed through the same abdominal incision will be considered as one operation | |
| **ABCESS** — Incision of superficial abcess, boil or furuncle, one or more | 5.00 |
| Treatment or carbuncle or abscess requiring hospitalization, one or more | 12.50 |
| **AMPUTATION OF** — Fingers or toes, each | 7.50 |
| Hand, forearm or foot at ankle | 25.00 |
| Leg, arm or thigh | 37.50 |
| Thigh at hip | 75.00 |
| **BREAST** — Amputation of one or both, radical with resection into axilla | 75.00 |
| Amputation of one or both, simple | 37.50 |
| **CHEST** — Complete thoracoplasty | 100.00 |
| Removal of lung or portion of lung | 75.00 |
| Cutting into thoracic cavity for diagnosis, or treatment of organs therein, tapping excepted | 25.00 |
| Removal of pus, tapping excepted | 12.50 |
| Artificial pneumothorax | 12.50 |
| Refills — each but not more than six | 2.50 |
| Bronchoscopy — Diagnostic | 12.50 |
| Operative, excluding biopsy | 25.00 |
| **EAR** — Cutting ear drum | 5.00 |
| Mastoidectomy — radical — one side | 50.00 |
| Mastoidectomy — radical — both sides | 75.00 |
| Fenestration, one or both sides | 100.00 |
| **ESOPHAGUS** — Operation for stricture | 25.00 |
| Use of gastroscope | 12.50 |
| **EYE** — Removal of foreign body, from cornea | 2.50 |
| Detached retina — multiple incisions | 100.00 |
| Cataract | 50.00 |
| Glaucoma | 31.25 |
| Removal of eyeball | 31.25 |
| Removal of pterygium | 15.00 |
| Incision of stye or chalazion | 5.00 |
| **FRACTURES, treatment of** — Simple Collar bone, shoulder blade, or forearm, one bone | 15.00 |
| Coccyx, tarsal, metatarsals or os calcis | 10.00 |
| Thigh | 37.50 |
| Upper arm or leg, one bone | 25.00 |
| Fingers or toes, each, or rib | 5.00 |
| Forearm — two bones, knee cap, or pelvis, not requiring traction | 20.00 |
| Leg, two bones | 25.00 |
| Jaw, lower | 17.50 |
| Carpals, metacarpals, nose, ribs two or more, or Sternum | 12.50 |
| Pelvis, requiring traction | 31.25 |
| Vertebrae, transverse processes, each | 6.25 |
| Vertebrae, compression fracture, one or more | 37.50 |
| Wrist | 11.25 |
| Compound — Open | |
| For a compound fracture increase the above by one-half; for a fracture requiring an open operation including bone grafting or bone splicing, double the above percentage; except that the maximum benefit shall not exceed | 100.00 |
| **GENITO-URINARY TRACT** — Removal of kidney | 75.00 |
| Fixation of kidney | 75.00 |
| Removal of tumors or stones in kidney, ureter, or bladder — by cutting operation | 82.50 |
| By cauterization or endoscopic means | 37.50 |
| Stricture of urethra — open operation | 25.00 |
| Intraurethral cutting operation | 15.00 |
| Prostate — entire removal, by open operation — complete procedure | 75.00 |
| Partial removal — by endoscopic means | 25.00 |
| By other cutting operation | 50.00 |
| Orchidectomy or epididymectomy | 25.00 |
| Hydrocele or varicocele | 12.50 |
| Hysterectomy, radical for cancer | 75.00 |
| Hysterectomy with complete removal of tubes and ovaries, with or without appendectomy | 62.50 |
| Curettage or cauterization of cervix, non-puerperal | 10.00 |
| Dilation and curettage, non-puerperal | 12.50 |
| Repair of perineal or vaginal laceration, not immediately post-partum, including cystocele and rectocele | 37.50 |
| Removal of fibroid tumors, without abdominal approach | 37.50 |
| **GOITRE** — Removal of thyroid, including all stages of operative procedure | 75.00 |
| **HERNIA** — Injection treatment, complete course — Single hernia | 18.75 |
| Double hernia | 25.00 |
| Radical operation, including injection treatment, for cure of single hernia | 37.50 |
| Double hernia | 50.00 |
| **JOINTS AND DISLOCATIONS** | |
| Incision into joint for disease and disorder, except as herein otherwise provided and except tapping | 12.50 |
| Incision into shoulder, elbow, hip or knee joint, tapping excepted | 37.50 |
| Excision, fixation by cutting operation, disarticulation or arthroplasty of shoulder, hip, or spine | 75.00 |
| Knee, elbow, wrist or ankle | 37.50 |
| Dislocation of fingers or toes, each | 5.00 |
| Shoulder, elbow, wrist or ankle | 15.00 |
| Lower jaw | 6.25 |
| Hip or knee, knee cap excepted | 20.00 |
| Knee cap | 5.00 |
| For a dislocation requiring an open operation, the maximum benefit for such dislocation shall be twice applicable amount listed above. | |
| **NOSE** — Antrum puncture | 2.50 |
| Submucous operation | 17.50 |
| Extramastoid operation | 37.50 |
| Polypus, removal, one or more | 5.00 |
| Submucous resection | 25.00 |
| Turbinectomy | 7.50 |
| **OBSTETRICAL** | None |
| **PARACENTESIS** — Tapping of — Abdomen | 12.50 |
| Chest or bladder, catheterization excepted | 7.50 |
| Ear drum, hydrocele, joints or spine | 5.00 |
| **RECTUM** — Radical resection for malignancy, all stages, including colostomy | 100.00 |
| Hemorrhoids, external only, excision — complete procedure | 25.00 |
| Hemorrhoids, internal or internal and external including prolapsed rectum, total for excision or complete injection treatment | 20.00 |
| Fistula in ano | 17.50 |
| Fissure in ano | 5.00 |
| Other cutting operations on rectum | 17.50 |
| **SKULL** — Cutting into cranial cavity, trephining and tapping excepted | 100.00 |
| Removal of bone, trephining or decompression | 31.25 |
| **THROAT** — Tonsillectomy, or tonsillectomy and adenoidectomy — Adults and children 15 years of age and older | 17.50 |
| Children under 15 years of age | 12.50 |
| Use of laryngoscope for diagnosis | 5.00 |
| **TUMORS** — Surgical removal of — | |
| Malignant tumors, except those of the mucous membrane, skin and subcutaneous tissue | 50.00 |
| Malignant tumors of the mucous membrane, skin and subcutaneous tissue | 35.00 |
| Pilonidal sinus or cyst, cutting operation | 25.00 |
| Benign tumors of the testicle or breast | 20.00 |
| Ganglion | 3.75 |
| Warts or moles | 2.50 |
| Benign tumors, one or more, except as otherwise noted, skin provided requiring hospital residence | 12.50 |
| Not requiring hospital residence | 5.00 |
| In the case of X-ray or radium treatment in any of the above listed tumors, the maximum benefit payable for the entire course of treatment including surgical removal shall be that provided for its surgical removal. | |
| **VEINS, Varicose** — Complete procedure on all veins, Cutting operation or injection treatment, One leg | 20.00 |
| Two legs | 30.00 |

## ENDORSEMENT

POLICY NO. ████2,896    OWNER/INSURED: ANTOUN GEBRAN BOUSTANI

To Supplementary Contract - Form 160A- if attached to Income
Growth Plan Policy.

This Endorsement shall constitute an integral part of the
Supplementary Contract - Form 160A- covering the Family Medical
Assistance Insurance.

The following new provision shall be entered into the above
Contract:

When the Policy is transferred to the Investment Protection
Account (IPA) the premium applicable to said Contract shall be
included in the Monthly Deduction as stated in PART II of the
Basic Policy.

JUNE 30, 1988
DATE

ALICO -160A

# American Life
## Insurance Company
### WILMINGTON, DELAWARE, U.S.A.

**APPLICATION FOR INSURANCE**

Complete in Dark Ink — Changes and Corrections Must be Initialled by Proposed Insured — Not to be used for Policies on Juveniles

| | | |
|---|---|---|
| sed Insured  (Print full name, including maiden name) ☑ Male; ☐ Female | 17. Height | Weight |
| ITOUN  GEBRAN  BOUSTANI | 1.70 cms. | 72 kgms. |

| | |
|---|---|
| ☐ Married  ☐ Divorced  ☑ Widowed  ☐ Separated | 18. Are you, to the best of your knowledge and belief, in good health, and free from any deformity or defect ? If "No," explain in 28 below). |
| and  Day ____ Month ____ Year ____ | BEIRUT ____ |
| at  ____ | Chang of: (Country)  LEBANON |
| | H.O.A Date of Issue ____ |
| Occupation : CITIBANK BEIRUT GENERAL MGR | 19. Have you, to the best of your knowledge and belief, ever been treated for, or told you had diabetes, sugar in urine, kidney disease, rheumatic fever, disorder of the heart, high blood pressure, lung cancer, cancer, or any disorder of the digestive tract, epilepsy, mental or nervous disorder, or any other disease, disorder, defect or injury ?  ☐ Yes  ☑ No |
| ation in  SINCE 19__ | |
| Occupation or duties :  NONE | 20. Have you, within the past five years, had any electrocardiogram, X-ray, blood studies or other diagnostic tests ?  ☐ Yes  ☑ No |
| t Address : P. O. Box ____ 413255 | 21. Have you ever been treated for alcoholism or drug habit ?  ☐ Yes  ☑ No |
| SHELL  WDA  ____  LEBANON | 22. Are you contemplating any surgical operation, medical treatment or procedure ?  ☐ Yes  ☑ No |
| at business  BANKING | 23. Have you, within the past five years, consulted a doctor for any check up, treatment or advice ?  ☐ Yes  ☑ No |
| | 24. Has any of your immediate family ever had tuberculosis, diabetes or heart trouble ?  ☐ Yes  ☑ No |
| nce Address (during the past 3 years) : ____  CY-413255 | 25. FEMALES ONLY : Are you pregnant ?  ☐ Yes, for ____ months ☐ No. |
| s. No. ____  BUENOS VERT, TOURBN RAFEET ARSENAN | Have you ever had any disorder of the breasts or female organs ?  ☐ Yes  ☐ No. |
| | 26. Have you ever applied for Insurance (Life, Accident or Health) or reinstatement which was declined, postponed rated or modified in any way ?  ☐ Yes  ☑ No |
| Premium Notices to  ☐ Business  ☑ Residence;  ☐ Applicant. | |
| t Amount ____  ☑ Par  ☐ Non-Par | 27. Have you piloted an airplane within the past 5 years, or do you intend to be a pilot, or fly in other than commercial airplanes ?  ☐ Yes  ☑ No |
| ☐ Annual  Prop. of Insurance | 28. If the answer to any questions 18 through 27 is "Yes," give full particulars below, noting the question number, dates, durations, and names and addresses of all attending physicians, hospitals and other medical facilities used. |
| Dividends To  ☑ be Left at Interest  ☐ be Paid in Cash | |
| urce: Premiums  ☐ Purchase Paid-up Addns  ☐ Purchase 1yr. Term | |
| ld Benefits  ☐ WP  ☐ AI  ☐ AX  ☐ ADB | |
| (complete Form C - 9)  ☐ H's 3  ☐ Pian I  ☐ Pian II  ☐ De Luxe | |
| Mo. Inc: ____  Yrs. ____ | |
| Wish this Automatic Premium Loan  ☐ Yes | 13. Extra Rating (Class A, 730' etc.) |
| on if available ?  ☑ Yes  ☐ No | |
| | 29. What is the name and address of your doctor ? |
| clary, include address (if not same as 1) | No Special Doctor |
| NIEL A. BUSTANI  10  SON | |
| AS  G. BOUSTANI  33  BROTHER | 30. Special Requests and Instructions |
| NOTE THAT SHOULD FIRST BENEFICIARY | |
| DIY DEATH WILL GET THE SUM PAYABLE | I Confirm that my average weekly earned income during the last 12 months has exceeded $ ____ |
| ☐ Payable:  ☐ Ann;  ☐ Semi;  ☐ Quar; | For Home Office Endorsements only |
| Paid with this Application (in $ ) ____  13556 | seven years |

EY AGREE (Conditions text, illegible)

(Signature block and agent information)

Signed at ____ this 3rd day of June 19__

Agent ____  6-599006

Signature of applicant (Owner) if other than the Proposed Insured

N°  0289



**American Life Insurance Company**
WILMINGTON, DELAWARE, U.S.A.

**PART II OF APPLICATION FOR INSURANCE**
(To be used in case Family Insurance and/or Medical Assistance Benefits are also applied for)

FAMILY MEMBERS

| NAME (Please Print) First Name / Middle Initial / Last Name | DATE OF BIRTH Day Month Year | Age | Sex | Height ft. in. | Weight Lbs. | Total Life Insurance in Force | Total Health Insurance in Force |
|---|---|---|---|---|---|---|---|
| A. ANTOUN GEBRAN Boulos | 04 M 1951 | | M | | | | |

**B. PROPOSED INSURED OR BASIC POLICY** — Verify Above, are Proposed for Insurance

C. Spouse

**D. ALL CHILDREN OF PROPOSED INSURED**

| D. Gabriel Anton Boulos | 23 10 M 198 | 90 |

E.

F.

G.

H.

2. Are all Family Members Proposed for Insurance living with the proposed insured on Basic Policy as a unit in one place? YES ☐ NO ☐ (If "No" give details)

3. Check Benefits desired:
☐ Family Insurance ......... Unit (s)
☐ Medical Assistance (MA)
   ☐ Dependents
   ☐ Proposed Insured

☐ Hos. R. & B.
☐ Surgical
☐ Medical

QUESTIONS PERTAIN TO PROPOSED INSURED SPOUSE AND ALL CHILDREN NAMED ON PART II

4. Have you ever applied for or received disability benefits from any source? — No

5. Have you ever been associated with a case of tuberculosis? (When?) — No

6. Has there ever been any leprosy, tuber- culosis or suicide in your family? — No

3. Have you ever sought advice or treatment for alcohol or drug addiction? (Give details) — No

4. Has any person proposed for insurance ever been advised to:
A) Change or restrict your diet? Why? — No
B) take insulin? — No
C) take drugs for high blood pressure? — No

9. To the best of your knowledge has any person proposed for insurance any physical defect? — No

10. To the best of your knowledge are all persons proposed for insurance now in good health? — Yes

11. HAS ANY PERSON PROPOSED FOR INSURANCE EVER HAD:

| | Yes or No | Name of person | Details: Dates: Duration: Doctor: Name and Address |
|---|---|---|---|
| A) Epilepsy, paralysis, nervous breakdown, dizziness, fainting spells, nervous or mental trouble? | No | | |
| B) High or low blood pressure, chest pain, shortness of breath, palpitation, disorder of heart or blood vessels? | No | | |
| C) Hemorrhage, habitual cough, chronic hoarseness, asthma, pleurisy, tuberculosis or disease of respiratory system? | No | | |
| D) Indigestion, ulcer, fistula, disorder of stomach, gall bladder, liver, digestive or abdominal organs? | No | | |
| E) Kidney colic or stone, stricture, diabetes, sugar or albumin in urine, disorder of kidneys, bladder, genito-urinary, male (or female) organs? | No | | |
| F) Rheumatic fever, arthritis, osteomyelitis disorder of bones, joints or spine? | No | | |
| G) Impairment of vision or hearing or disease of eyes or ears? | No | | |
| H) Goiter, tumor, cancer, syphilis, disorder of blood, glands or skin? | No | | |
| I) Treatment or observation in any hospital or institution? | No | | |
| J) X-rays or electrocardiogram? when, why, by whom, with what results? | No | | |
| K) Any accident, injury, or operation other than as stated above? | No | | |
| L) Consultations with any physician or practitioners other than as stated above within the last three years? | No | | |

| 12. Family Record of Proposed Insured | LIVING Age Health | DEAD Age Date and Cause of Death | 13. Family Record of Spouse | LIVING Age Health | DEAD Age Date and Cause of Death |
|---|---|---|---|---|---|
| Father | | 1965 Disput. age | Father | | |
| Mother | | 1945 age 60 all. | Mother | | |
| Brothers No. living 2 No. dead | 34/26 good | | Brothers No. living No. dead | | |
| Sisters No. living 2 No. dead | 38/29 good | | Sisters No. living No. dead | | |

14. Spouse (or Female Proposed Insured). Are you now Pregnant? (Yes) (No) how many months?

All of the above answers are full, complete and true or a continuation of and form a part of the application for insurance to the American Life Insurance Company.

For underwriting purposes, we hereby waive, to such extent as shall be lawful, on behalf of ourselves and/or any other person who shall have or claim any interest in any policy issued hereunder, any and all provisions of law prohibiting any physician or other person who has attended or examined us or any member of our family from disclosing any knowledge or information thereby acquired; and we hereby authorize to such extent as may be lawful, any such physician or person, at the instance of the Insurer, freely and fully to disclose such knowledge and information.

Signed at _____

this _____ day of _____ 19___

Witness _____  Agent

ALICO Form C(P-7A)

Signature of Proposed Insured

Signature of Spouse

1000-(P-7A)

# Exhibit B

№   09459



**American Life
Insurance Company**
WILMINGTON, DELAWARE, U.S.A.
INCORPORATED 1921

Please notify our Claims Department
within ten days in case of an
accident or Hospitalization.

## INCOME GROWTH PLAN

HEREBY INSURES the Insured stated in the Policy Specification Schedule and agrees to pay the benefits provided herein subject to the terms and conditions hereof.

PREMIUMS for the Basic Policy are payable as of the Policy Date and thereafter during the lifetime of the Insured as stated in the Policy Specification Schedule.

ADDITIONAL PREMIUMS for any Supplementary Contracts attached hereto are payable on the same date as the premium payment date of the Basic Policy, such payments to continue until termination of such Supplementary Contracts in accordance with the terms thereof.

THIS CONTRACT is made in consideration of the application for this Policy and the payment, in advance, of premiums as herein provided.

POLICY YEARS, months and anniversaries will be determined from the Policy Date stated in the Policy Specification Schedule.

THE BENEFITS, provisions and conditions set forth in the Policy Specification Schedule and on this and the following pages are a part of this Contract.

ALL SUMS payable hereunder by or to the Company shall be payable in the currency stated in the Policy Specification Schedule and shall be paid at the office of the Company in the Country of Payment stated in the Policy Specification Schedule.

IN WITNESS WHEREOF, AMERICAN LIFE INSURANCE COMPANY has caused this Policy to be executed as of the date of issue stated in the Policy Specification Schedule.

**Registrar**

**President**

## GENERAL PROVISIONS

**THE CONTRACT: ITS PROVISIONS AND LIMITATIONS:** This Policy and the application for it, a copy of which is attached hereto and made a part hereof, together with any Supplementary Contract applied for which are attached hereto and stated to be a part hereof, constitute the entire Contract. All statements made in applying for the Contract will be deemed, in the absence of fraud, representations and not warranties. No statement will be used to invalidate the Contract nor to defend against a claim under it unless contained in the written application.

**MODIFICATIONS:** Only the Chairman of the Board, President, Vice President, Regional Vice President, Actuary, Secretary, Assistant Vice President, Regional Secretary or Registrar of the Company can make or modify this Contract, extend the time for payment of any premium, or waive any of the Company's rights or requirements.

**BENEFITS:** Benefits are only payable by the Company upon delivery of satisfactory proof of the age of Insured and the title of Claimant.

**CHANGE IN PLAN:** This Policy may be changed to another plan of insurance with the consent of the Company, subject to such requirements and upon payment of such cost, if any, as the Company shall determine.

**INCONTESTABILITY:** This Policy, but not any part thereof granting Disability or Accident Benefits, shall be incontestable after it has been in force during the lifetime of the Insured for two years from its Date of Issue except for non-payment of premium.

**SUICIDE:** If the Insured commits suicide, while sane or insane, within two years from the date of issue or from the date of any reinstatement of the Policy, the insurance under this Contract shall be a sum equal to the premiums paid and no more.

**AGE:** If the age of the Insured has been mis-stated, any amount payable under this Policy shall be such as the premium paid would have purchased at the correct age.

**OWNERSHIP AND RIGHTS UNDER THIS POLICY:** Subject to any statutory restrictions, all rights, privileges and options provided under this Contract not specifically granted to any other person shall be reserved to the Owner alone, if the right to change the Beneficiary has been reserved; otherwise to the Owner and Beneficiary jointly.

**CHANGES IN OWNERSHIP AND BENEFICIARY:** At any time during the continuance of this Contract, by filing written notice satisfactory to the Company,

a) the Owner may transfer his entire ownership to take effect during his lifetime, and

b) unless otherwise provided herein the Beneficiary may be changed, with or without reserving the future right to change the Beneficiary in so far as the laws governing this Policy allow. No such transfer or change will take effect unless recorded by the Company, but when so recorded shall become effective as of the date the notice was signed, subject to any payment made or other action taken by the Company before such recording.

**RIGHTS IN EVENT OF DEATH OF OWNER OR BENEFICIARY:** The rights of an Owner other than the Insured whose death occurs during the continuance of this Contract shall pass to the Administrators, Executors or Assigns of the Owner unless otherwise provided herein. The rights of a Beneficiary whose death occurs prior to the expiration of a period of fifteen days commencing with the death of the Insured shall pass to the Owner, unless payment has been made to such Beneficiary or unless otherwise provided herein.

**ASSIGNMENT:** No assignment of this Policy, or of any interest therein, shall be binding on the Company unless recorded by the Company. Any assignment shall be subject to any payment made or other action taken by the Company before the assignment is received and recorded by the Company. The Company assumes no responsibility for the validity, effect or sufficiency of any assignment.

**OTHER WAYS IN WHICH THE PROCEEDS OF THIS POLICY MAY BE PAID:** The whole or part of the proceeds of this Policy may, with the Company's consent, be settled under one of the Optional methods of settlement then made available by the Company.

**TRANSFER OF RESIDENCE:** In the event the Owner takes up residence outside the country of payment specified in the Policy Specification Schedule in a country where the Company writes the same Policy Plan, this Policy may be transferred to the Owner's new country of residence with the approval of the Company subject to and conditional upon the Owner paying any taxes or other expenses directly resulting from such transfer; provided however, that no such transfer shall be effected if it would be in violation of any law or Government regulation then in effect. In applying for such transfer, the Owner understands and agrees that upon transfer, the Company will convert the Face Amount, premium and Cash Values of the Policy to the official currency of the Owner's new country of residence in accordance with the rates of the Company then in effect. Because local laws and business conditions vary, when a transfer is requested, the Company reserves the right to condition any offer to transfer made to the Company upon the Owner agreeing to a change in the Policy Plan, and/or Face Amount and/or premiums payable.

**GENERAL AND SPECIAL PROVISIONS REGULATING THE POLICY:** The above General Provisions shall apply to the Policy as long as the Contract is in force. The following Special Provisions: PART I and PART II, shall apply to the Policy depending on the period the Contract has been in force and as provided in each of PART I and PART II.

## SPECIAL PROVISIONS – PART I

The following Special Provisions - Part I shall apply to the Policy during the first seven years of the continuance of the Contract and shall be of no effect at the expiry of said period, unless the Policy, at Said Date, is under one of the Options (2) or (3) of the Elective Non-Forfeiture Provision defined herebelow under this Part.

**DEATH BENEFIT:** Subject to the provisions of this Policy, in case of death, of the Insured, the Company shall pay to the Beneficiary the Basic Face Amount less any debt on the Policy.

**DIVIDENDS:** The Company will declare a Dividend at the end of the 7th Policy year. Prior to this date, no Dividends will be declared. The Dividend will be transferred to the IPA at the beginning of the 8th Policy year and will be subject to the Provisions of Part II of this Policy.

**PAYMENT OF PREMIUMS AND GRACE PERIOD:** All premiums are payable in advance in exchange for a receipt signed by an Officer of the Company listed in the "Modifications" provision of this Policy. A grace period of 31 days from its due date will be allowed for payment of each premium after the first, during which period the Policy will remain in force. If death occurs within the Grace period any premium then due and unpaid will be deducted in settlement of this Policy.

**LAPSE:** If at the expiration of the Grace period, the premium remains unpaid and the Policy has not yet acquired a Basic Cash Value, the Policy shall lapse and have no further value.

**GUARANTEE OF MINIMUM BASIC VALUES:** The Company guarantees that the Basic Cash Value, the Basic Reduced Paid Up Insurance and the Extended Term Insurance period will not be less than the values shown in the attached Table for the appropriate Plan, Age and Duration. The Basic Values shown assume (1) that premiums have been paid in full to the end of the period shown and (2) that there is no existing indebtedness.

**POLICY LOANS:** The Company will lend on sole security and proper assignment of this Policy during its continuance, an amount not exceeding the then current Loan Value. The Loan Value of this Policy is the amount which with interest to the next interest due date or next premium due date, if earlier, will equal the Basic Cash Value of the Policy less any existing indebtedness. The Company reserves the right to defer the granting of a loan, other than a loan to pay premiums, for a period not exceeding six months. Interest on the loan will accrue from day to day at a rate of interest determined by the Company, payable on each anniversary of the Policy. The Company shall have the right to redetermine the rate of interest applicable to new and existing loans. Interest not paid when due will be added to the principal of the loan upon which interest is calculated. The loan principal and accrued interest thereon will be deducted from any settlement under the Policy.

**AUTOMATIC NON-FORFEITURE PROVISIONS:** If at the expiration of the Grace period, the premium remains unpaid and no non-forfeiture provision has been elected and the Policy has acquired a Basic Cash Value, the Policy will automatically continue in force as follows:
a) If the Loan Value is equal to or greater than the unpaid premium the Company will advance the premium due as an Automatic Premium Loan.
b) If the Loan Value is insufficient to cover any premium in default the Policy shall be continued in force for such proportion of the period covered by the premium due as the loan value bears to the premium.

**ELECTIVE NON-FORFEITURE PROVISION:**
**OPTION 1 - CASH SURRENDER:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can surrender the Policy and receive the Basic Cash Value, less any indebtedness.

**OPTION 2 REDUCED PAID UP INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can continue the Policy as nonparticipating Reduced Paid Up Insurance for such amount as the Cash Value, less any indebtedness would purchase at the attained age of the Insured and on a basis determined by the Company. The Reduced Paid Up amount will be paid at age 75 or upon earlier death of the Insured.

**OPTION 3 EXTENDED TERM INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner may continue the Policy as nonparticipating Extended Term Insurance in an amount equal to the Face Amount less any existing indebtedness. The period for which such Extended Term Insurance will be continued shall be such as the Basic Cash Value, less any indebtedness will purchase at the attained age of the Insured.

**REINSTATEMENT:** Unless this Policy has been cash surrendered, it may be reinstated at any time within three years after default in payment of premium upon written application to the Company with the production of evidence of insurability, including good health, satisfactory to the Company together with payment of all overdue premiums and repayment or reinstatement of any loan, both with interest to the date of reinstatement at a rate of interest determined by the Company, compounded annually. In addition to the provisions of the Incontestability Clause herein, a reinstated Policy shall be contestable on account of fraud or misrepresentation of material facts pertaining to the reinstatement for two years from the date of reinstatement.

# SPECIAL PROVISIONS - PART II

The following Special Provisions - Part II shall apply to the Policy after the first seven years of its continuance provided the Policy is not then under Option (2) or Option (3) of the Elective Non-Forfeiture Provision stated in PART I.

## INVESTMENT AND PROTECTION ACCOUNT (IPA) PROVISIONS

**TRANSFER TO INVESTMENT AND PROTECTION ACCOUNT:** On the 7th Anniversary Date of the Policy, the Basic Cash Value of the Policy and the Dividend, if any, as at the end of the 7th year of the Policy, will be transferred to the Investment and Protection Account hereinafter called IPA as the opening balance of the Owner's account at the beginning of the 8th year of the Policy

**PREMIUM:** The premium amount and the frequency are shown on the Policy Specification Schedule. Changes in frequency and increases and decreases in the amount of premium payments may be made at any time by the Owner subject to the minimum amount acceptable by the Company on such policies at that time

**GRACE PERIOD:** If the Surrender value on any monthly due date is insufficient to cover the next monthly deduction, a grace period of 31 days shall be allowed for the payment of a premium sufficient to cover the monthly deduction, if the Insured dies within the grace period, the amount of the overdue monthly deduction will be deducted from the proceeds

If sufficient premium is not paid by the end of the grace period, all coverage under this Policy will terminate and the Policy will end without value.

**REINSTATEMENT:** If the Policy is terminated because the grace period expired without sufficient premium being paid, this Policy may be reinstated during the Insured's life within 3 years after the expiry of the grace period. The reinstatement is subject to production of evidence of insurability satisfactory to the Company together with a payment of a minimum premium sufficient to keep the Policy in force for at least 3 months. Said minimum premium shall not be less than the minimum deposit acceptable by the Company. Any Policy debt which existed at the end of the grace period will be reinstated if it is not paid. The effective date of reinstatement will be the monthly due date following the date of approval of reinstatement. The Policy cannot be reinstated if it has been surrendered by the Owner for its surrender value.

**IPA VALUE:** The IPA Value on any monthly due date is calculated as follows:
the IPA Value on the prior monthly due date;
less partial surrenders since the prior monthly due date;
less the Monthly Deduction;
plus one month's interest;
plus all net premiums received since the prior monthly due date

**INVESTMENT YIELD:** The guaranteed minimum investment yield on IPA Value is shown on the Policy Specification Schedule. Yield in excess of the guaranteed minimum may be applied in calculation of IPA Value at such increased rates as the Company may determine

**NET PREMIUMS:** The net premium is equal to the premium paid. The net premium shall be added to the IPA account of the Policy.

**MONTHLY DEDUCTIONS:** The Company shall deduct monthly from the IPA Value, the cost of life insurance if any, the extra premium for substandard risk if any, and the premium for additional benefits under the Supplementary Contracts if any, attached to the Policy. The cost of insurance rates shall not be greater than the 1958 CSO Mortality Table

## INSURANCE COVERAGE PROVISIONS

**Death Benefit:** The Company agrees to pay the Basic Face Amount or the IPA Value whichever is greater, to the Beneficiary in case of death of the Insured. The death benefit will be reduced by any Policy debt or partial surrenders.

**Changes in Basic Face Amount:** The Basic Face Amount of the Policy may be increased or decreased by written request from the Owner. The Basic Face Amount can never be less than the minimum as determined by the Company at that time. Any request for increase must be made on a supplemental application and shall be subject to evidence of insurability, satisfactory to the Company. An increase will become effective on the monthly due date after the date of approval.

**Maturity Benefit:** The Policy will mature on the Elective Maturity Date shown on the Policy Specification Schedule. The maturity benefit shall be the IPA value less any indebtedness. The Owner can change the Elective Maturity Date of the Policy by making a written request to the Company at least 3 months prior to the Elective Maturity Date. The Elective Maturity Date cannot be earlier than 10 years from the Policy date and later than the Policy Anniversary at age 75 last birthday of the Insured.

## SURRENDER AND LOAN PROVISIONS

**Surrender Value:** The Surrender Value of the Policy is its IPA Value less any Policy debt and less any surrender charge. The surrender charge, if any, will be applied only on the Dividend transferred to IPA at the end of the 7th Policy year. There will be no surrender charge after the Policy has completed 3 years under the IPA

**Total & Partial Surrenders:** The Policy may be surrendered on any monthly due date upon written request by the Owner to the Company. The amount payable on surrender shall be the Surrender Value of the Policy

A partial surrender of this Policy may be made on any monthly due date during the lifetime of the Insured by written request of the Owner. The amount of the partial surrender must not exceed the Surrender Value less an amount to be determined by the Company. The Company will deduct a partial surrender charge from the partial surrender amount. The Company can defer payment of the partial surrender amount for a period not exceeding 6 months. The Company can also limit the number of partial surrenders in a Policy year.

When a partial surrender is made, the amount of the partial surrender will be deducted from the IPA Value and also from the Basic Face Amount.

Partial surrender will not be permitted if it will result in a reduction of Basic Face Amount to less than the minimum Basic Face Amount as determined by the Company.

**Policy Loans:** Policy loan provisions as in part I will apply except that the Loan Value will be an amount which with interest to the end of Policy year will not exceed Surrender Value as of the date of the Policy loan.

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

**AGE—35**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 12 | 48 | 3 | 313 |
| 4 | 25 | 95 | 7 | 18 |
| 5 | 37 | 136 | 9 | 94 |
| 6 | 51 | 180 | 11 | 117 |
| 7 | 64 | 217 | 12 | 272 |

**AGE—36**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 13 | 50 | 3 | 311 |
| 4 | 26 | 95 | 6 | 283 |
| 5 | 39 | 138 | 9 | 4 |
| 6 | 53 | 180 | 10 | 326 |
| 7 | 67 | 219 | 12 | 126 |

**AGE—37**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 13 | 48 | 3 | 204 |
| 4 | 27 | 95 | 6 | 183 |
| 5 | 41 | 139 | 8 | 271 |
| 6 | 55 | 179 | 10 | 167 |
| 7 | 70 | 220 | 11 | 340 |

**AGE—38**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 14 | 49 | 3 | 194 |
| 4 | 28 | 95 | 6 | 84 |
| 5 | 42 | 137 | 8 | 105 |
| 6 | 57 | 179 | 10 | 9 |
| 7 | 73 | 220 | 11 | 185 |

**AGE—39**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 14 | 47 | 3 | 97 |
| 4 | 29 | 95 | 5 | 350 |
| 5 | 44 | 138 | 8 | 3 |
| 6 | 60 | 181 | 9 | 266 |
| 7 | 76 | 221 | 11 | 28 |

**AGE—40**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 15 | 49 | 3 | 81 |
| 4 | 30 | 94 | 5 | 248 |
| 5 | 46 | 139 | 7 | 260 |
| 6 | 62 | 180 | 9 | 106 |
| 7 | 79 | 221 | 10 | 235 |

**AGE—41**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 16 | 50 | 3 | 59 |
| 4 | 32 | 97 | 5 | 206 |
| 5 | 48 | 139 | 7 | 151 |
| 6 | 65 | 182 | 8 | 359 |
| 7 | 82 | 221 | 10 | 77 |

**AGE—42**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 16 | 48 | 2 | 333 |
| 4 | 33 | 96 | 5 | 104 |
| 5 | 50 | 140 | 7 | 42 |
| 6 | 68 | 182 | 8 | 242 |
| 7 | 86 | 223 | 9 | 322 |

**AGE—43**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 17 | 49 | 2 | 306 |
| 4 | 34 | 95 | 5 | 4 |
| 5 | 52 | 140 | 6 | 297 |
| 6 | 70 | 182 | 8 | 86 |
| 7 | 89 | 223 | 9 | 164 |

**AGE—44**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 18 | 50 | 2 | 276 |
| 4 | 36 | 97 | 4 | 317 |
| 5 | 54 | 140 | 6 | 188 |
| 6 | 73 | 183 | 7 | 335 |
| 7 | 92 | 222 | 9 | 10 |

**AGE—45**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 18 | 49 | 2 | 193 |
| 4 | 37 | 96 | 4 | 218 |
| 5 | 56 | 140 | 6 | 81 |
| 6 | 76 | 183 | 7 | 218 |
| 7 | 96 | 223 | 8 | 252 |

**AGE—46**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 19 | 49 | 2 | 162 |
| 4 | 39 | 98 | 4 | 164 |
| 5 | 59 | 142 | 6 | 11 |
| 6 | 79 | 184 | 7 | 103 |
| 7 | 100 | 224 | 8 | 129 |

**AGE—47**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 20 | 50 | 2 | 130 |
| 4 | 40 | 96 | 4 | 72 |
| 5 | 61 | 142 | 5 | 270 |
| 6 | 82 | 184 | 6 | 354 |
| 7 | 103 | 223 | 7 | 345 |

**AGE—48**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 21 | 51 | 2 | 97 |
| 4 | 42 | 98 | 4 | 18 |
| 5 | 63 | 141 | 5 | 167 |
| 6 | 85 | 184 | 6 | 239 |
| 7 | 107 | 224 | 7 | 224 |

**AGE—49**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 21 | 49 | 2 | 30 |
| 4 | 43 | 97 | 3 | 295 |
| 5 | 66 | 143 | 5 | 94 |
| 6 | 88 | 184 | 6 | 127 |
| 7 | 111 | 224 | 7 | 104 |

**AGE—50**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 22 | 49 | 2 | 0 |
| 4 | 45 | 97 | 3 | 241 |
| 5 | 68 | 142 | 4 | 360 |
| 6 | 91 | 184 | 6 | 316 |
| 7 | 115 | 224 | 6 | 351 |

**AGE—51**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 23 | 50 | 1 | 334 |
| 4 | 47 | 98 | 3 | 185 |
| 5 | 71 | 143 | 4 | 286 |
| 6 | 95 | 185 | 5 | 296 |
| 7 | 120 | 226 | 6 | 253 |

**AGE—52**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 24 | 50 | 1 | 304 |
| 4 | 48 | 97 | 3 | 106 |
| 5 | 73 | 142 | 4 | 191 |
| 6 | 98 | 185 | 5 | 190 |
| 7 | 124 | 226 | 6 | 137 |

**AGE—53**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 25 | 50 | 1 | 273 |
| 4 | 50 | 98 | 3 | 53 |
| 5 | 76 | 143 | 4 | 120 |
| 6 | 102 | 186 | 5 | 105 |
| 7 | 128 | 225 | 6 | 25 |

**AGE—54**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 26 | 51 | 1 | 242 |
| 4 | 52 | 98 | 3 | 1 |
| 5 | 79 | 144 | 4 | 49 |
| 6 | 106 | 186 | 5 | 21 |
| 7 | 133 | 226 | 5 | 295 |

**AGE—55**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 27 | 51 | 1 | 212 |
| 4 | 54 | 98 | 2 | 314 |
| 5 | 82 | 144 | 3 | 345 |
| 6 | 109 | 185 | 4 | 287 |
| 7 | 137 | 225 | 5 | 186 |

**AGE—56**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 |
| 3 | 28 | 51 | 1 | 183 |
| 4 | 56 | 99 | 2 | 263 |
| 5 | 85 | 145 | 3 | 276 |
| 6 | 113 | 186 | 4 | 206 |
| 7 | 142 | 226 | 5 | 94 |

**AGE—57**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 1 | 2 | 0 | 20 |
| 3 | 30 | 53 | 1 | 173 |
| 4 | 59 | 100 | 2 | 229 |
| 5 | 88 | 145 | 3 | 209 |
| 6 | 118 | 187 | 4 | 139 |
| 7 | 148 | 227 | 5 | 15 |

**AGE—58**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 2 | 4 | 0 | 37 |
| 3 | 32 | 54 | 1 | 160 |
| 4 | 61 | 102 | 2 | 195 |
| 5 | 91 | 148 | 3 | 170 |
| 6 | 123 | 189 | 4 | 72 |
| 7 | 154 | 229 | 4 | 301 |

**AGE—59**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 4 | 7 | 0 | 66 |
| 3 | 35 | 58 | 1 | 161 |
| 4 | 66 | 105 | 2 | 173 |
| 5 | 97 | 149 | 3 | 117 |
| 6 | 129 | 191 | 4 | 16 |
| 7 | 161 | 231 | 4 | 235 |

**AGE—60**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs | Ext Term Days |
|---|---|---|---|---|
| 2 | 6 | 10 | 0 | 91 |
| 3 | 38 | 60 | 1 | 158 |
| 4 | 70 | 108 | 2 | 147 |
| 5 | 102 | 151 | 3 | 74 |
| 6 | 135 | 194 | 3 | 324 |
| 7 | 168 | 233 | 4 | 169 |

Age 35 - Age 60

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AGE—0 | | | AGE—1 | | | AGE—2 | | | AGE—3 | | | AGE—4 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 2 | 29 | 1   135 | 2 | 28 | 1   233 | 2 | 27 | 1   233 | 3 | 40 | 2   227 | 3 | 39 | 2   242 |
| 4 | 4 | 57 | 3   139 | 5 | 69 | 4   159 | 3 | 65 | 4   235 | 5 | 64 | 4   251 | 6 | 74 | 5   245 |
| 5 | 6 | 82 | 5   228 | 7 | 93 | 6   296 | 8 | 103 | 7   300 | 8 | 99 | 7   236 | 9 | 108 | 8   153 |
| 6 | 9 | 120 | 9   3 | 10 | 128 | 9   353 | 10 | 126 | 9   233 | 11 | 132 | 10   103 | 12 | 139 | 10   200 |
| 7 | 11 | 141 | 10   349 | 13 | 161 | 12   263 | 14 | 168 | 13   125 | 14 | 162 | 12   309 | 15 | 167 | 13   |
| | AGE—5 | | | AGE—6 | | | AGE—7 | | | AGE—8 | | | AGE—9 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 3 | 57 | 2   258 | 3 | 56 | 3   | 3 | 35 | 1   256 | 3 | 33 | 2   202 | 4 | 43 | 3   |
| 4 | 6 | 72 | 5   192 | 6 | 69 | 5   124 | 7 | 78 | 5   356 | 7 | 75 | 5   265 | 7 | 72 | 5   157 |
| 5 | 9 | 106 | 8   14 | 10 | 111 | 8   213 | 10 | 107 | 8   76 | 11 | 114 | 8   255 | 11 | 110 | 8   |
| 6 | 13 | 145 | 11   133 | 13 | 140 | 10   | 14 | 145 | 11   146 | 15 | 150 | 11   334 | 15 | 144 | 11   190 |
| 7 | 16 | 172 | 13   325 | 17 | 178 | 14   148 | 18 | 186 | 14   358 | 19 | 163 | 15   166 | 19 | 176 | 14   355 |
| | AGE—10 | | | AGE—11 | | | AGE—12 | | | AGE—13 | | | AGE—14 | | |
| 2 | 0 | 3 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 4 | 42 | 5   50 | 4 | 43 | 2   248 | 4 | 38 | 2   293 | 4 | 37 | 2   247 | 4 | 36 | 2   210 |
| 4 | 8 | 80 | 5   345 | 8 | 77 | 5   | 8 | 78 | 5   179 | 8 | 72 | 5   115 | 9 | 78 | 5   325 |
| 5 | 12 | 115 | 8   216 | 12 | 111 | 8   216 | 12 | 113 | 8   216 | 13 | 112 | 8   346 | 13 | 108 | 8   270 |
| 6 | 16 | 148 | 12   38 | 16 | 143 | 11   276 | 17 | 147 | 11   129 | 18 | 150 | 11   341 | 18 | 144 | 11   233 |
| 7 | 20 | 179 | 15   391 | 21 | 181 | 16   21 | 22 | 183 | 16   203 | 22 | 176 | 16   38 | 23 | 178 | 16   176 |
| | AGE—15 | | | AGE—16 | | | AGE—17 | | | AGE—18 | | | AGE—19 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 4 | 54 | 2   131 | 5 | 42 | 3   22 | 5 | 40 | 2   364 | 5 | 39 | 2   345 | 5 | 37 | 1   331 |
| 4 | 9 | 75 | 5   270 | 10 | 80 | 6   134 | 10 | 71 | 6   95 | 10 | 74 | 6   59 | 11 | 70 | 6   268 |
| 5 | 14 | 112 | 9   156 | 15 | 116 | 9   350 | 15 | 112 | 9   276 | 16 | 115 | 10   102 | 17 | 117 | 10   272 |
| 6 | 19 | 147 | 13   45 | 20 | 149 | 13   233 | 21 | 151 | 14   41 | 22 | 152 | 14   103 | 23 | 153 | 14   157 |
| 7 | 24 | 179 | 16   375 | 25 | 179 | 16   328 | 27 | 187 | 17   207 | 28 | 186 | 17   167 | 29 | 186 | 17   99 |
| | AGE—20 | | | AGE—21 | | | AGE—22 | | | AGE—23 | | | AGE—24 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 5 | 43 | 3   176 | 5 | 41 | 3   158 | 5 | 40 | 3   137 | 7 | 45 | 3   325 | 7 | 43 | 3   193 |
| 4 | 12 | 83 | 7   99 | 12 | 80 | 7   39 | 13 | 83 | 7   206 | 13 | 80 | 7   130 | 14 | 85 | 7   261 |
| 5 | 18 | 120 | 11   47 | 19 | 122 | 11   219 | 20 | 122 | 11   219 | 21 | 124 | 11   250 | 22 | 125 | 11   268 |
| 6 | 26 | 154 | 14   171 | 25 | 154 | 14   152 | 27 | 160 | 14   285 | 28 | 160 | 14   199 | 30 | 163 | 14   246 |
| 7 | 31 | 191 | 17   185 | 33 | 196 | 17   233 | 34 | 194 | 17   66 | 36 | 197 | 17   38 | 38 | 200 | 16   241 |
| | AGE—25 | | | AGE—26 | | | AGE—27 | | | AGE—28 | | | AGE—29 | | |
| 2 | 2 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 7 | 43 | 3   256 | 8 | 45 | 4   57 | 3 | 44 | 4   8 | 9 | 47 | 4   143 | 9 | 46 | 4   32 |
| 4 | 15 | 85 | 8   1 | 16 | 86 | 8   75 | 17 | 85 | 8   113 | 17 | 86 | 7   330 | 18 | 87 | 7   324 |
| 5 | 23 | 126 | 13   219 | 24 | 126 | 11   168 | 25 | 126 | 11   85 | 27 | 131 | 11   133 | 28 | 131 | 11   3 |
| 6 | 31 | 167 | 14   121 | 33 | 167 | 14   99 | 35 | 170 | 14   47 | 36 | 169 | 13   222 | 38 | 170 | 13   134 |
| 7 | 40 | 203 | 16   184 | 42 | 204 | 16   117 | 43 | 205 | 16   3 | 41 | 211 | 15   312 | 40 | 211 | 15   130 |
| | AGE—30 | | | AGE—31 | | | AGE—32 | | | AGE—33 | | | AGE—33 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 9 | 48 | 4   50 | 10 | 47 | 4   64 | 10 | 45 | 4   6 | 11 | 47 | 4   43 | 12 | 50 | 6   58 |
| 4 | 19 | 89 | 7   293 | 20 | 90 | 7   282 | 21 | 91 | 7   177 | 22 | 91 | 7   99 | 23 | 91 | 7   15 |
| 5 | 30 | 135 | 10   | 31 | 134 | 10   | 33 | 137 | 10   141 | 34 | 135 | 9   342 | 36 | 137 | 9   202 |
| 6 | 40 | 172 | 13   23 | 42 | 174 | 13   | 44 | 175 | 12   126 | 46 | 176 | 11   349 | 49 | 180 | 11   273 |
| 7 | 51 | 213 | 15   321 | 53 | 215 | 14   | 55 | 216 | 14   15 | 59 | 216 | 13   250 | 61 | 219 | 13   132 |

Paid-up value is payable at age 75 or earlier death

Age 0 – Age 34

## POLICY SPECIFICATION SCHEDULE

| | | | | |
|---|---|---|---|---|
| POLICY NUMBER | : ▮5,486 | POLICIY DATE | | AUG 20, 1991 |
| INSURED | ANTOUN GEBRAN BOUSTANI | AGE | : | 45 |
| OWNER | THE INSURED | MATURITY AGE | : | 75 YEARS OR EARLIER |
| BENEFICIARY | AS STATED IN APPLICATION | ELECTIVE MATURITY DATE | : | AUG 20, 2021 |
| COUNTRY OF PAYMENT | . WILMINGTON. DELAWARE. U.S A | CURRENCY OF PAYMENT | : | U.S.$ |
| BASIC POLICY FACE AMOUNT | $50,000*** | PREMIUM | : | $1,185.00 |
| SUPPLEMENTARY CONTRACTS | FORM M4-WAR COVER $50,000*** | | | 175.00 |

| | | | | |
|---|---|---|---|---|
| PREMIUM FREQUENCY | : ANNUAL | TOTAL | : | $1,360.00 |

"See Endorsements shown herebelow"

"See War Restriction Clause M2 Attached hereto"

| | | |
|---|---|---|
| DATE OF ISSUE | : SEPTEMBER 23, 1991 | REGISTRAR |

### ENDORSEMENTS
(to be made by Company only)

· 1. The Company guarantees that the Minimum interest rate on investment and Protection Account will not be less than 4½ % per annum.

2. The Company guarantees that it will declare a Dividend at the end of the 7th Policy year which will not be less than 25 % of the 7th year Cash Value.

3. The basic premium includes substandard premium of _____XXX_____. The monthly equivalent of this premium will be deducted from the Investment and protection account (IPA) every month in addition to the monthly deductions provided for in the Policy.

REGISTRAR   3

## AMERICAN LIFE INSURANCE COMPANY
Wilmington, Delaware, U.S.A.

In consideration of the payment of the applicable premium this AMENDMENT is made to Policy No. 2285,486   and is attached thereto and forms an integral part thereof:

### WAR COVERAGE CLAUSE

Notwithstanding the provisions of the WAR RESTRICTION CLAUSE contained in this Policy and any Supplementary contracts made a part of this Policy, if the Insured dies as a direct or indirect consequence of war or warlike operations (whether war be declared or not) or of invasion, act of foreign enemy, hostilities, mutiny, riot, civil commotion, civil war, rebellion, revolution, insurrection, conspiracy, military or usurped power, martial law or state of siege or any of the events or causes which determine the proclamation or maintenance of martial law or state of siege, the Company's liability under this Policy and any Supplementary Contracts made a part of this Policy shall be limited to the larger amount of:

(a) the reserves under the Policy, or

(b) the proceeds under the Policy and such Supplementary Contracts made a part of the Policy, if any, due at that time, provided that such due proceeds are limited to a maximum amount of $50,000***   and the reserves of the difference, if any, between the face amount of the Policy and the said maximum amount.

The amount payable under (a) or (b) above shall be reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.

Notwithstanding anything in the foregoing to the contrary, this War Coverage Clause is inapplicable to and provides no War Coverage under the Company's Accidental Death Benefit Supplementary Contract.

It is further agreed that if the Insured's death was due directly or indirectly to his taking an active part in any of the events mentioned above, the liability of the Company shall be limited only to the reserves under (a) above, less any indebtedness to the Company existing against this Policy including interest due or accrued.

Notwithstanding anything to the contrary under this Policy or under any other Policy (Life, PA or Group Policy), the total amount of the war cover granted thereunder by the Company on the life of the Insured shall not exceed in any case the maximum amount of $100,000***

This war coverage clause may be renewed from term to term on each Policy anniversary thereafter with the consent of the Company by the payment in advance of the Company's premium rate in force at the time of renewal. The effective date shall be the policy date unless a different date is shown here.

Registrar

REV. M-4 (6-83)

AMENDMENT To Policy No. ▉5,486                    attached thereto and forming an integral part thereof:

## WAR RESTRICTION CLAUSE

It is hereby agreed that, notwithstanding the provisions of this Policy and any Supplementary Contracts made a part thereof, (excluding Accidental Death Benefit Supplementary Contracts), if the Insured dies as a direct or indirect consequence of war or warlike operations (whether war be declared or not), or of invasion, act of foreign enemy, hostilities, mutiny, riot, civil commotion, civil war, rebellion, revolution, insurrection, conspiracy, military or usurped power, martial law or state of siege, or any of the events or causes which determine the proclamation or maintenance of martial law or state of siege, the Company's liability under this policy shall be limited to the reserves under the Policy reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.

AMERICAN LIFE INSURANCE COMPANY

Registrar



## American Life Insurance Company
### WILMINGTON, DELAWARE, U.S.A.

## Application

☑ WITH MEDICAL EXAMINATION
☐ WITHOUT MEDICAL EXAMINATION

**PLEASE PRINT ANSWERS IN INK — ANY ALTERATIONS MUST BE INITIALLED BY THE PROPOSED INSURED**

**1. PROPOSED INSURED**　　　　　　　　　　　　　　　　☑ Male
☐ Female

_Boustani_ _Antoine_ _Gebran_
Last Name　　　　　　　First Name,　　　　　　Middle Name

☐ Single ☑ Married Place of Birth _Beirut_　Date of Birth [redacted] _1946_　Age _45 yrs_
☐ Widowed ☐ Divorced　　　　　　　　　　　D　M　Y

No. & Date　　　　　　　　　　03-3 Citizen
Proof of Age Document _Passport_ [redacted] _01.82_ of Issue _Lebanon_ of (Country) _Lebanon_

Residence Address: P.O. Box　　　　　　Street & No. _Adonis vert  Bal Mikael_

Bldg　　　City _Adonis vert_ Country _Lebanon_ No. _09-91305_

Occupation (s): Principal _Phar04 Nativa_　　　Other _none_

Nature of Business & Exact Duties _Mediteranion gle. e Sance   Administration_

Business Address: P.O. Box _113-7239   Beirut_ Street & No. _Corniche Fleuve_

Bldg _Sofinor_ City _Beirut_ Country _Lebanon_ No. _01-862694_

Address for Correspondence: ☐ Residence ☑ Business ☐ Owner

---

**2. BENEFITS**

Plan _Term P._　☑ Participating _of C. P's_ Face

☐ Non-Participating　Currency _U.S.D_　Amount _50,000_

Supplementary Contracts:

☐ ADB _____ ☐ M.A.R. R & B _____ (Surgical) _____ / Doctor's visits _____
☐ WP _____ ☐ L.T.R. _____ for _____ years
☐ AI _____ ☐ M.I.B. _____ (Mo. Inc) for _____ years
☐ AX _____ ☐ P.T.O. _____
☑ WCC _5,000_ ☐ _____

If AI is required please state average weekly income over past 12 months: _____

Premium Mode: ☑ Annual ☐ Semi Annual ☐ Quarterly   Amount paid with application _____

Non-forfeiture options: ☑ Automatic Premium Loan ☐ Paid-up ☐ Extended Term Insurance

---

**3. BENEFICIARY** Include address if not same as Residence in 1, above.

| (Print Full Name) | Age | Relationship |
|---|---|---|
| _Gabriel Antoine Boustani_ | _12 yrs_ | _Son_ _50%_ |
| _Yvalla Antoine Boustani  Born Puy-Kellah_ _1960_ | | _Wife_ _50%_ |

Unless otherwise directed above: (A) the proceeds are to be divided equally among all persons who are named as Beneficiary and who survive the insured; and (B) the right to change the beneficiary is reserved.

---

**4. OWNER** (To be completed if Owner is not the Proposed Insured)

Full Name _____

Address for Correspondence: P.O. Box _____ Street & No. _____

City _____ District _____ Country _____ No. _____

Relationship to Proposed Insured _____

---

American Life Insurance Company
A Member Company of American International Group

C2C ME 5/88

**5. MEDICAL INFORMATION**

a) Please state name and address of the Doctor you last consulted

N.O.N.E

Reason for Consultation _____   Date ___
(if answer is Check-Up state exact reason for this)

b) Please state: Your Height  170 C.M.  Weight  74  Kgs  Cigarettes Smoking  none  daily/weekly

|  | Yes | No |
|---|---|---|
| c) Has your weight changed during the last year? | ☐ | ☒ |
| d) Have you ever suffered from: | | |
| i) High Blood Pressure, Heart Disease, Rheumatic Fever, Diabetes or Sugar in your urine? | ☐ | ☒ |
| ii) Cancer, Lung or Kidney  Disease, Nervous disorder or disorder of the Stomach or Abdominal Organs? | ☐ | ☒ |
| e) Have you ever had an X-ray, ECG or other diagnostic tests? | ☐ | ☒ |
| f) i) Have you consulted a Doctor in the last 5 years for any other condition? | ☐ | ☒ |
| ii) Are you currently receiving any form of medical treatment? | ☐ | ☒ |
| iii) Do you have any physical deformity or severe defect of vision or hearing? | ☐ | ☒ |
| g) Do you intend to seek medical advice, treatment, or have any medical tests performed? | ☐ | ☒ |

h) **AIDS (Acquired Immune Deficiency Syndrome) Describe in detail any affirmative answers**

| | Yes | No |
|---|---|---|
| i) Have you received medical advice, or treatment, in connection with AIDS or and AIDS-related condition or a sexually transmitted disease? | ☐ | ☒ |
| ii) Have you been told you had AIDS or AIDS-Related Complex? | ☐ | ☒ |
| iii) Have you had or been told you had a positive blood test for antibodies to the AIDS virus (Human Immune Deficiency Virus)? | ☐ | ☒ |
| iv) Do you have any of the following which are unexplained: Fatigue, weight loss, diarrhea, enlarged lymph nodes, or unusual skin lesions? | ☐ | ☒ |
| i) Have any of your immediate family suffered from Diabetes, High Blood Pressure, Heart Disease or Tuberculosis? | ☐ | ☒ |
| J) FEMALES: Are you pregnant? (If Yes) state duration) _____ Months | ☐ | ☐ |

**6. OTHER INFORMATION**

| | Yes | No |
|---|---|---|
| a) Do you intend to engage in a hazardous activity (e.g. scuba diving) or fly other than as a passenger on scheduled services? (If applicable complete questionnaire) | ☐ | ☒ |
| b) Has any application for insurance on your life (life, accident or health) been declined, postponed or accepted on special terms? | ☐ | ☒ |

PLEASE GIVE BELOW FULL DETAILS FOR ANY 'YES' ANSWER INCLUDING DURATION OF ANY ILLNESS AND DOCTOR(S) CONSULTED

| Qu. No. | Date | Details |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

| Special Instructions | Home Office Endorsements |
|---|---|
| | |

DECLARATION: I HEREBY Declare that I am in good health and agree that except as provided in a duly executed Conditional Receipt bearing the same date and printed number as this application, there shall be no contract of insurance unless a policy is issued and delivered on this application and the full first premium actually paid thereon provided no change shall have occurred in the insurability of the Proposed Insured since completion of the application that all statements and answers in this application together with those in any required medical examination, questionnaire or amendments are full, complete and true and bind all parties in interest under the policy herein applied for; that no agent or medical examiner or other person except an authorized officer of the Company is permitted to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy or receipt; or to accept risk or pass upon insurability; that notice to or knowledge of any agent or medical examiner is not notice to or knowledge of the Company unless stated in either this application or in any medical examination; that no right to borrow, surrender or assign or other privilege of ownership may be exercised by a minor; and that acceptance of any policy issued on this application shall be a ratification of any corrections or changes to this application which the Company may make in the space entitled "Home Office Endorsements"

I hereby authorise any Physician, Hospital, Insurance Company or other Organization, that has any records or knowledge of me or my health to give to American Life Insurance Company any and all information about me with reference to my health and medical history and any hospitalization. A photo copy of this authorization shall be as valid as the original.

The proposed Insured shall be the Owner of any Policy issued upon this application unless a separate Owner is stated in Qu.4.

IMPORTANT: BEFORE SIGNING THIS DECLARATION PLEASE CHECK THAT THE ANSWERS GIVEN IN THIS APPLICATION ARE CORRECT AS INCORRECT ANSWER MAY INVALIDATE THE POLICY.

Dated at _____ this ___ day of August 19 91   _____
Signature of Proposed Insured

Witness _____

(Agent)

_____
Signature of Owner if other than Proposed Insured

# Exhibit C

№ 09647



**American Life Insurance Company**
WILMINGTON, DELAWARE, U.S.A.
INCORPORATED 1921.

## INCOME GROWTH PLAN

**HEREBY INSURES** the Insured stated in the Policy Specification Schedule and agrees to pay the benefits provided herein subject to the terms and conditions hereof.

**PREMIUMS** for the Basic Policy are payable as of the Policy Date and thereafter during the lifetime of the Insured as stated in the Policy Specification Schedule.

**ADDITIONAL PREMIUMS** for any Supplementary Contracts attached hereto are payable on the same date as the premium payment date of the Basic Policy, such payments to continue until termination of such Supplementary Contracts in accordance with the terms thereof.

**THIS CONTRACT** is made in consideration of the application for this Policy and the payment, in advance, of premiums as herein provided.

**POLICY YEARS,** months and anniversaries will be determined from the Policy Date stated in the Policy Specification Schedule.

**THE BENEFITS,** provisions and conditions set forth in the Policy Specification Schedule and on this and the following pages are a part of this Contract.

**ALL SUMS** payable hereunder by or to the Company shall be payable in the currency stated in the Policy Specification Schedule and shall be paid at the office of the Company in the Country of Payment stated in the Policy Specification Schedule.

**IN WITNESS WHEREOF,** AMERICAN LIFE INSURANCE COMPANY has caused this Policy to be executed as of the date of issue stated in the Policy Specification Schedule.



Registrar.

*Richard R Collins*

President.

# GENERAL PROVISIONS

**THE CONTRACT, ITS PROVISIONS AND LIMITATIONS:** This Policy and the application for it, a copy of which is attached hereto and made a part hereof, together with any Supplementary Contract applied for which are attached hereto and stated to be a part hereof, constitute the entire Contract. All Statements made in applying for the Contract will be deemed, in the absence of fraud, representations and not warranties. No Statement will be used to invalidate the Contract nor to defend against a claim under it unless contained in the written application.

**MODIFICATIONS:** Only the Chairman of the Board, President, Vice President, Regional Vice President, Actuary, Secretary, Assistant Vice President, Regional Secretary or Registrar of the Company can make or modify this Contract, extend the time for payment of any premium, or waive any of the Company's rights or requirements.

**BENEFITS:** Benefits are only payable by the Company upon delivery of this Policy together with satisfactory proof of the age of Insured and the title of Claimant.

**CHANGE IN PLAN:** This Policy may be changed to another plan of insurance with the consent of the Company, subject to such requirements and upon payment of such cost, if any, as the Company shall determine.

**INCONTESTABILITY:** This Policy, but not any part thereof granting Disability or Accident Benefits, shall be incontestable after it has been in force during the lifetime of the Insured for two years from its Date of Issue except for non-payment of premium.

**SUICIDE:** If the Insured commits suicide, while sane or insane, within two years from the date of issue or from the date of any reinstatement of the Policy, the insurance under this Contract shall be a sum equal to the premiums paid and no more.

**AGE:** If the age of the Insured has been mis-stated, any amount payable under this Policy shall be such as the premium paid would have purchased at the correct age.

**OWNERSHIP AND RIGHTS UNDER THIS POLICY:** Subject to any statutory restrictions, all rights, privileges and options provided under this Contract not specifically granted to any other person shall be reserved to the Owner alone, if the right to change the Beneficiary has been reserved; otherwise to the Owner and Beneficiary jointly.

**CHANGES IN OWNERSHIP AND BENEFICIARY:** At any time during the continuance of this Contract, by filing written notice satisfactory to the Company,

a) the Owner may transfer his entire ownership to take effect during his lifetime; and

b) unless otherwise provided herein the Beneficiary may be changed, with or without reserving the future right to change the Beneficiary in so far as the laws governing this Policy allow. No such transfer or change will take effect unless recorded by the Company; but when so recorded shall become effective as of the date the notice was signed, subject to any payment made or other action taken by the Company before such recording.

**RIGHTS IN EVENT OF DEATH OF OWNER OR BENEFICIARY:** The rights of an Owner other than the Insured whose death occurs during the continuance of this Contract shall pass to the Administrators, Executors or Assigns of the Owner unless otherwise provided herein. The rights of a Beneficiary whose death occurs prior to the expiration of a period of fifteen days commencing with the death of the Insured shall pass to the Owner, unless payment has been made to such Beneficiary or unless otherwise provided herein.

**ASSIGNMENT:** No assignment of this Policy, or of any interest therein, shall be binding on the Company unless recorded by the Company. Any assignment shall be subject to any payment made or other action taken by the Company before the assignment is received and recorded by the Company. The Company assumes no responsibility for the validity, effect or sufficiency of any assignment.

**OTHER WAYS IN WHICH THE PROCEEDS OF THIS POLICY MAY BE PAID:** The whole or part of the proceeds of this Policy may, with the Company's consent, be settled under one of the Optional methods of settlement then made available by the Company.

**TRANSFER OF RESIDENCE:** In the event the Owner takes up residence outside the country of payment specified in the Policy Specification Schedule in a country where the Company writes the same Policy Plan, this Policy may be transferred to the Owner's new country of residence with the approval of the Company subject to and conditional upon the Owner paying any taxes or other expenses directly resulting from such transfer; provided however, that no such transfer shall be effected if it would be in violation of any law or Government regulation then in effect. In applying for such transfer, the Owner understands and agrees that upon transfer, the Company will convert the Face Amount, premium and Cash Values of the Policy to the official currency of the Owner's new country of residence in accordance with the rules of the Company then in effect. Because local laws and business conditions vary, when a transfer is requested the Company reserves the right to condition any offer to transfer made to the Company upon the Owner agreeing to a change in the Policy Plan, and/or Face Amount and/or premiums payable.

**GENERAL AND SPECIAL PROVISIONS REGULATING THE POLICY:** The above General Provisions shall apply to the Policy as long as the Contract is in force. The following Special Provisions - PART I and PART II- shall apply to the Policy depending on the period the Contract has been in force and as provided in each of PART I and PART II.

## SPECIAL PROVISIONS - PART I

The following Special Provisions - Part I shall apply to the Policy during the first seven years of the continuance of the Contract and shall be of no effect at the expiry of said period, unless the Policy, at said Date, is under one of the Options (2) or (3) of the Elective Non-Forfeiture Provision defined herebelow under this Part.

**DEATH BENEFIT:** Subject to the provisions of this Policy, in case of death of the Insured, the Company shall pay to the Beneficiary the Basic Face Amount less any debt on the Policy.

**DIVIDENDS:** The Company will declare a Dividend at the end of the 7th Policy year. Prior to this date, no Dividends will be declared. The Dividend will be transferred to the IPA at the beginning of the 8th Policy year and will be subject to the Provisions of Part II of this Policy.

**PAYMENT OF PREMIUMS AND GRACE PERIOD:** All premiums are payable in advance, in exchange for a receipt signed by an Officer of the Company listed in the Modifications provision of this Policy. A grace period of 31 days from its due date will be allowed for payment of each premium after the first, during which period the Policy will remain in force. If death occurs within the Grace period any premium then due and unpaid will be deducted in settlement of this Policy.

**LAPSE:** If at the expiration of the Grace period, the premium remains unpaid and the Policy has not yet acquired a Basic Cash Value, the Policy shall lapse and have no further value.

**GUARANTEE OF MINIMUM BASIC VALUES:** The Company guarantees that the Basic Cash Value, the Basic Reduced Paid Up Insurance and the Extended Term Insurance period will not be less than the values shown in the attached Table for the appropriate Plan, Age and Duration. The Basic Values shown assume (1) that premiums have been paid in full to the end of the period shown and (2) that there is no existing indebtedness.

**POLICY LOANS:** The Company will lend on sole security and proper assignment of this Policy during its continuance; an amount not exceeding the then current Loan Value. The Loan Value of this Policy is the amount which with interest to the next interest due date or next premium due date, if earlier, will equal the Basic Cash Value of the Policy less any existing indebtedness. The Company reserves the right to defer the granting of a loan, other than a loan to pay premiums, for a period not exceeding six months. Interest on the loan will accrue from day to day at a rate of interest determined by the Company, payable on each anniversary of the Policy. The Company shall have the right to redetermine the rate of interest applicable to new and existing loans. Interest not paid when due will be added to the principal of the loan upon which interest is

calculated. The loan principal and accrued interest thereon will be deducted from any settlement under the Policy.

**AUTOMATIC NON-FORFEITURE PROVISIONS:** If at the expiration of the Grace period, the premium remains unpaid and no non-forfeiture provision has been elected and the Policy has acquired a Basic Cash Value, the Policy will automatically continue in force as follows:
a) If the Loan Value is equal to or greater than the unpaid premium the Company will advance the premium due as an Automatic Premium Loan.
b) If the Loan Value is insufficient to cover any premium in default the Policy shall be continued in force for such proportion of the period covered by the premium due as the loan value bears to the premium.

**ELECTIVE NON-FORFEITURE PROVISION:**
**OPTION 1 - CASH SURRENDER:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can surrender the Policy and receive the Basic Cash Value, less any indebtedness.

**OPTION 2 - REDUCED PAID UP INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can continue the Policy as nonparticipating Reduced Paid-Up Insurance for such amount as the Cash Value, less any indebtedness would purchase at the attained age of the Insured, and on a basis determined by the Company. The Reduced Paid Up amount will be paid at age 75 or upon earlier death of the Insured.

**OPTION 3 - EXTENDED TERM INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner may continue the Policy as nonparticipating Extended Term Insurance in an amount equal to the Face Amount less any existing indebtedness. The period for which such Extended Term Insurance will be continued shall be such as the Basic Cash Value less any indebtedness will purchase at the attained age of the Insured.

**REINSTATEMENT:** Unless this Policy has been cash surrendered, it may be reinstated at any time within three years after default in payment of premium upon written application to the Company with the production of evidence of insurability, including good health, satisfactory to the Company together with payment of all overdue premiums and repayment or reinstatement of any loan, both with interest to the date of reinstatement at a rate of interest determined by the Company, compounded annually. In addition to the provisions of the Incontestability Clause herein, a reinstated Policy shall be contestable on account of fraud or misrepresentation of material facts pertaining to the reinstatement for two years from the date of reinstatement.

# SPECIAL PROVISIONS - PART II

The following Special Provisions - Part II shall apply to the Policy after the first seven years of its continuance provided the Policy is not then under Option (2) or Option (3) of the Elective Non-Forfeiture Provision stated in PART I.

## INVESTMENT AND PROTECTION ACCOUNT (IPA) PROVISIONS

**TRANSFER TO INVESTMENT AND PROTECTION ACCOUNT:** On the 7th Anniversary Date of the Policy, the Basic Cash Value of the Policy and the Dividend, if any, as at the end of the 7th year of the Policy, will be transferred to the Investment and Protection Account, hereinafter called IPA as the opening balance of the Owner's account at the beginning of the 8th year of the Policy.

**PREMIUM:** The premium amount and the frequency are shown on the Policy Specification Schedule. Changes in frequency and increases and decreases in the amount of premium payments may be made at any time by the Owner subject to the minimum amount acceptable by the Company on such policies at that time.

**GRACE PERIOD:** If the Surrender value on any monthly due date is insufficient to cover the next monthly deduction, a grace period of 31 days shall be allowed for the payment of a premium sufficient to cover the monthly deduction. If the Insured dies within the grace period, the amount of the overdue monthly deduction will be deducted from the proceeds.

If sufficient premium is not paid by the end of the grace period, all coverage under this Policy will terminate and the Policy will end without value.

**REINSTATEMENT:** If the Policy is terminated because the grace period expired without sufficient premium being paid, this Policy may be reinstated during the Insured's life within 3 years after the expiry of the grace period. The reinstatement is subject to production of evidence of insurability satisfactory to the Company together with a payment of a minimum premium sufficient to keep the Policy in force for at least 3 months. Said minimum premium shall not be less than the minimum deposit acceptable by the Company. Any Policy debt which existed at the end of the grace period will be reinstated if it is not paid. The effective date of reinstatement will be the monthly due date following the date of approval of reinstatement. The Policy cannot be reinstated if it has been surrendered by the Owner for its surrender value.

**IPA VALUE:** The IPA Value on any monthly due date is calculated as follows:
the IPA Value on the prior monthly due date;
less partial surrenders since the prior monthly due date;
less the Monthly Deduction;
plus one month's interest;
plus all net premiums received since the prior monthly due date.

**INVESTMENT YIELD:** The guaranteed minimum investment yield on IPA Value is shown on the Policy Specification Schedule. Yield in excess of the guaranteed minimum may be applied in calculation of IPA Value at such increased rates as the Company may determine.

**NET PREMIUMS:** The net premium is equal to the premium paid. The net premium shall be added to the IPA account of the Policy.

**MONTHLY DEDUCTIONS:** The Company shall deduct monthly from the IPA Value: the cost of life insurance, if any; the extra premium for substandard risk, if any; and the premium for additional benefits under the Supplementary Contracts, if any, attached to the Policy. The cost of insurance rates shall not be greater than the 1958 CSO Mortality Table.

## INSURANCE COVERAGE PROVISIONS

**Death Benefit:** The Company agrees to pay the Basic Face Amount or the IPA Value whichever is greater, to the Beneficiary in case of death of the Insured. The death benefit will be reduced by any Policy debt or partial surrenders.

**Changes in Basic Face Amount:** The Basic Face Amount of the Policy may be increased or decreased by written request from the Owner. The Basic Face Amount can never be less than the minimum as determined by the Company at that time. Any request for increase must be made on a supplemental application and shall be subject to evidence of insurability satisfactory to the Company. An increase will become effective on the monthly due date after the date of approval.

**Maturity Benefit:** The Policy will mature on the Elective Maturity Date shown on the Policy Specification Schedule. The maturity benefit shall be the IPA value less any indebtedness. The Owner can change the Elective Maturity Date of the Policy by making a written request to the Company at least 3 months prior to the Elective Maturity Date. The Elective Maturity Date cannot be earlier than 10 years from the Policy date and later than the Policy Anniversary at age 75 last birthday of the Insured.

## SURRENDER AND LOAN PROVISIONS

**Surrender Value:** The Surrender Value of the Policy is its IPA Value less any Policy debt and less any surrender charge. The surrender charge, if any, will be applied only on the Dividend transferred to IPA at the end of the 7th Policy year. There will be no surrender charge after the Policy has completed 3 years under the IPA.

**Total & Partial Surrenders:** The Policy may be surrendered on any monthly due date upon written request by the Owner to the Company. The amount payable on surrender shall be the Surrender Value of the Policy.

A partial surrender of this Policy may be made on any monthly due date during the lifetime of the Insured by written request of the Owner. The amount of the partial surrender must not exceed the Surrender Value less an amount to be determined by the Company. The Company will deduct a partial surrender charge from the partial surrender amount. The Company can defer payment of the partial surrender amount for a period not exceeding 6 months. The Company can also limit the number of partial surrenders in a Policy year.

When a partial surrender is made, the amount of the partial surrender will be deducted from the IPA Value and also from the Basic Face Amount.

Partial surrender will not be permitted if it will result in a reduction of Basic Face Amount to less than the minimum Basic Face Amount as determined by the Company.

**Policy Loans:** Policy loan provisions as in part I will apply except that the Loan Value will be an amount which with interest to the end of Policy year will not exceed Surrender Value as of the date of the Policy loan.

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

Columns for each age block: End Of Yr | Cash Value | Paid Up Value | Ext. Term (Yrs Days)

**AGE—0**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 2 | 29 | 1 388 |
| 4 | 6 | 57 | 3 139 |
| 5 | 8 | 82 | 5 228 |
| 6 | 9 | 120 | 9 3 |
| 7 | 11 | 141 | 10 369 |

**AGE—1**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 2 | 28 | 1 211 |
| 4 | 5 | 69 | 4 196 |
| 5 | 7 | 93 | 6 296 |
| 6 | 10 | 128 | 9 332 |
| 7 | 13 | 161 | 12 263 |

**AGE—2**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 2 | 27 | 1 233 |
| 4 | 5 | 66 | 4 235 |
| 5 | 8 | 103 | 7 300 |
| 6 | 10 | 124 | 9 233 |
| 7 | 14 | 168 | 13 125 |

**AGE—3**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 2 | 40 | 2 227 |
| 4 | 5 | 64 | 4 251 |
| 5 | 8 | 99 | 7 238 |
| 6 | 11 | 132 | 10 103 |
| 7 | 14 | 162 | 12 309 |

**AGE—4**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 3 | 39 | 2 249 |
| 4 | 6 | 74 | 5 242 |
| 5 | 9 | 108 | 8 133 |
| 6 | 12 | 139 | 10 308 |
| 7 | 15 | 167 | 13 138 |

**AGE—5**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 3 | 37 | 2 258 |
| 4 | 6 | 72 | 5 192 |
| 5 | 9 | 104 | 8 14 |
| 6 | 13 | 145 | 11 133 |
| 7 | 16 | 172 | 13 325 |

**AGE—6**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 3 | 36 | 2 253 |
| 4 | 6 | 69 | 5 124 |
| 5 | 9 | 111 | 8 213 |
| 6 | 13 | 140 | 10 329 |
| 7 | 17 | 176 | 14 148 |

**AGE—7**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 3 | 35 | 2 234 |
| 4 | 7 | 78 | 5 356 |
| 5 | 10 | 107 | 8 76 |
| 6 | 14 | 145 | 11 144 |
| 7 | 18 | 180 | 14 338 |

**AGE—8**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 3 | 33 | 2 202 |
| 4 | 8 | 75 | 5 255 |
| 5 | 11 | 114 | 8 255 |
| 6 | 15 | 150 | 11 334 |
| 7 | 19 | 183 | 15 166 |

**AGE—9**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 4 | 43 | 3 94 |
| 4 | 7 | 72 | 5 157 |
| 5 | 11 | 110 | 8 128 |
| 6 | 15 | 144 | 11 190 |
| 7 | 19 | 176 | 14 355 |

**AGE—10**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 4 | 41 | 3 36 |
| 4 | 8 | 80 | 5 345 |
| 5 | 12 | 115 | 8 316 |
| 6 | 16 | 168 | 12 30 |
| 7 | 20 | 179 | 15 191 |

**AGE—11**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 4 | 40 | 2 345 |
| 4 | 8 | 77 | 5 256 |
| 5 | 12 | 111 | 8 214 |
| 6 | 16 | 143 | 11 276 |
| 7 | 21 | 181 | 16 22 |

**AGE—12**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 4 | 38 | 2 293 |
| 4 | 8 | 74 | 5 179 |
| 5 | 13 | 117 | 8 346 |
| 6 | 17 | 147 | 12 129 |
| 7 | 22 | 183 | 16 203 |

**AGE—13**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 4 | 37 | 2 247 |
| 4 | 8 | 72 | 5 115 |
| 5 | 13 | 112 | 8 346 |
| 6 | 18 | 150 | 12 341 |
| 7 | 22 | 176 | 16 38 |

**AGE—14**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 4 | 36 | 2 210 |
| 4 | 9 | 78 | 5 323 |
| 5 | 13 | 108 | 8 279 |
| 6 | 18 | 144 | 12 233 |
| 7 | 23 | 178 | 16 176 |

**AGE—15**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 4 | 34 | 2 101 |
| 4 | 9 | 75 | 5 278 |
| 5 | 14 | 112 | 9 136 |
| 6 | 19 | 147 | 13 63 |
| 7 | 24 | 179 | 16 273 |

**AGE—16**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 5 | 42 | 3 22 |
| 4 | 10 | 80 | 6 134 |
| 5 | 15 | 116 | 9 350 |
| 6 | 20 | 149 | 13 233 |
| 7 | 25 | 175 | 16 328 |

**AGE—17**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 5 | 40 | 2 364 |
| 4 | 10 | 77 | 6 95 |
| 5 | 16 | 112 | 9 276 |
| 6 | 21 | 151 | 14 103 |
| 7 | 27 | 187 | 17 207 |

**AGE—18**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 5 | 39 | 2 345 |
| 4 | 10 | 74 | 6 59 |
| 5 | 16 | 115 | 10 102 |
| 6 | 22 | 152 | 13 103 |
| 7 | 28 | 186 | 17 167 |

**AGE—19**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 5 | 37 | 2 331 |
| 4 | 11 | 79 | 6 268 |
| 5 | 17 | 117 | 10 272 |
| 6 | 23 | 153 | 14 157 |
| 7 | 29 | 186 | 16 170 |

**AGE—20**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 6 | 43 | 3 176 |
| 4 | 12 | 83 | 7 99 |
| 5 | 18 | 120 | 11 47 |
| 6 | 24 | 154 | 14 171 |
| 7 | 30 | 191 | 17 185 |

**AGE—21**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 6 | 41 | 3 158 |
| 4 | 13 | 80 | 7 39 |
| 5 | 19 | 122 | 11 152 |
| 6 | 25 | 156 | 14 152 |
| 7 | 33 | 196 | 17 223 |

**AGE—22**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 6 | 45 | 3 137 |
| 4 | 13 | 83 | 7 206 |
| 5 | 20 | 111 | 11 219 |
| 6 | 27 | 160 | 14 285 |
| 7 | 34 | 194 | 17 66 |

**AGE—23**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 7 | 40 | 3 325 |
| 4 | 13 | 80 | 7 130 |
| 5 | 21 | 124 | 11 250 |
| 6 | 28 | 160 | 14 198 |
| 7 | 36 | 197 | 17 38 |

**AGE—24**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 7 | 43 | 3 293 |
| 4 | 14 | 83 | 7 261 |
| 5 | 22 | 125 | 11 248 |
| 6 | 30 | 164 | 14 246 |
| 7 | 38 | 200 | 16 342 |

**AGE—25**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 7 | 41 | 3 258 |
| 4 | 15 | 85 | 8 11 |
| 5 | 23 | 126 | 11 217 |
| 6 | 31 | 163 | 14 112 |
| 7 | 40 | 202 | 16 252 |

**AGE—26**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 8 | 46 | 4 53 |
| 4 | 16 | 80 | 8 73 |
| 5 | 24 | 126 | 11 162 |
| 6 | 33 | 167 | 14 95 |
| 7 | 42 | 204 | 16 137 |

**AGE—27**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 8 | 44 | 4 11 |
| 4 | 17 | 87 | 8 113 |
| 5 | 25 | 126 | 11 85 |
| 6 | 35 | 170 | 14 47 |
| 7 | 44 | 205 | 16 3 |

**AGE—28**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 9 | 47 | 4 143 |
| 4 | 17 | 86 | 7 330 |
| 5 | 27 | 131 | 11 123 |
| 6 | 36 | 168 | 13 222 |
| 7 | 47 | 211 | 15 312 |

**AGE—29**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 9 | 46 | 4 82 |
| 4 | 18 | 87 | 7 324 |
| 5 | 28 | 131 | 11 3 |
| 6 | 38 | 170 | 13 131 |
| 7 | 49 | 211 | 15 138 |

**AGE—30**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 9 | 44 | 4 16 |
| 4 | 19 | 99 | 7 293 |
| 5 | 30 | 135 | 10 369 |
| 6 | 40 | 172 | 13 23 |
| 7 | 51 | 211 | 14 321 |

**AGE—31**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 10 | 47 | 4 94 |
| 4 | 20 | 90 | 7 242 |
| 5 | 31 | 134 | 10 190 |
| 6 | 42 | 174 | 12 262 |
| 7 | 54 | 215 | 14 211 |

**AGE—32**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 10 | 45 | 4 6 |
| 4 | 21 | 90 | 7 177 |
| 5 | 33 | 135 | 10 199 |
| 6 | 44 | 175 | 12 126 |
| 7 | 56 | 214 | 14 15 |

**AGE—33**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 11 | 47 | 4 43 |
| 4 | 22 | 91 | 7 99 |
| 5 | 34 | 135 | 10 342 |
| 6 | 46 | 176 | 11 349 |
| 7 | 59 | 216 | 13 250 |

**AGE—34**

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 0 | 0 | 0 0 |
| 3 | 12 | 50 | 4 58 |
| 4 | 23 | 91 | 7 15 |
| 5 | 34 | 137 | 9 262 |
| 6 | 49 | 180 | 11 273 |
| 7 | 62 | 219 | 13 112 |

Paid up value is payable at age 75 or earlier death.                Age 0 – Age 34

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

### AGE—35 through AGE—39

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AGE—35 | | | AGE—36 | | | AGE—37 | | | AGE—38 | | | AGE—39 | | |
| 2 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 |
| 3 | 12 | 48 | 3 313 | 13 | 50 | 3 311 | 13 | 48 | 3 204 | 14 | 49 | 3 194 | 14 | 47 | 3 97 |
| 4 | 25 | 95 | 7 18 | 26 | 95 | 6 283 | 27 | 95 | 6 183 | 28 | 95 | 6 84 | 29 | 95 | 5 350 |
| 5 | 37 | 136 | 9 94 | 39 | 138 | 9 4 | 41 | 139 | 8 271 | 42 | 137 | 8 105 | 44 | 138 | 8 3 |
| 6 | 51 | 180 | 11 117 | 53 | 180 | 10 326 | 55 | 179 | 10 167 | 57 | 179 | 10 9 | 60 | 181 | 9 266 |
| 7 | 64 | 217 | 12 272 | 67 | 219 | 12 126 | 70 | 220 | 11 340 | 73 | 220 | 11 185 | 76 | 221 | 11 28 |

### AGE—40 through AGE—44

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AGE—40 | | | AGE—41 | | | AGE—42 | | | AGE—43 | | | AGE—44 | | |
| 2 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 |
| 3 | 15 | 49 | 3 81 | 16 | 50 | 3 59 | 16 | 48 | 2 333 | 17 | 49 | 2 306 | 18 | 50 | 2 276 |
| 4 | 30 | 94 | 5 248 | 32 | 97 | 5 206 | 33 | 96 | 5 104 | 34 | 95 | 5 4 | 36 | 97 | 4 317 |
| 5 | 46 | 139 | 7 260 | 48 | 139 | 7 151 | 50 | 140 | 7 42 | 52 | 140 | 6 297 | 54 | 140 | 6 188 |
| 6 | 62 | 180 | 9 106 | 65 | 182 | 8 359 | 68 | 183 | 8 242 | 70 | 182 | 8 86 | 73 | 183 | 7 335 |
| 7 | 79 | 221 | 10 235 | 82 | 221 | 10 77 | 86 | 223 | 9 322 | 89 | 223 | 9 164 | 92 | 222 | 9 10 |

### AGE—45 through AGE—49

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AGE—45 | | | AGE—46 | | | AGE—47 | | | AGE—48 | | | AGE—49 | | |
| 2 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 |
| 3 | 18 | 49 | 2 193 | 19 | 49 | 2 162 | 20 | 50 | 2 130 | 21 | 51 | 2 97 | 21 | 49 | 2 30 |
| 4 | 37 | 96 | 4 218 | 39 | 98 | 4 164 | 40 | 96 | 4 72 | 42 | 98 | 4 18 | 43 | 97 | 3 295 |
| 5 | 56 | 140 | 6 81 | 59 | 142 | 6 11 | 61 | 142 | 5 270 | 63 | 141 | 5 167 | 66 | 143 | 5 94 |
| 6 | 76 | 183 | 7 218 | 79 | 184 | 7 103 | 82 | 184 | 6 354 | 85 | 184 | 6 239 | 88 | 184 | 6 127 |
| 7 | 96 | 223 | 8 252 | 100 | 224 | 8 129 | 103 | 223 | 7 345 | 107 | 224 | 7 224 | 111 | 224 | 7 104 |

### AGE—50 through AGE—54

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AGE—50 | | | AGE—51 | | | AGE—52 | | | AGE—53 | | | AGE—54 | | |
| 2 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 0 | 0 | 0 0 |
| 3 | 22 | 49 | 2 0 | 23 | 50 | 1 334 | 24 | 50 | 1 304 | 25 | 50 | 1 273 | 26 | 51 | 1 242 |
| 4 | 45 | 97 | 3 241 | 47 | 98 | 3 185 | 48 | 97 | 3 106 | 50 | 98 | 3 53 | 52 | 98 | 3 4 |
| 5 | 68 | 143 | 4 360 | 71 | 143 | 4 286 | 72 | 142 | 4 191 | 76 | 143 | 4 120 | 79 | 144 | 4 49 |
| 6 | 91 | 184 | 6 18 | 95 | 185 | 5 296 | 98 | 185 | 5 190 | 102 | 186 | 5 105 | 106 | 186 | 5 21 |
| 7 | 115 | 224 | 6 351 | 120 | 226 | 6 253 | 124 | 226 | 6 137 | 128 | 225 | 6 25 | 133 | 226 | 5 295 |

### AGE—55 through AGE—59

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AGE—55 | | | AGE—56 | | | AGE—57 | | | AGE—58 | | | AGE—59 | | |
| 2 | 0 | 0 | 0 0 | 0 | 0 | 0 0 | 1 | 2 | 0 20 | 2 | 4 | 0 37 | 4 | 7 | 0 66 |
| 3 | 27 | 51 | 1 212 | 28 | 51 | 1 183 | 30 | 53 | 1 173 | 32 | 54 | 1 160 | 35 | 58 | 1 161 |
| 4 | 54 | 98 | 2 314 | 56 | 99 | 2 263 | 59 | 100 | 2 229 | 62 | 102 | 2 195 | 66 | 105 | 2 173 |
| 5 | 82 | 144 | 3 345 | 85 | 145 | 3 276 | 88 | 145 | 3 209 | 93 | 148 | 3 170 | 97 | 149 | 3 117 |
| 6 | 109 | 185 | 4 287 | 113 | 186 | 4 206 | 118 | 187 | 4 139 | 123 | 189 | 4 72 | 129 | 191 | 4 16 |
| 7 | 137 | 225 | 5 186 | 142 | 226 | 5 94 | 148 | 227 | 5 15 | 154 | 229 | 4 301 | 161 | 231 | 4 235 |

### AGE—60

| End Of Yr | Cash Value | Paid Up Value | Ext. Term Yrs Days |
|---|---|---|---|
| 2 | 6 | 10 | 0 91 |
| 3 | 38 | 60 | 1 158 |
| 4 | 70 | 108 | 2 147 |
| 5 | 102 | 151 | 3 74 |
| 6 | 135 | 194 | 3 324 |
| 7 | 168 | 233 | 4 169 |

Age 35 - Age 60

## POLICY SPECIFICATION SCHEDULE

| | | | |
|---|---|---|---|
| POLICY NUMBER | ▮5,677 | POLICY DATE | : SEPT 6, 1991 |
| INSURED | GABRIEL ANTOUN BOUSTANI | AGE | . 14 |
| OWNER PAYOR | : ANTOUN GEBRAN BOUSTANI | MATURITY AGE | . 75 YEARS OR EARLIER |
| BENEFICIARY | AS STATED IN APPLICATION | ELECTIVE MATURITY DATE | : SEPT 6, 2052 |
| COUNTRY OF PAYMENT | · WILMINGTON, DELAWARE, U.S.A. | CURRENCY OF PAYMENT | U.S.$ |
| BASIC POLICY FACE AMOUNT | · $50,000*** | PREMIUM | : $415.00 |
| SUPPLEMENTARY CONTRACTS | : NONE | | --- |

| | | | |
|---|---|---|---|
| PREMIUM FREQUENCY | : ANNUAL | TOTAL | . $415.00 |

"See Endorsements shown herebelow"

"See War Restriction Clause M2 Attached hereto"

« See Endorsement attached hereto »

DATE OF ISSUE    · OCT 11, 1991            REGISTRAR

---

### ENDORSEMENTS

(to be made by Company only)

· 1  The Company guarantees that the Minimum interest rate on investment and Protection Account will not be less than 4½ % per annum

2  The Company guarantees that it will declare a Dividend at the end of the 7th Policy year which will not be less than 25 % of the 7th year Cash Value

3. The basic premium includes substandard premium of ____XXX____. The monthly equivalent of this premium will be deducted from the investment and protection account (IPA) every month in addition to the monthly deductions provided for in the Policy

AMENDMENT To Policy No. ███5,677       attached thereto and forming an integral part thereof:

## WAR RESTRICTION CLAUSE

It is hereby agreed that, notwithstanding the provisions of this Policy and any Supplementary Contracts made a part thereof, (excluding Accidental Death Benefit Supplementary Contracts), if the Insured dies as a direct or indirect consequence of war or warlike operations (whether war be declared or not), or of invasion, act of foreign enemy, hostilities, mutiny, riot, civil commotion, civil war, rebellion, revolution, insurrection, conspiracy, military or usurped power, martial law or state of siege, or any of the events or causes which determine the proclamation or maintenance of martial law or state of siege, the Company's liability under this policy shall be limited to the reserves under the Policy reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.

AMERICAN LIFE INSURANCE COMPANY



M-2

## ENDORSEMENTS
### (to be made by Company only)

POLICY NO: ███5,677          INSURED: GABRIEL ANTOUN BOUSTANI

Notwithstanding anything to the contrary herein, it is hereby understood and agreed that in the event of the Insured's death prior to his or her attaining the age of 15 years, the amount payable under this Policy shall be (1) the premiums actually paid under this Policy together with interest thereon at the rate of three per centum per annum, or (2) the reserve on this Policy, whichever is the larger amount, less any indebtedness, including interest due or accrued, to the Company existing against this Policy.



# Exhibit D

№  39615



## American Life
## Insurance Company

**WORLDWIDE COVERAGE
INCOME GROWTH PLAN**

**HEREBY INSURES** the Insured stated in the Policy Specification Schedule and agrees to pay the benefits provided herein subject to the terms and conditions hereof.

**PREMIUMS** for the Basic Policy are payable as of the Policy Date and thereafter during the lifetime of the Insured as stated in the Policy Specification Schedule.

**ADDITIONAL PREMIUMS** for any Supplementary Contracts attached hereto are payable on the same date as the premium payment date of the Basic Policy, such payments to continue until termination of such Supplementary Contracts in accordance with the terms thereof.

**THIS CONTRACT** is made in consideration of the application for this Policy and the payment, in advance, of premiums as herein provided.

**POLICY YEARS**, months and anniversaries will be determined from the Policy Date stated in the Policy Specification Schedule.

**THE BENEFITS**, provisions and conditions set forth in the Policy Specification Schedule and on this and the following pages are a part of this Contract.

**ALL SUMS** payable hereunder by or to the Company shall be payable in the currency stated in the Policy Specification Schedule and shall be paid at the office of the Company in the Country of Payment stated in the Policy Specification Schedule.

**IN WITNESS WHEREOF, AMERICAN LIFE INSURANCE COMPANY** has caused this Policy to be executed as of the date of issue stated in the Policy Specification Schedule.

Registrar

CHAIRMAN AND CHIEF EXECUTIVE OFFICER

REV 12 - 95

# GENERAL PROVISIONS

**THE CONTRACT, ITS PROVISIONS AND LIMITATIONS** : This Policy and the application for it, a copy of which is attached hereto and made a part hereof, together with any Supplementary Contract applied for which are attached hereto and stated to be a part hereof, constitute the entire Contract. All statements made in applying for the Contract will be deemed, in the absence of fraud, representations and not warranties. No statement will be used to invalidate the Contract nor to defend against a claim under it unless contained in the written application.

**MODIFICATIONS** : Only the Chairman of the Board, President, Vice President, Regional Vice President, Actuary, Secretary, Assistant Vice President, Regional Secretary or Registrar of the Company can make or modify this Contract, extend the time for payment of any premium, or waive any of the Company's rights or requirements.

**BENEFITS** : Benefits are only payable by the Company upon delivery of this Policy together with satisfactory proof of the age of Insured and the title of Claimant.

**CHANGE IN PLAN** : This Policy may be changed to another plan of insurance with the consent of the Company, subject to such requirements and upon payment of such cost, if any, as the Company shall determine.

**INCONTESTABILITY** : This Policy, but not any part thereof granting Disability or Accident Benefits, shall be incontestable after it has been in force during the lifetime of Insured for two years from its Date of Issue except for non-payment of premium.

**SUICIDE** : If the Insured commits suicide, while sane or insane, within two years from the date of issue or from the date of any reinstatement of the Policy, the insurance under this Contract shall be a sum equal to the premiums paid and no more.

**AGE** : If the age of the Insured has been under-stated, any amount payable under this Policy shall be reduced to equal the amount as the premium paid would have purchased at the correct age. If the age has been over-stated, the excess of the amount of premium paid over the premium at the correct age will be refunded without interest and there will be no change in the amount payable under the Policy.

**OWNERSHIP AND RIGHTS UNDER THIS POLICY** : Subject to any statutory restrictions, all rights, privileges and options provided under the Contract not specifically granted to any other person shall be reserved to the Owner alone, if the right to change the Beneficiary has been reserved; otherwise to the Owner and Beneficiary, jointly.

**CHANGES IN OWNERSHIP AND BENEFICIARY** : At any time during the continuance of this Contract, by filing written notice satisfactory to the Company:

a) the Owner may transfer his entire ownership to take effect during his lifetime, and

b) unless otherwise provided herein the Beneficiary may be changed, with or without reserving the future right to change the Beneficiary in so far as the laws governing this Policy allow. No such transfer or change will take effect unless recorded by the Company, but when so recorded shall become effective as of the date the notice was signed, subject to any payment made or other action taken by the Company before such recording.

**RIGHTS IN EVENT OF DEATH OF OWNER OR BENEFICIARY** : The rights of an Owner other than the insured whose death occurs during the continuance of this Contract shall pass to the Insured unless otherwise provided herein. The rights of a Beneficiary whose death occurs prior to the expiration of a period of fifteen days commencing with the death of the Insured shall pass to the Owner, unless payment has been made to such Beneficiary or, unless otherwise provided herein.

**ASSIGNMENT** : No assignment of this Policy, or of any interest therein, shall be binding on the Company unless recorded by the Company. Any assignment shall be subject to any payment made or other action taken by the Company before the assignment is received and recorded by the Company. The Company assumes no responsability for the validity, effect or sufficiency of any assignment.

**OTHER WAYS IN WHICH THE PROCEEDS OF THIS POLICY MAY BE PAID** : The whole or part of the proceeds of this Policy may, with the Company's consent, be settled under one of the Optional methods of settlement then made available by the Company.

**TRANSFER OF RESIDENCE** : In the event the Owner takes up residence outside the country of payment specified in the Policy Specification Schedule, in a country where the Company writes the same Policy Plan, this Policy may be transferred to the Owner's new country of residence with the approval of the Company, subject to and conditional upon the Owner paying any taxes or other expenses directly resulting from such transfer, provided however, that no such transfer shall be effected if it would be in violation of any law or Government regulation then in effect. In applying for such transfer, the Owner understands and agrees that upon transfer, the Company will convert the Face Amount, premium and Cash Values, if any, of the Policy to the official currency of the Owner's new country of residence in accordance with the rules of the Company then in effect. Because local laws and business conditions vary when a transfer is requested the Company reserves the right to condition any offer to transfer made to the Company upon the Owner agreeing to a change in the Policy Plan, and/or Face Amount and/or premiums payable.

**GENERAL AND SPECIAL PROVISIONS REGULATING THE POLICY** : The above General Provisions shall apply to the Policy as long as the Contract is in force. The following Special Provisions - PART I and PART II - shall apply to the Policy depending on the period the Contract has been in force and as provided in each of PART I and PART II.

# SPECIAL PROVISIONS - PART I

The following Special Provisions - Part I shall apply to the Policy during the first seven years of the continuance of the contract and shall be of no effect at the expiry of said period, unless the Policy at said Date, is under one of the Options (2 ) or ( 3 ) of the Elective Non - Forfeiture Provisions defined herebelow under this Part.

**DEATH BENEFIT** : Subject to the provisions of this Policy, in case of death, of the Insured, the Company shall pay to the Beneficiary the Basic Face Amount less any debt on the Policy.

**PAYMENT OF PREMIUMS AND GRACE PERIOD** : All premiums are payable in advance, in exchange for a receipt signed by an Officer of the Company listed in the " Modifications " provision of this Policy. A grace period of 31 days from its due date will be allowed for payment of each premium after the first, during which period the Policy will remain in force. If death occurs within the Grace period any premium then due and unpaid will be deducted in settlement of this Policy.

**LAPSE** : If at the expiration of the Grace period, the premium remains unpaid and the Policy has not yet acquired a Basic Cash Value, the Policy shall lapse and have no further value.

**GUARANTEE OF MINIMUM BASIC VALUES** : The Company guarantees that the Basic Cash Value, the Basic Reduced Paid Up Insurance and the Extended Term Insurance period will not be less than the values shown in the attached Table for the appropriate Plan, Age and Duration. The Basic Values shown assume (1) that premiums have been paid in full to the end of the period shown and (2) that there is no existing indebtedness.

**POLICY LOANS** : The Company will lend on sole security and proper assignment of this Policy during its continuance, an amount not exceeding the then Loan Value. The Loan Value of this Policy is 90% of the amount which with interest to the end of the policy year will equal the Basic Cash Value of the Policy less any existing indebtedness. The Company reserves the right to defer the granting of a loan, other than a loan to pay premiums, for a period not exceeding six months. Interest on the loan will accrue from day to day, at a rate of interest determined by the Company, payable on each anniversary of the Policy. The Company shall have the right to redetermine the rate of interest applicable to new and existing loans. Interest not paid when due will be added to the principal of the loan upon which interest is calculated. The loan principal and accrued interest thereon will be deducted from any settlement under the Policy.

**AUTOMATIC NON - FORFEITURE PROVISIONS** : If , at the expiration of the Grace period, the premium remains unpaid and non - forfeiture provision has been elected and the Policy has acquired a Basic Cash Value, the Policy will automatically continue in force as follows :

a) If the Loan Value is equal to or greater than the unpaid premium the Company will advance the premium due as a an Automatic Premium Loan .

b) If the Loan Value is insufficient to cover any premium in default the Policy shall be continued in force for such proportion of the period covered by the premium due as the loan value bears to the premium.

## ELECTIVE NON - FORFEITURE PROVISIONS :

**OPTION 1 - CASH SURRENDER** : At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can surrender the Policy, and receive the Basic Cash Value, less any indebtedness.

**OPTION 2 - REDUCED PAID UP INSURANCE** : At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can continue the Policy as nonparticipating Reduced Paid Up Insurance for such amount as the Cash Value less any indebtedness would purchase at the attained age of the Insured and on a basis determined by the Company. The Reduced Paid Up amount will be paid at age 75 or upon earlier death of the insured.

**OPTION 3 - EXTENDED TERM INSURANCE** : At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner may continue the Policy as nonparticipating Extended Term Insurance in an amount equal to the Face Amount less any existing indebtedness. The period for which such Extended Term Insurance will be continued shall be such as the Basic Cash Value less any indebtedness will purchase at the attained age of the Insured.

**REINSTATEMENT** : Unless this Policy has been cash surrendered, it may be reinstated at any time within three years after default in payment of premium upon written application to the Company with the production of evidence of insurability, including good health, satisfactory to the Company together with payment of all overdue premiums and repayment or reinstatement of any loan, both with interest to the date of reinstatement at a rate of interest determined by the Company, compounded annually. In addition to the provisions of the Incontestability Clause herein, a reinstated Policy shall be contestable on account of fraud or misrepresentation of material facts pertaining to the reinstatement for two years from the date of reinstatement.

# SPECIAL PROVISIONS - PART II

The following Special Provisions - Part II shall apply to the Policy after the first seven years of its continuance provided the Policy is not then under Option ( 2 ) or Option ( 3 ) of the Elective Non - Forfeiture Provision stated in PART I.

**DIVIDEND :** The Company will declare a Dividend at the end of the 7th Policy year.

## INVESTMENT AND PROTECTION ACCOUNT ( IPA ) PROVISIONS

**TRANSFER TO INVESTMENT AND PROTECTION ACCOUNT :** On the 7th Anniversary Date of the Policy, the Basic Cash Value of the Policy and the Dividend, as at the end of the 7th year of the Policy, will be transferred to the Investment and Protection Account hereinafter called IPA as the opening balance of the Owner's account at the beginning of the 8th year of the Policy.

**PREMIUM :** The premium amount and the frequency are shown on the Policy Specification Schedule. Changes in frequency and increases and decreases in the amount of premium payments may be made at any time by the Owner subject to the minimum amount acceptable by the Company at that time.

**GRACE PERIOD :** If the Surrender Value on any monthly due date is insufficient to cover the next monthly deduction, a grace period of 31 days shall be allowed for the payment of a premium sufficient to cover the monthly deduction. If the Insured dies within the grace period, the amount of the overdue monthly deduction will be deducted from the proceeds.
If sufficient premium is not paid by the end of the grace period, all coverage under this Policy will terminate and the Policy will end without value.

**REINSTATEMENT :** If the Policy is terminated because the grace period expired without sufficient premium being paid, this Policy may be reinstated during the Insured's life within 3 years after the expiry of the grace period. The reinstatement is subject to production of evidence of insurability satisfactory to the Company together with a payment of a minimum premium sufficient to keep the Policy in force for at least 12 months. Said minimum premium shall not be less than the minimum deposit acceptable by the Company. Any Policy debt which existed at the end of the grace period will be reinstated if it is not paid. The effective date of reinstatement will be the monthly due date following the date of approval of reinstatement. The Policy cannot be reinstated if it has been surrendered by the Owner for its surrender value.

**IPA VALUE :** The IPA Value on any monthly due date is calculated as follows :
the IPA Value on the prior monthly due date;
less partial surrenders since the prior monthly due date;
less the Monthly Deductions
plus one month's investment earnings
plus all Net Premiums received since the prior monthly due date.

**INVESTMENT YIELD :** The guaranteed minimum investment yield on IPA Value is shown on the Policy Specification Schedule. Yield in excess of the guaranteed minimum may be applied in calculation of IPA Value at such increased rates as the Company may determine.

**NET PREMIUMS :** The net premium is equal to the premium paid less management expenses as determined by the Company. The net premium shall be added to the IPA Value of the Policy.

**MONTHLY DEDUCTIONS :** The Company shall deduct monthly from the IPA Value, management expenses as determined by the Company, the cost of insurance, if any, the extra premium for substandard risk, if any, and the premium for additional benefits under the Supplementary Contracts if any, attached to the Policy. The cost of insurance rates shall not be greater than the 1980 CSO Mortality Table.

## INSURANCE COVERAGE PROVISIONS

**Death Benefit :** The Company agrees to pay the Basic Face Amount or the IPA Value whichever is greater, to the Beneficiary in case of death of the Insured. The death benefit will be reduced by any Policy debt or partial surrenders.

**Changes in Basic Face Amount :** The Basic Face Amount of the Policy may be increased or decreased by written request from the Owner, subject to the limits as determined by the Company at that time. Any request for increase must be made on a supplemental application and shall be subject to evidence of insurability satisfactory to the Company. Any increase or decrease will become effective on the monthly due date after the date of approval.

**Maturity Benefit :** The policy will mature on the Elective Maturity Date shown on the Policy Specification Schedule. The maturity benefit shall be the IPA value less any indebtedness. The Owner can change the Elective Maturity Date of the Policy by making a written request to the Company at least 3 months prior to the Elective Maturity Date. The Elective Maturity Date cannot be earlier than 10 years from the Policy date and later than the Policy Anniversary at age 75 last birthday of the Insured.

## SURRENDER AND LOAN PROVISIONS

**Surrender Value :** The Surrender Value of the Policy is its IPA Value less any Policy debt and less any surrender charge to be determine by the Company.

**Total & Partial Surrenders :** The Policy may be surrendered on any monthly due date upon written request by the Owner to the Company. The amount payable on surrender shall be the Surrender Value of the Policy.
A partial surrender of this Policy may be made on any monthly due date during the lifetime of the Insured by written request of the Owner. The amount of the partial surrender must not exceed a percentage of the IPA Value to be determined by the Company. The Company will deduct a partial surrender charge from the partial surrender amount. The Company can defer payment of the partial surrender amount for a period not exceeding 6 months. The Company can also limit the number of partial surrenders in a Policy year.
When a partial surrender is made, the amount of the partial surrender will be deducted from the IPA Value and also from the Basic Face Amount. Partial surrender will not be permitted if it will result in a reduction of Basic Face Amount to less than the minimum Basic Face Amount as determined by the Company.

**Policy Loans :** Policy Loan provision in Part I will apply except that the Loan Value is 90% of the amount which with interest, to the end of the Policy year, will equal the Surrender Value as defined in the Provision " Surrender Value " in Part II.

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

**AGE—35 / AGE—36 / AGE—37 / AGE—38 / AGE—39**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 |
| 3 | 12 | 48 | 3  313 | 13 | 50 | 3  311 | 13 | 48 | 3  204 | 14 | 49 | 3  194 | 14 | 47 | 3  97 |
| 4 | 25 | 95 | 7  18 | 26 | 95 | 6  283 | 27 | 95 | 6  183 | 28 | 95 | 6  84 | 29 | 95 | 5  350 |
| 5 | 38 | 138 | 9  94 | 39 | 138 | 9  4 | 41 | 139 | 8  271 | 42 | 137 | 8  105 | 44 | 138 | 8  |
| 6 | 51 | 180 | 11  117 | 53 | 180 | 10  326 | 55 | 179 | 10  167 | 57 | 179 | 10  9 | 60 | 181 | 9  266 |
| 7 | 64 | 217 | 12  272 | 67 | 219 | 12  326 | 70 | 220 | 11  340 | 73 | 220 | 11  185 | 76 | 221 | 11  28 |

**AGE—40 / AGE—41 / AGE—42 / AGE—43 / AGE—44**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 |
| 3 | 15 | 49 | 3  81 | 16 | 50 | 3  59 | 16 | 48 | 2  333 | 17 | 49 | 2  306 | 18 | 50 | 2  276 |
| 4 | 30 | 99 | 5  248 | 32 | 99 | 5  206 | 33 | 96 | 5  104 | 34 | 95 | 5  4 | 36 | 97 | 4  317 |
| 5 | 46 | 139 | 7  260 | 48 | 139 | 7  151 | 50 | 140 | 7  42 | 52 | 140 | 6  292 | 54 | 140 | 6  188 |
| 6 | 62 | 180 | 9  105 | 65 | 182 | 8  359 | 68 | 183 | 8  242 | 70 | 182 | 8  86 | 73 | 183 | 7  335 |
| 7 | 79 | 221 | 10  235 | 82 | 221 | 10  17 | 86 | 223 | 9  322 | 89 | 223 | 9  164 | 92 | 222 | 9  30 |

**AGE—45 / AGE—46 / AGE—47 / AGE—48 / AGE—49**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 |
| 3 | 18 | 49 | 2  193 | 19 | 49 | 2  162 | 20 | 50 | 2  130 | 21 | 51 | 2  97 | 21 | 49 | 2  30 |
| 4 | 37 | 96 | 4  218 | 39 | 98 | 4  168 | 40 | 96 | 4  72 | 42 | 98 | 4  18 | 43 | 97 | 3  295 |
| 5 | 56 | 140 | 6  81 | 59 | 142 | 6  11 | 61 | 142 | 5  270 | 63 | 141 | 5  167 | 66 | 143 | 5  94 |
| 6 | 76 | 183 | 7  216 | 79 | 184 | 7  103 | 82 | 184 | 6  354 | 85 | 184 | 6  239 | 88 | 184 | 6  127 |
| 7 | 96 | 223 | 8  252 | 100 | 224 | 8  129 | 103 | 223 | 7  345 | 107 | 224 | 7  324 | 111 | 224 | 7  104 |

**AGE—50 / AGE—51 / AGE—52 / AGE—53 / AGE—54**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 0 | 0  0 |
| 3 | 22 | 49 | 2  0 | 23 | 50 | 1  334 | 23 | 50 | 1  304 | 25 | 50 | 1  273 | 26 | 51 | 1  242 |
| 4 | 45 | 97 | 3  241 | 47 | 98 | 3  185 | 48 | 97 | 3  106 | 50 | 98 | 3  53 | 52 | 98 | 3  4 |
| 5 | 68 | 143 | 4  300 | 71 | 143 | 4  286 | 73 | 142 | 4  191 | 76 | 143 | 4  120 | 79 | 144 | 4  49 |
| 6 | 91 | 184 | 6  18 | 95 | 185 | 5  296 | 98 | 185 | 5  190 | 102 | 186 | 5  108 | 106 | 186 | 5  21 |
| 7 | 115 | 224 | 6  351 | 120 | 226 | 6  253 | 124 | 226 | 6  137 | 128 | 225 | 6  25 | 133 | 226 | 5  295 |

**AGE—55 / AGE—56 / AGE—57 / AGE—58 / AGE—59**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0  0 | 0 | 0 | 0  0 | 0 | 2 | 0  20 | 2 | 4 | 0  37 | 4 | 2 | 0  56 |
| 3 | 27 | 51 | 1  212 | 28 | 51 | 1  183 | 30 | 53 | 1  173 | 32 | 54 | 1  160 | 35 | 56 | 1  161 |
| 4 | 54 | 98 | 2  314 | 56 | 99 | 2  263 | 59 | 100 | 2  229 | 62 | 102 | 2  295 | 66 | 105 | 2  173 |
| 5 | 82 | 144 | 3  345 | 85 | 145 | 3  276 | 88 | 145 | 3  209 | 93 | 146 | 3  170 | 97 | 149 | 3  117 |
| 6 | 109 | 185 | 4  287 | 113 | 186 | 4  206 | 118 | 187 | 4  139 | 123 | 189 | 4  92 | 129 | 191 | 4  16 |
| 7 | 137 | 225 | 5  188 | 142 | 226 | 5  94 | 148 | 227 | 5  15 | 154 | 229 | 4  301 | 161 | 231 | 4  235 |

**AGE—60**

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs Days |
|---|---|---|---|
| 2 | 4 | 10 | 0  01 |
| 3 | 38 | 60 | 1  158 |
| 4 | 70 | 108 | 2  137 |
| 5 | 102 | 151 | 3  74 |
| 6 | 135 | 194 | 3  334 |
| 7 | 168 | 235 | 3  169 |

Age 35 - Age 60

## INCOME GROWTH PLAN
### TABLE OF BASIC VALUES PER 1000 FACE AMOUNT

| End Of Yr | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days | Cash Value | Paid Up Value | Ext Term Yrs Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | AGE—0 | | | AGE—1 | | | AGE—2 | | | AGE—3 | | | AGE—4 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 2 | 29 | 1  188 | 2 | 28 | 1  211 | 2 | 27 | 1  233 | 3 | 46 | 2  227 | 3 | 39 | 2  249 |
| 4 | 4 | 57 | 3  139 | 5 | 69 | 4  196 | 5 | 66 | 4  235 | 5 | 164 | 4  251 | 6 | 74 | 5  242 |
| 5 | 6 | 82 | 5  225 | 7 | 93 | 6  296 | 8 | 103 | 7  300 | 8 | 99 | 7  238 | 9 | 108 | 8  133 |
| 6 | 9 | 120 | 9   ... | 10 | 128 | 9  332 | 11 | 124 | 9  233 | 11 | 132 | 10  103 | 12 | 139 | 10  308 |
| 7 | 11 | 141 | 10  342 | 13 | 161 | 12  263 | 14 | 168 | 13  125 | 14 | 162 | 12  309 | 15 | 167 | 13  138 |
| | AGE—5 | | | AGE—6 | | | AGE—7 | | | AGE—8 | | | AGE—9 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 3 | 37 | 2  256 | 3 | 36 | 2  253 | 3 | 35 | 2  234 | 3 | 33 | 2  202 | 4 | 43 | 3   94 |
| 4 | 6 | 72 | 5  192 | 6 | 69 | 5  124 | 7 | 78 | 5  356 | 7 | 75 | 5  255 | 7 | 72 | 5  157 |
| 5 | 9 | 104 | 8   14 | 10 | 111 | 8  213 | 10 | 107 | 8   76 | 11 | 114 | 8  255 | 11 | 110 | 8  128 |
| 6 | 13 | 145 | 11  153 | 13 | 140 | 10  329 | 14 | 145 | 11  146 | 15 | 150 | 11  334 | 14 | 144 | 11  190 |
| 7 | 16 | 172 | 13  325 | 17 | 176 | 14  148 | 18 | 180 | 14  338 | 19 | 183 | 15  166 | 19 | 176 | 14  355 |
| | AGE—10 | | | AGE—11 | | | AGE—12 | | | AGE—13 | | | AGE—14 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 4 | 41 | 3   46 | 4 | 40 | 2  345 | 4 | 38 | 2  293 | 4 | 37 | 2  245 | 4 | 36 | 2  210 |
| 4 | 8 | 80 | 5  345 | 8 | 77 | 5  256 | 8 | 74 | 5  179 | 8 | 72 | 5  115 | 9 | 78 | 5  323 |
| 5 | 12 | 115 | 8  316 | 12 | 111 | 8  214 | 13 | 117 | 9   59 | 13 | 112 | 8  346 | 13 | 108 | 8  279 |
| 6 | 16 | 148 | 12   30 | 16 | 143 | 11  276 | 17 | 147 | 12  129 | 18 | 150 | 12  341 | 18 | 144 | 12  233 |
| 7 | 20 | 179 | 15  192 | 21 | 181 | 16   22 | 22 | 183 | 16  203 | 22 | 176 | 16   38 | 23 | 178 | 16  126 |
| | AGE—15 | | | AGE—16 | | | AGE—17 | | | AGE—18 | | | AGE—19 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 4 | 34 | 2  181 | 5 | 42 | 3   22 | 5 | 40 | 2  364 | 5 | 39 | 2  345 | 5 | 37 | 2  331 |
| 4 | 9 | 75 | 5  278 | 10 | 80 | 6  114 | 10 | 77 | 6   95 | 10 | 74 | 6   59 | 11 | 79 | 6  268 |
| 5 | 14 | 112 | 9  136 | 15 | 116 | 9  350 | 15 | 113 | 9  276 | 15 | 115 | 10  102 | 17 | 117 | 10  272 |
| 6 | 19 | 147 | 13   65 | 20 | 149 | 13  233 | 21 | 151 | 14    6 | 22 | 152 | 14  103 | 23 | 153 | 14  157 |
| 7 | 24 | 179 | 16  293 | 25 | 179 | 16  328 | 27 | 187 | 17  207 | 28 | 186 | 17  167 | 29 | 186 | 17   99 |
| | AGE—20 | | | AGE—21 | | | AGE—22 | | | AGE—23 | | | AGE—24 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 6 | 43 | 3  176 | 6 | 44 | 3  158 | 6 | 40 | 3  137 | 7 | 45 | 3  325 | 7 | 43 | 3  293 |
| 4 | 12 | 83 | 7   99 | 12 | 80 | 7   39 | 13 | 83 | 7  206 | 13 | 80 | 7  130 | 14 | 83 | 7  261 |
| 5 | 18 | 120 | 11   47 | 19 | 122 | 11  152 | 20 | 123 | 11  219 | 21 | 124 | 11  250 | 22 | 125 | 11  248 |
| 6 | 24 | 154 | 14  171 | 25 | 154 | 14  153 | 27 | 160 | 14  285 | 28 | 160 | 14  198 | 30 | 164 | 14  246 |
| 7 | 31 | 191 | 17  185 | 33 | 196 | 17  223 | 34 | 194 | 17   66 | 36 | 197 | 17   38 | 38 | 200 | 16  342 |
| | AGE—25 | | | AGE—26 | | | AGE—27 | | | AGE—28 | | | AGE—29 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 7 | 44 | 3  258 | 8 | 46 | 3   53 | 8 | 44 | 4   ... | 9 | 47 | 4  143 | 9 | 46 | 4   82 |
| 4 | 15 | 85 | 8   41 | 16 | 88 | 8   73 | 17 | 89 | 8  113 | 17 | 86 | 7  330 | 18 | 87 | 7  324 |
| 5 | 23 | 126 | 11  217 | 24 | 126 | 11  162 | 25 | 126 | 11   85 | 27 | 131 | 11  123 | 28 | 131 | 11    3 |
| 6 | 32 | 163 | 14  132 | 33 | 167 | 14   95 | 35 | 170 | 14   47 | 36 | 168 | 13  222 | 38 | 170 | 13  131 |
| 7 | 40 | 202 | 16  253 | 42 | 204 | 16  137 | 44 | 205 | 16    3 | 47 | 211 | 15  312 | 40 | 211 | 15  138 |
| | AGE—30 | | | AGE—31 | | | AGE—32 | | | AGE—33 | | | AGE—34 | | |
| 2 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 | 0 | 0 | 0   0 |
| 3 | 9 | 44 | 4  162 | 10 | 47 | 4   94 | 10 | 45 | 4    6 | 11 | 47 | 4   43 | 12 | 50 | 4   58 |
| 4 | 19 | 89 | 7  232 | 20 | 90 | 7  232 | 21 | 90 | 7  177 | 22 | 91 | 7   99 | 23 | 91 | 7   15 |
| 5 | 30 | 135 | 10  349 | 31 | 134 | 10  198 | 33 | 137 | 10  191 | 34 | 135 | 9  343 | 36 | 137 | 9  262 |
| 6 | 40 | 172 | 13  217 | 42 | 174 | 13  262 | 46 | 173 | 12  126 | 46 | 176 | 11  349 | 49 | 180 | 11  273 |
| 7 | 51 | 211 | 14  320 | 54 | 215 | 14  211 | 56 | 214 | 14   15 | 59 | 216 | 13  250 | 62 | 219 | 13  162 |

## POLICY SPECIFICATION SCHEDULE

POLICY NUMBER        ████5964                POLICY DATE        : JULY 17, 1995

INSURED      :ANTOUN GEBRAN BOUSTANI        AGE                : 48
OWNER        :ANTOUN GEBRAN BOUSTANI        MATURITY DATE      : JULY 17, 2022
                                                                 OR EARLIER

BENEFICIARY(IES)* : AS STATED ON APPLICATION        CURRENCY OF PAYMENT: UNITED STATES DOLLARS
             "See Endorsement Shown Herebelow"
BASIC POLICY
FACE AMOUNT      :*******50,000.00****        COUNTRY OF PAYMENT : WILMINGTON U.S.A.
             FIFTY THOUSAND U.S. DOLLARS ONLY

PLAN         :INCOME GROWTH PLAN             BASIC PREMIUM :     **********1,350.00

SUPPLEMENTARY
CONTRACTS ATTACHED :

                              PREMIUM PAYABLE EVERY TWELVE MONTHS IS **********1,350.00

<<SEE WAR RISK ENDORSEMENT - FORM 984 ATTACHED HERETO>>

DATE OF ISSUE    :SEPTEMBER 4, 1995          REGISTRAR _____

## ENDORSEMENTS

### (TO BE MADE BY COMPANY ONLY)

1. The Company guarantees that the Minimum investment yield on Investment and Protection
   Account (IPA) will not be less than 4 1/2% per annum.

2. The Company guarantees that the Dividend to be declared at the end of the 7th Policy year
   shall not be less than 25% of the 7th year Cash Value.

3. The Maturity benefit of the Policy can be used to buy a pension from the Company at the
   rates applied by the Company at that time.

*   BENEFICIARY: BANQUE DE LA MEDITERRANNEE, HEAD OFFICE, IRREVOCABLE;FOR
    THE AMOUNT OF DEBT DUE TO THE SAID BANK, THE SURPLUS, IF ANY, TO BE
    PAID TO : GABRIEL ANTOUN BOUSTANI, SON OF THE INSURED.

                    (See Endorsement attached hereto)

                              REGISTRAR _____

# AMERICAN LIFE INSURANCE COMPANY
## War Risk Endorsement - Form No. 984

AMENDMENT to Policy No. ▆▆▆5,964 and Supplementary Contract Form No(s). XXX attached thereto and forming an integral part thereof:

In this endorsement:

- War means: War or War like operations ( whether war be declared or not ) or invasion, act of foreign enemy, hostilities, mutiny, riot, civil commotion, civil war, rebellion, revolution, insurrection, conspiracy, military or unsurped power, martial law or state of siege, or any of the events or causes which determine the proclamation or maintenance of martial law or state of siege.
- Equivalent Lump Sum Benefit means : In respect of Term Insurance supplementary contract, its face amount. In respect of supplementary contracts providing annual benefit on death in the form of income and/or waiver of premium, 50% of such annual benefit times the period over which this benefit is payable.

## CLAUSE (1) (War Exclusion Clause)

It is hereby agreed that, notwithstanding the provisions of this Policy and any Supplementary Contract made a part thereof, ( excluding Accidental Death Benefit Supplementary Contracts ), if the Insured/Payor dies or is totally and permanently disabled as a direct or indirect consequences of war, or as a result of his directly or indirectly taking an active part in war, the Company's liability under this Policy shall be limited to the reserves under the Policy, if any, reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.

## CLAUSE (2) (War Coverage Clause)

This Clause will apply only if the War Risk Endorsement Form No. 984 is endorsed on the policy specification schedule and the war premium stated therein is paid.

i) Notwithstanding the provisions of CLAUSE (1) above, if the Insured/Payor dies as a direct or indirect consequence of war, the Company's liability under this Policy and any Supplementary Contracts made a part of this Policy shall be limited to the larger amount of :

  (a) The reserves under the Policy, if any, and

  (b) The aggregate of the death benefit under the Policy and the Equivalent Lump Sum Benefit under such Supplementary Contracts made a part of the Policy, if any, due at that time, provided that such an aggregate is limited to a maximum amount of XXX plus the reserves corresponding to the difference, if any, between the actual face amount of the Policy and the face amount of the Policy included in the said maximum amount.

  The amount payable under (a) or (b) above shall be reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.

  Provided that if the Insured's/Payor's death was due directly or indirectly to his taking an active part in war as defined above, the liability of the Company shall be limited only to the reserves under (a) above, if any, less any indebtedness to the Company existing against the Policy including interest due or accrued.

ii) Notwithstanding anything to the contrary under this Policy or under any other policy ( Life, PA or Group Policy ), the total amount of the war cover granted thereunder by the Company on the life of the Insured/Payor shall not exceed in any case the maximum amount of XXX inclusive of any Equivalent Lump Sum Benefit.

iii) The war coverage may be renewed from term to term on each Policy anniversary thereafter with the consent of the Company by the payment in advance of the Company's premium rate in force at the time of renewal. The effective date shall be the Policy date unless a different date is shown here.

## CLAUSE (3):

Notwithstanding anything in the foregoing to the contrary, Clause 2 is inapplicable to and provides no War Coverage under the Company's Accidental Death Benefit Supplementary Contract and the Supplementary Contract(s) covering total and permanent disability of the Insured/Payor.

DATE : SEPT 4, 1995



# AMERICAN LIFE INSURANCE COMPANY
## WILMINGTON , DELAWARE, U.S.A.

## ENDORSEMENT

On Policy No. ███ 05,964  issued in consideration of the
Application No. 7,710

The designation of  BANQUE DE LA MEDITERRANNEE , HEAD OFFICE,

As Irrevocable Beneficiary under the above Policy is a collateral for a
Loan/Credit Facility granted by the Beneficiary to the Policyowner-If
any-At date of entitlement to the Policy proceeds for the amount of such
Loan/Credit Facility or for the amount of the Policy Proceeds existing at
that time reduced by any debt on the Policy with interest thereon,
whichever amount is less.

The balance of the Policy proceeds, if any, to be paid to
GABRIEL ANTOUN BOUSTANI , SON OF THE INSURED.

It is understood that the Beneficiary records shall be conclusive
evidence to the Company of the amount of the Loan/Credit Facility
granted.

Policyowner /
Date:                                           Irrevocable Beneficiary

The Company has affixed its seal and signature on this Endorsement as
an evidence of recording it in its books for implementation as above.
The Company does not bear any responsibility in respect of the validity
or accuracy of the Loan/ Credit Facility between the Policyowner and the
Irrevocable Beneficiary.

Date: SEPT. 4, 1995

American Life Insurance Company

MARCH 94 -



**American Life
Insurance Company**
WILMINGTON DELAWARE U.S.A.

AMENDMENT TO APPLICATION FOR POLICY

Application No. 7-766

1. _Anton Jebran Boustani_ ................. hereby request that my application dated

_Bechfi_

_7-7_ , 19_95_, be amended as follows: _Raque de Re_ .......................

_of the amount of loan - Balance of any to my son_ _(i/a)_

_Gabriel Anton Boustani born 1974._

I certify that there has been no change in my condition of health; and that I have received no medical attention, consultation or examination whatsoever, since the date of completion of said application; furthermore, that all my answers as written in said application, including those relating to my occupation, are still true.

Signed at _Beirut_ ____ , this ___ day of ___ July ___ 19_96_
(City)

_Witness_ _6 0 5 0 3 0 . 6 1_          _Signature of Applicant_

A Member Company of
American International Group

46-UND. e. JAN. . 93

3. BENEFICIARY Include address if not same as Residence in 1. above
(Print Full Name)                                              Age          Relationship

_Izella Bechara Citcoleh_        _1960_        _Wife_ 23/

_Gabriel Anton Boustani_         _47/995_       _Son_     /5

Unless otherwise directed above: (A) the proceeds are to be divided equally among all persons who are named as Beneficiary and who survive the insured, and (B) the right to change the beneficiary is reserved

4. OWNER (To be completed if Owner is not the Proposed Insured)
Full Name:
Address for Correspondence P.O.Box _____ Street & No.
City _____ District _____ Country _____ No.
Relationship to Proposed Insured

American Life Insurance Company
A Member Company of American International Group

C2C  ME 5/88



**American Life
Insurance Company**
WILMINGTON, DELAWARE, U.S.A.

☐ WITH MEDICAL EXAMINATION
☐ WITHOUT MEDICAL EXAMINATION

## Application

PLEASE PRINT ANSWERS IN INK — ANY ALTERATIONS MUST BE INITIALLED BY THE PROPOSED INSURED

**1. PROPOSED INSURED**  ☑ Male  ☐ Female
_Bou~~_          _Antoine_          _Geitan_
Last Name          First Name          Middle Name

☐ Single  ☑ Married   Place of Birth _Beirut_   Date of Birth [blacked] _1944_  Age _45_
☐ Widowed ☐ Divorced
No. & Date
Proof of Age Document _____ Page 53 _____   Citizen of Issue _____   of (Country) _(Leban) ___
Residence Address P.O Box _____   Street & No. _Mani Web_
Bldg _Kiki_   City _Adma_   Country _Lebanon_   No. _586615_
Occupation(s) Principal _Banque de la Mediterranee SAL_   Other _Naive_
Nature of Business & Exact Duties _Operation Manager_
Business Address: P.O Box _11 348_   Street & No. _Verdun Main Rd_
Bldg _Banque Mediterr_  City _Beirut_   Country _Lebanon_   No. _86673_

Address for Correspondence: ☐ Residence ☑ Business ☐ Owner

---

**2. BENEFITS**  ☐ Participating   Face
Plan _____   ☐ Non-Participating   Currency _U.S.A.D_   Amount $ _____

Supplementary Contracts:
☑ ADB _____   ☐ M.A.R.  R & B _____ /Surgical _____ /Doctor's visits _____
☐ WP _____   ☐ LTR _____ for _____ years
☐ A1 _____   ☐ M.I.B. _____ (Mo.Inc) for _____ years
☐ AX _____   ☐ P.T.O _____
☐ WCC _____   ☐ _____

If A1 is required please state average weekly income over past 12 months _____
Premium Mode ☑ Annual ☐ Semi Annual ☐ Quarterly  Amount paid with application _____ $1350 _____
Non-forfeiture options ☑ Automatic Premium Loan ☐ Paid-up ☐ Extended Term Insurance

---

**3. BENEFICIARY** Include address if not same as Residence in 1 above
(Print Full Name)          Age          Relationship
_Izella Behna Eskalla_      1965          _Life_
_Gabriel Antoine Bou~_      1977          _Son_

Unless otherwise directed above: (A) the proceeds are to be divided equally among all persons who are named as
Beneficiary and who survive the insured, and (B) the right to change the beneficiary is reserved.

---

**4. OWNER (To be completed if Owner is not the Proposed Insured)**
Full Name _____
Address for Correspondence: P.O Box _____   Street & No. _____
City _____   District _____   Country _____   No. _____
Relationship to Proposed Insured _____

American Life Insurance Company
A Member Company of American International Group

C2C ME 5/88

5. MEDICAL INFORMATION

  a) Please state name and address of the Doctor you last consulted _____

Reason for Consultation _____ Date _____
(if answer is 'Check-Up' state exact reason for this)

                                                    Alcohol _____ day/da

  b) Please state Your Height _____ M   Weight _____ Kgs   Cigarettes Smoking: _____ we

                                                                                         Yes

  c) Has your weight changed during the last year? ☐

  d) Have you ever suffered from

    i) High Blood Pressure, Heart Disease, Rheumatic Fever, Diabetes or Sugar in your urine? ☐

    ii) Cancer, Lung or Kidney Disease; Nervous disorder or disorder of the Stomach or Abdominal Organs? ☐

  e) Have you ever had an X-ray, ECG or other diagnostic tests? ☑

  f) i) Have you consulted a Doctor in the last 5 years for any other condition? ☐

    ii) Are you currently receiving any form of medical treatment? ☐

    iii) Do you have any physical deformity or severe defect of vision or hearing? ☐

  g) Do you intend to seek medical advice, treatment or have any medical tests performed? ☐

  h) AIDS (Acquired Immune Deficiency Syndrome) Describe in detail any affirmative answers

    i) Have you received medical advice, or treatment, in connection with AIDS or and AIDS-related
      condition or a sexually transmitted disease? ☐

    ii) Have you been told you had AIDS or AIDS-Related Complex? ☐

    iii) Have you had or been told you had a positive blood test for antibodies to the AIDS virus (Human Immune
      Deficiency Virus)? ☐

    iv) Do you have any of the following which are unexplained: Fatigue; weight loss; diarrhea; enlarged lymph
      nodes; or unusual skin lesions? ☐

  i) Have any of your immediate family suffered from Diabetes, High Blood Pressure, Heart Disease or Tuberculosis? ☐

  j) FEMALES: Are you pregnant? (If 'Yes' state duration) _____ Months ☐

6. OTHER INFORMATION

  a) Do you intend to engage in a hazardous activity (e.g. scuba diving) or fly
    other than as a passenger on scheduled services (if applicable complete questionnaire)? ☐

  b) Has any application for insurance on your life (life, accident or health)
    been declined, postponed or accepted on special terms? ☐

PLEASE GIVE BELOW FULL DETAILS FOR ANY 'YES' ANSWER INCLUDING DURATION OF ANY ILLNESS AND
DOCTOR(S) CONSULTED

| Qu. No. | Date | Details |
|---|---|---|
| 5(d) e | 91 | (illegible) |
|  |  | (illegible) |
|  |  |  |

Special Instructions | Home Office Endorsement

DECLARATION: I HEREBY Declare that I am in good health and agree that except as provided in a duly executed Conditional Receipt bearing the same date and printed number as this application, there shall be no contract of insurance unless a policy is issued and delivered on this application and the full first premium actually paid thereon provided no change shall have occurred in the insurability of the Proposed Insured since completion of the application that all statements and answers in this application together with those in any required medical examination, questionnaire or amendments are full, complete and true and that all parties in interest under the policy herein applied for that no agent or medical examiner or other person except an authorized officer of the Company is permitted to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy or receipt, or to accept risks or pass upon insurability; that notice to or knowledge of any agent or medical examiner is not notice to or knowledge of the Company unless stated in either this application or in a medical examination; that no right to borrow, surrender or assign or other privilege of ownership may be exercised by or money and that acceptance of any policy issued on this application shall be a ratification of any corrections or changes to this application which the Company may make in the space entitled "Home Office Endorsements"

I hereby authorise any Physician, Hospital, Insurance Company or other Organization that has any records or knowledge of me or my health to give to America Life Insurance Company any and all information about me with reference to my health and medical history and any hospitalization. A photo copy of this authorization shall be as valid as the original.

The proposed insured shall be the Owner of any Policy issued upon this application unless a separate Owner is stated in Question ___

IMPORTANT: BEFORE SIGNING THIS DECLARATION PLEASE CHECK THAT THE ANSWERS GIVEN IN THIS APPLICATION ARE CORRECT. AN INCORRECT ANSWER MAY INVALIDATE THE POLICY.

Dated at _____ this _____ day of _____ 19__   _____
                                                      Signature of Proposed Insured

Witness _____
          Agent

                                            Signature of Owner if other than Proposed Insured

# Exhibit E

N⁰    246



**American Life Insurance Company**
WILMINGTON, DELAWARE, U.S.A.
INCORPORATED 1921
Registered in Lebanon Sal. No. 180 on 29 Nov. 1956
Governed by Decree No. 9812 of May 4, 1962
(herein called the company.)

### WORLDWIDE COVERAGE
### "FLEX" LIFE INSURANCE PLAN

**HEREBY INSURES** the Insured stated in the Policy Specification Schedule and agrees to pay the benefits provided herein subject to the terms and conditions hereof.

**PREMIUMS** for the Basic Policy are payable as of the Policy Date and thereafter during the lifetime of the Insured as stated in the Policy Specification Schedule.

**ADDITIONAL PREMIUMS** for any Supplementary Contracts attached hereto are payable on the same date as the premium payment date of the Basic Policy, such payments to continue until termination of such Supplementary Contracts in accordance with the terms thereof.

**THIS CONTRACT** is made in consideration of the application for this Policy and the payment, in advance, of premiums as herein provided.

**POLICY YEARS**, months and anniversaries will be determined from the Policy Date stated on the Policy Specification Schedule.

**THE BENEFITS**, provisions and conditions set forth in the Policy Specification Schedule and on this and the following pages are a part of this Contract.

**ALL SUMS** payable hereunder by or to the Company shall be payable in the currency stated in the Policy Specification Schedule and shall be paid at the office of the Company in the Country of Payment stated in the Policy Specification Schedule.

**IN WITNESS WHEREOF**, AMERICAN LIFE INSURANCE COMPANY has caused this Policy to be executed as of the date of issue stated in the Policy Specification Schedule.



Registrar                                    CHAIRMAN AND CHIEF EXECUTIVE OFFICER

FLEX - 500 - 3 - 93

## GENERAL PROVISIONS

**DEFINITIONS**

**Policy or Contract** means this "Flex" Life Insurance contract between American Life Insurance Company and the Owner.

**Owner** means the person who purchased this Policy as shown in the application, unless later changed. The Owner may be someone other than the Insured Person.

**Insured** means the person whose life is covered by the Policy.

**Beneficiary** means the person(s) entitled to the Death Benefit of this Policy.

**Issue Date** means the date the Policy is issued. It may be a later date than the Policy Date. Once issued, Policy coverage is retroactive to the Policy Date. The Issue Date is used to measure contestability and suicide periods.

**Attained Age** means the Insured Person's age on the Policy Date plus the number of full years since the Policy Date.

**Maturity Date** means the Policy Anniversary following the Insured's attained age 75.

**Death Benefit** means the amount of money payable to the Beneficiary if the Insured person dies while the Policy is in force.

**THE CONTRACT, ITS PROVISIONS AND LIMITATIONS:** This Policy and the application for it, a copy of which is attached hereto and made a part hereof, together with any Supplementary Contracts applied for which are attached hereto and stated to be a part hereof, constitute the entire Contract. All statements made in applying for the Contract will be deemed, in the absence of fraud, representations and not warranties. No statement will be used to invalidate the contract nor to defend against a claim under it unless contained in the written application.

**MODIFICATIONS:** Only the Chairman of the Board, President, Vice President, Regional Vice President, Actuary, Secretary, or Registrar of the Company can make or modify this Contract, extend the time for payment of any premium, or waive any of the Company's rights or requirements.

**CHANGE IN PLAN:** This Policy may be changed to another plan of insurance with the consent of the Company, subject to such requirements and upon payment of such cost, if any, as the Company shall determine.

**INCONTESTABILITY:** This Policy, but not any part hereof granting Disability or Accident Benefits, shall be incontestable after it has been in force, during the lifetime of the Insured, for two years from its Issue Date except for non-payment of premium. In addition, if the Owner elects to increase the Basic Face Amount, the increase shall be incontestable under this Contract, after it has been in force, during the lifetime of the Insured, for two years from the effective date of the increase.

**SUICIDE:** If the Insured commits suicide, while sane or insane, within two years from the Issue Date or from the date of any reinstatement of the Policy, the insurance under this Contract shall be a sum equal to the premiums paid, less any policy loans and accrued interest, and no more.

If the Insured commits suicide, while sane or insane, within two years from the effective date of an increase in the Basic Face Amount, the insurance under this Contract shall be a sum equal to the original Basic Face Amount plus the premium increase amount paid which is related to the Basic Face Amount increase. If such increase in the Basic Face Amount became effective within the first two years from either the Issue Date or the reinstatement, then the insurance under this Contract shall be a sum equal to the premiums paid, less any policy loans and accrued interest, and no more.

**AGE:** If the age of the Insured has been under-stated, any amount payable under this Policy shall be reduced to equal the amount the premium paid would have purchased at the correct age. If the age has been over-stated, the excess of the amount of premium paid over the premium at the correct age will be refunded without interest and there will be no change in the amount payable under the Policy.

**OWNERSHIP AND RIGHTS UNDER THIS POLICY:** Subject to any statutory restrictions, all rights, privileges and options provided under the Contract not specifically granted to any other person shall be reserved to the Owner alone, if the right to change the Beneficiary has been reserved; otherwise to the Owner and Beneficiary jointly.

**CHANGES IN OWNERSHIP AND BENEFICIARY:** At any time during the continuance of this Contract, by filing written notice satisfactory to the Company:

a) the Owner may transfer his entire ownership to take effect during his lifetime; and

b) unless otherwise provided herein the Beneficiary may be changed, with or without reserving the future right to change the Beneficiary in so far as the laws governing this Policy allow. No such transfer or change will take effect unless recorded by the Company, but when so recorded shall become effective as of the date the notice was signed, subject to any payment made or other action taken by the Company before such recording.

**RIGHTS IN EVENT OF DEATH OF OWNER OR BENEFICIARY:** The rights of an Owner other than the Insured whose death occurs during the continuance of this Contract shall pass to the Insured unless otherwise provided herein. The rights of a Beneficiary whose death occurs prior to the expiration of a period of fifteen days commencing with the death of the Insured shall pass to the Owner, unless payment has been made to such Beneficiary or unless otherwise provided herein.

**ASSIGNMENT:** No assignment of this Policy, or of any interest therein, shall be binding on the Company unless recorded by the Company. Any assignment shall be subject to any payment made or other action taken by the Company before the assignment is received and recorded by the Company. The Company assumes no responsibility for the validity, effect or sufficiency of any assignment.

**BENEFICIARY:** The Beneficiary is as stated in the application, unless later changed. The Beneficiary is entitled to the Death Benefit of this Policy. One or more beneficiaries for the Death Benefit may be named in the application.

**OTHER WAYS IN WHICH THE PROCEEDS OF THIS POLICY MAY BE PAID:** The whole or part of the proceeds of this Policy may, with the Company's consent, be settled under one of the Optional methods of settlement then made available by the Company.

**TRANSFER OF RESIDENCE:** In the event the Owner takes up residence outside the country of payment specified in the

Policy Specification Schedule. In a country where the Company writes the same Policy Plan, this Policy may be transferred, at the Company's sole discretion, to the Owner's new country of residence subject to and conditional upon the Company's ability to transfer this policy's reserves to the new country of residence. Any transfer effected shall be conditional upon the Owner paying any taxes or other expenses directly resulting from such transfer; provided however, that no such transfer shall be effected if it would be in violation of any law or Government regulation then in effect.

In applying for such transfer, the Owner understands and agrees that upon transfer, the Company will convert the Basic Face Amount, premium and Cash Values, if any, of the Policy to the official currency of the Owner's new country of residence in accordance with the rules of the Company then in effect. Because local laws and business conditions vary, when a transfer is requested the Company reserves the right to condition any offer to transfer made to the Company upon the Owner agreeing to a change in the Policy Plan, and/or Basic Face Amount and/or premiums payable.

**GENERAL AND SPECIAL PROVISIONS REGULATING THE POLICY:** The above General Provisions shall apply to the Policy as long as the Contract is in force. The following Special Provisions - PART I and PART II - shall apply to the Policy depending on the period the Contract has been in force as provided in each of PART I and PART II.

**SPECIAL PROVISIONS - PART I**

The following Special Provisions - Part I shall apply to the Policy during the first five years of the continuance of the Contract and shall be of no effect at the expiry of said period, unless the Policy, at said Date, is under one of the Options 2 or 3 of the Elective Non-Forfeiture Provisions defined herebelow under this Part.

**DEATH BENEFIT:** Subject to the provisions of this Policy, in case of death of the Insured, the Company shall pay to the Beneficiary the Basic Face Amount indicated in the Policy Specification Schedule less any debt on the Policy.

**PAYMENT OF PREMIUMS AND GRACE PERIOD:** All premiums are payable in advance, in exchange for a receipt signed by an authorized Officer of the Company. A grace period of thirty-one (31) days from its due date will be allowed for payment of each premium after the first, during which period the Policy will remain in force. If death occurs within the Grace period any premium then due and unpaid will be deducted in settlement of this Policy.

**LAPSE:** If at the expiration of the Grace period the premium remains unpaid and the Policy has not yet acquired a Basic Cash Value, the Policy shall lapse and have no further value.

**GUARANTEE OF MINIMUM BASIC VALUES:** The Company guarantees that the Basic Cash Value, the Basic Reduced Paid Up Insurance and the Extended Term Insurance period will not be less than the values shown in the attached Table for the appropriate Plan, Age and Duration. The Basic Values shown assume (1) that premiums have been paid in full to the end of the period shown and (2) that there is no existing indebtedness.

**POLICY LOANS:** The Company will lend on sole security and proper assignment of this Policy an amount not exceeding the then Loan Value. The Loan Value of this Policy is ninety percent (90%) of the amount which with interest to the end of the policy year will equal the Basic Cash Value of the Policy less any existing indebtedness. The Company reserves the right to defer the granting of a loan

other than a loan to pay premiums, for a period not exceeding six months. Interest on the loan will accrue from day to day at a rate of interest determined by the Company, payable on each anniversary of the Policy. The Company shall have the right to redetermine the rate of interest applicable to new and existing loans. Interest not paid when due will be added to the principal of the loan upon which interest is calculated. The loan principal and accrued interest thereon will be deducted from any settlement under the Policy.

**AUTOMATIC NON-FORFEITURE PROVISION:** If, at the expiration of the Grace period, the premium remains unpaid and no non-forfeiture provision has been elected and the Policy has acquired a Basic Cash Value, the Policy will automatically continue in force as follows:

a) If the Loan Value is equal to or greater than the unpaid premium the Company will advance the premium due as an Automatic Premium Loan (APL).

b) If the Loan Value is insufficient to cover any premium in default the Policy shall be continued in force for such proportion of the period covered by the premium due as the loan value bears to the premium.

**ELECTIVE NON-FORFEITURE PROVISIONS:**

**OPTION 1 - CASH SURRENDER:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can surrender the Policy and receive the Basic Cash Value, less any indebtedness.

**OPTION 2 - REDUCED PAID UP INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can continue the Policy as nonparticipating Reduced Paid Up Insurance for such amount as the Basic Cash Value less any indebtedness would purchase at the attained age of the Insured and on a basis determined by the Company. The Reduced Paid Up amount will be paid at age seventy-five (75) or upon earlier death of the Insured.

**OPTION 3 - EXTENDED TERM INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner may continue the Policy as nonparticipating Extended Term Insurance in an amount equal to the Basic Face Amount less any existing indebtedness. The period for which such Extended Term Insurance will be continued shall be such as the Basic Cash Value less any indebtedness will purchase at the attained age of the Insured.

**REINSTATEMENT:** Unless this Policy has been cash surrendered, it may be reinstated at any time within three years after default in payment of premium upon written application to the Company with the production of evidence of insurability, including good health, satisfactory to the Company, together with payment of all overdue premiums and repayment or reinstatement of any loan, both with interest to the date of reinstatement at a rate of interest determined by the Company, compounded annually. In addition to the provisions of the Incontestability Clause herein, a reinstated Policy shall be contestable on account of fraud or misrepresentation of material facts pertaining to the reinstatement for two years from the date of reinstatement.

**SPECIAL PROVISIONS - PART II**

The following Special Provisions - Part II shall apply to the Policy after completion of the first five years of its continuance provided the Policy is not then under Option 2

or Option 3 of the Elective Non-Forfeiture Provision stated in PART I.

DEFINITIONS:
Administrative Office: It is the Company Administrative Office:
American Life Insurance Company (ALICO)
P.O.Box: 14-5644 - Beirut - Lebanon
Fax: 603143
Telephone: 865136 - 866995 - 863457 - 802225/6/7

Monthly Anniversary means the same day as the Policy Date: for each succeeding month, except that, for those months not having such a day, it is the last day of that month;

Grace Period means the period of time following a Monthly Anniversary during which this Policy will continue in force while the Net Cash Surrender Value is not sufficient to cover the total monthly deduction then due;

Wealth Accumulation and Protection Account (WAPA) Value means the total amounts in the Guaranteed Return Account and the Investment Subaccounts credited to a Policy;

Guaranteed Return Account (GRA) means a division of the WAPA value established as an investment option available which guarantees a minimum investment yield. This yield is shown on the Policy Specification Schedule. Yield in excess of the guaranteed minimum may be applied in calculation of the GRA value at such increased rates as the Company may determine;

Investment Subaccount or Subaccount means a division of the WAPA Account established to invest in a particular fund and available for investment under the Policy;

Cash Surrender Value means the Wealth Accumulation and Protection Account (WAPA) Value, less any applicable processing fee that would be deducted upon surrender;

Net Cash Surrender Value means the Cash Surrender Value less any Policy Loan and accrued interest thereon.

DIVIDENDS: The company will declare a Dividend to the policyholders of record on the 5th policy anniversary. The Company will declare a Dividend to policyholders of record on the 7th and 10th policy anniversaries provided that the accumulative premiums paid, less any partial surrenders are equal to or greater than all billed premium up to the 7th, or 10th years, respectively.

## WEALTH ACCUMULATION AND PROTECTION ACCOUNT (WAPA) PROVISIONS

TRANSFER TO THE WEALTH ACCUMULATION AND PROTECTION ACCOUNT: On the 5th Policy Anniversary the net cash surrender value of the Policy, and the Dividend as at the end of the 5th Policy Year, will be transferred to the Wealth Accumulation and Protection Account (WAPA) as the opening balance of the Owner's account at the beginning of the 6th Policy Year. In addition, any dividends granted after completion of the 7th and 10th Policy Years will be transferred to the WAPA. All such transfers will be allocated to the available investment options according to the Owner's allocation percentages on record with the Company at the time of transfer.

WAPA INVESTMENT OPTIONS BEGINNING IN THE 6th POLICY YEAR

The Owner shall have the option to allocate the WAPA balance between the Guaranteed Return Account (GRA) and

any Investment Subaccounts made available at that time.

Allocations: After completion of the 5th Policy Year, this Policy provides investment options for the opening balance of the WAPA. This WAPA opening balance will be allocated to the GRA and/or any of the Subaccounts then available based on the direction of the Owner. The initial allocation percentages will be as specified in the application for this Policy. Unless these are changed by written application to the Company, such percentages shall also apply to subsequent Net Premiums. If, for any reason, no allocation percentage is specified to the company the full value of the WAPA will be allocated 100% to the GRA.

No less than 10% of a Premium, subject to the dollar minimum amounts per account set by the Company, may be allocated to any one account. Allocation percentages must be zero or in increments of 10% up to 100%. The sum of the Premium allocation percentages must equal 100%. Allocation changes are subject to charges as determined by the company.

Transfers: Upon written request to the Company's Administrative Office, the Owner may transfer amounts within the WAPA between one or more of the Subaccounts offered or to the GRA. One transfer per Policy Year may be made without charge. Additional transfers may be made for a fee as determined by the Company subject to a maximum of three transfers, and subject to minimum and maximum amounts acceptable to the company at any time.

All allocation changes or transfers will be made based upon a written request to the Administrative Office, and will take effect on the first Monthly Anniversary after receipt of the request. A request must be received no less than 15 days prior to the Monthly Anniversary, or it shall then take effect on the following Monthly Anniversary.

Minimum amounts must be maintained in the GRA or each of the Subaccounts. These minimums will be determined by the Company.

The WAPA Value: The amount of WAPA value at any time is equal to the sum of the amounts in the GRA and the subaccounts under this Policy less monthly deductions.

The Value of the GRA: The value in the GRA at any time is equal to the amounts allocated and transferred to it, plus the monthly interest credited to it, less monthly deductions, and amounts transferred and partially surrendered from it.

The GRA's guaranteed minimum investment yield is shown on the Policy Specification Schedule. Yield in excess of the guaranteed minimum may be applied in calculation of GRA Value at such increased rates as the Company may determine.

The Value of The Investment Subaccounts: The value of a Subaccount under this Policy at any time is equal to the number of units this Policy then has in that Subaccount, multiplied by the Subaccount's unit value at that time, less monthly deductions. The value of the individual units for purchase or redemption will be determined by the company.

The number of units a Policy has in a Subaccount at any time is equal to the number of units purchased minus the number of units redeemed in that Subaccount to that time. The number of units purchased or redeemed in a Policy transaction is equal to the dollar amount of the Policy transaction divided by the Subaccount's unit value on the date of the Policy transaction. A Policy transaction occurs when units of a Subaccount are either purchased or

redeemed. Amounts allocated, transferred, or added to a Subaccount are used to purchase units of that Subaccount; units are redeemed when amounts are deducted, transferred, or fully or partially surrendered. Policy transactions may be made on any business day; however the unit value that applies to any transaction made will be the unit value determined by the Company on the unit valuation date.

Each Subaccount invests its assets in shares of a designated investment company or companies. The Subaccounts chosen with the initial allocations are shown on the application for this Policy. The company may from time to time make other Subaccounts available. The Company has the right to change, add or delete designated investment companies, to add or remove Subaccounts, and to combine any two or more Subaccounts.

The Company may, in its discretion, execute any strategy offered to the WAPA account by investing in the securities of collective investment vehicles managed in accordance with such strategy by a Company affiliate or third party. The Company has no obligation to select a third party in lieu of an affiliated manager; in fact, it is contemplated that most strategies will be implemented with affiliated managers without any consideration whatsoever of third party managers. If the manager is an affiliate of the Company, the WAPA account will not be "double" charged. However, purchasers will have no beneficial interest in any underlying investment vehicle or right of action against any underlying manager.

The Investment Subaccounts offered are subject to the Company's ability, in the local territory within which this policy is sold, to invest without restriction, in international mutual funds. If, at any time after the end of the fifth policy year, any of such investments are restricted and particular Investment Subaccounts are not available, then the policyholder shall have the right either to allocate the WAPA balance to the GRA, and/or any available, unrestricted Investment Sub-account options.

**NET PREMIUMS:** The Net Premium is equal to the premium paid less insurance expenses as determined by the Company. The Net Premium shall be added to the WAPA Value of the Policy and allocated between the GRA and the Subaccounts as applied for in writing by the Owner.

**MONTHLY DEDUCTIONS:** The Company shall deduct monthly from the WAPA value, management expenses or fees as determined by the Company, the cost of life insurance, the extra premium for substandard risk, if any, and premium for additional benefits under the Supplementary Contracts, if any, attached to the Policy. The Monthly Deductions will be made from the WAPA value proportionate to the values in the GRA and Subaccounts in relation to the full WAPA value, subject to the Dollar minimums required in each. The cost of insurance rates for lives in the standard mortality class shall not be greater than the 1980 CSO Mortality Table.

**INSURANCE COVERAGE PROVISIONS**

**DEATH BENEFIT:** Subject to the provisions of this policy, in case of death of the Insured, the Company shall pay to the Beneficiary the benefit as determined under either Death Benefit Option A or Option B below. The use of Option A or B to determine the amount payable will be based on the benefit selection made by the Owner in the application for insurance; or in effect on the date of death if a change has been made after the application date. Any Death Benefit payable shall be reduced by any applicable policy debt and/or partial

surrenders. If no selection of the Death Benefit Option in the Application for insurance or at any time prior to the date of death has been made, then the payment of benefits to the beneficiary(ies) will be applied per Option A.

Under Death Benefit Option A: The Company agrees to pay to the Beneficiary the Basic Face Amount stated in the Policy Specification Schedule, or the WAPA Value, whichever is greater.

Under Death Benefit Option B: The Company agrees to pay to the Beneficiary the Basic Face Amount Plus the WAPA Value.

**CHANGING THE FACE AMOUNT OR THE DEATH BENEFIT OPTION:** At any time after the 5th Policy Year, while this Policy is in force, the Owner may change the Death Benefit Option or increase or decrease the Basic Face Amount by written request to the Company at its Administrative Office. Any increase in Basic Face Amount or change from option A to option B Death Benefit may require evidence of insurability, and is subject to the Company's consent. Any increase or decrease will become effective on the Premium due date following the date of approval.

**MATURITY BENEFITS:** The policy will mature on the Elective Maturity Date shown on the Policy Specification Schedule. The maturity benefit shall be the WAPA value less any indebtedness. The Owner can change the elective Maturity Date of the Policy by making a written request to the Company at least 3 months prior to the Elective Maturity Date. The Elective Maturity Date cannot be earlier than 10 years from the Policy date and later than the Policy Anniversary at age 75 last birthday of the Insured.

**PREMIUM:** Changes in frequency, and increases and decreases in the amount of premium payments may be made at any time after the 5th Policy Year by the Owner subject to the minimum and maximum amounts acceptable by the Company at that time. Premiums or payments above the billed premium may be paid subject to acceptance by the Company.

**GRACE PERIOD:** If the Net Cash Surrender Value on any monthly due date is insufficient to cover the next monthly deduction, a grace period of 31 days shall be allowed for the payment of a premium sufficient to cover the monthly deduction. If the Insured dies within the grace period, the amount of the overdue monthly deduction will be deducted from the proceeds.

If sufficient premium is not paid by the end of the grace period, all coverage under this Policy will terminate and the Policy will end without value.

**REINSTATEMENT:** If the Policy is terminated because the grace period expired without sufficient premium being paid, this Policy may be reinstated during the Insured's lifetime within 3 years after the expiry of the grace period. The reinstatement is subject to production of evidence of insurability satisfactory to the Company together with a payment of a minimum premium sufficient to keep the Policy in force for at least 12 months. Said minimum premium shall not be less than the minimum deposit acceptable by the Company. Any Policy debt which existed at the end of the grace period will be reinstated if it is not paid. The effective date of reinstatement will be the Premium due date following the date of approval of reinstatement. The Policy cannot be reinstated if it has been surrendered by the Owner for its Net Cash Surrender Value.

## THE CASH SURRENDER VALUE OF THIS POLICY

Cash Surrender Value: The Cash Surrender Value on any date is equal to the value of the WAPA on that date less any processing fee.

Net Cash Surrender Value: The Net Cash Surrender Value is equal to the Cash Surrender Value minus any Policy Loan and accrued loan interest. The Owner may give up this Policy for its Net Cash Surrender Value at any time while the Insured Person is living. This may be done by sending a written request and this Policy document to the Company's Administrative Office. The Company will compute the Net Cash Surrender Value as of the date the request is received along with this Policy document at the Company's Administrative Office. All insurance coverage under this Policy ends on such date, and the policy shall have no further value of any kind.

Partial Surrender: The Owner may partially surrender the value in the WAPA. A partial surrender will result in a reduction in the Cash Surrender Value and in the WAPA equal to the partial surrender amount. It shall also reduce the Basic Face Amount under Death Benefit Option A. The Owner may ask for a partial surrender by written request to the Company's Administrative Office no more than once during a Policy Year. All requests will be subject to the Company's approval based on the rules in effect when the request is received. The partial surrender amount deducted from the WAPA is equal to the amount requested plus the expense charge and a processing fee. The Company may defer payment of the partial surrender amount for a period not exceeding 6 months.

The Owner may determine how much of each partial surrender is to come from the GRA value or from values in each of the Subaccounts. If no specific request is made, the partial surrender will be deducted from the WAPA proportionate to the values in the GRA and Subaccounts in relation to the full WAPA value; and subject to the Dollar minimums required in each. Partial surrender will not be permitted if it will result in a reduction of Basic Face Amount to less than the minimum Basic Face Amount as determined by the Company.

Such partial surrender and resulting reduction in the Basic Face Amount for Death Benefit Option A, in the Cash Surrender Value, and in the WAPA will take effect on the first Monthly Anniversary after receipt of the request. A request must be received no less than 15 days prior to the Monthly Anniversary; or it shall then take effect on the following Monthly Anniversary.

Policy Loans: The Policy Loan provisions of Part 1 shall apply to this section. In addition, no loan shall be made during the first 6 Policy Months immediately following an increase in the Basic Face Amount nor will more than two loans during a Policy Year be allowed.

The request for a Policy Loan must be made in writing to the Company's Administrative Office. The Owner may determine how much of the requested loan is to be allocated to the GRA or the Subaccounts. All values for loan purposes will be determined as of the most recent valuation date. If no specific request is made, the loan deduction will be based on the proportion that the unloaned value in the GRA and the values in the Subaccounts bear to the total unloaned value in WAPA.

The loaned portion of the WAPA will be maintained as a part of the GRA. If a loaned amount is allocated to a Subaccount, units of that Subaccount, sufficient in value to cover the amount of the loan so allocated, will be redeemed and transferred to the GRA.

Loan Repayment: Repayment of all or part of a Policy loan may be made at any time while the Insured Person is alive and this Policy is in force. Any payment received during the period in which a loan is outstanding, but the policy is not within a Grace Period, will be considered a loan repayment unless the Company is advised otherwise in writing. A loan repayment will reduce the loaned portion of the WAPA.

Failure to repay a Policy loan or to pay loan interest will not terminate this Policy unless at the beginning of a Policy Month the Net Cash Surrender Value is less than the total monthly deduction then due. In that case, the Grace Period provision will apply.

A Policy loan may have a permanent effect on the benefits under this Policy even if it is repaid.

## HOW THE BENEFITS ARE PAID: The Death Benefit, Net Cash Surrender Value or the WAPA Value payable on the Maturity Date will be paid immediately in one sum, or in another form of payment available from the Company at that time.



American Life
Insurance Company
WILMINGTON, DELAWARE, U.S.A.
INCORPORATED 1921
Reprinted in Liberia Sub. No. 7307 on 29 Nov. 1956
Governed by Decree No. 2817 of May 4, 1964

# ALICO FLEX PLAN

### Table of Basic Cash Values, Paid-Up Values and Extended Term Insurance
### (Per Each 1000 Face Amount)

| End of Year | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | YRS | Days | PE | | | YRS | Days | PE | | | YRS | Days | PE | | | YRS | Days | PE |
| | | Age 40 | | | | | | Age 41 | | | | | Age 42 | | | | | Age 43 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 19 | 65 | 4 | 111 | 0 | 19 | 63 | 3 | 364 | 0 | 19 | 60 | 3 | 259 | 0 | 20 | 61 | 3 | 226 | 0 |
| 4 | 39 | 129 | 7 | 303 | 0 | 39 | 124 | 7 | 106 | 0 | 40 | 122 | 6 | 343 | 0 | 40 | 118 | 6 | 162 | 0 |
| 5 | 59 | 188 | 10 | 187 | 0 | 60 | 184 | 9 | 343 | 0 | 61 | 180 | 9 | 141 | 0 | 61 | 173 | 8 | 265 | 0 |

| End of Year | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Age 44 | | | | | | Age 45 | | | | | Age 46 | | | | | Age 47 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 20 | 59 | 3 | 131 | 0 | 20 | 57 | 3 | 43 | 0 | 21 | 57 | 3 | 8 | 0 | 21 | 55 | 2 | 287 | 0 |
| 4 | 41 | 116 | 6 | 42 | 0 | 41 | 112 | 5 | 240 | 0 | 42 | 110 | 5 | 126 | 0 | 43 | 109 | 5 | 14 | 0 |
| 5 | 62 | 160 | 8 | 79 | 0 | 63 | 165 | 7 | 264 | 0 | 64 | 162 | 7 | 92 | 0 | 65 | 158 | 6 | 293 | 0 |

| End of Year | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Age 48 | | | | | | Age 49 | | | | | Age 50 | | | | | Age 51 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 21 | 53 | 2 | 205 | 0 | 22 | 53 | 2 | 167 | 0 | 22 | 51 | 2 | 92 | 0 | 23 | 52 | 2 | 56 | 0 |
| 4 | 44 | 107 | 4 | 270 | 0 | 44 | 103 | 4 | 132 | 0 | 45 | 101 | 4 | 38 | 0 | 46 | 100 | 3 | 315 | 0 |
| 5 | 66 | 154 | 6 | 138 | 0 | 67 | 151 | 5 | 358 | 0 | 69 | 150 | 5 | 249 | 0 | 70 | 147 | 5 | 119 | 0 |

| End of Year | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Age 52 | | | | | | Age 53 | | | | | Age 54 | | | | | Age 55 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 23 | 50 | 1 | 352 | 0 | 24 | 50 | 1 | 326 | 0 | 24 | 48 | 1 | 271 | 0 | 25 | 49 | 1 | 245 | 0 |
| 4 | 47 | 98 | 3 | 233 | 0 | 48 | 97 | 3 | 156 | 0 | 49 | 95 | 3 | 83 | 0 | 50 | 94 | 3 | 12 | 0 |
| 5 | 71 | 143 | 4 | 362 | 0 | 73 | 142 | 4 | 267 | 0 | 74 | 139 | 4 | 152 | 0 | 76 | 138 | 4 | 62 | 0 |

| End of Year | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | | CV | RPU | ETI | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Age 56 | | | | | | Age 57 | | | | | Age 58 | | | | | Age 59 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 26 | 49 | 1 | 219 | 0 | 27 | 49 | 1 | 191 | 0 | 27 | 47 | 1 | 145 | 0 | 28 | 47 | 1 | 118 | 0 |
| 4 | 52 | 94 | 2 | 326 | 0 | 54 | 94 | 2 | 274 | 0 | 55 | 93 | 2 | 206 | 0 | 57 | 92 | 2 | 156 | 0 |
| 5 | 79 | 138 | 3 | 356 | 0 | 81 | 136 | 3 | 288 | 0 | 83 | 135 | 3 | 184 | 0 | 86 | 135 | 3 | 119 | 0 |

| End of Year | CV | RPU | ETI | | |
|---|---|---|---|---|---|
| | | Age 60 | | | |
| 2 | 0 | 0 | 0 | 0 | 0 |
| 3 | 29 | 47 | 1 | 91 | 0 |
| 4 | 58 | 91 | 2 | 94 | 0 |
| 5 | 88 | 133 | 3 | 46 | 0 |

10/96

# ALICO FLEX PLAN

## Table of Basic Cash Values, Paid-Up Values and Extended Term Insurance
### (Per Each 1000 Face Amount)

| End of Year | CV | RPU | ETI YRS | ETI Days | PE | CV | RPU | ETI YRS | ETI Days | PE | CV | RPU | ETI YRS | ETI Days | PE | CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Age 0 | | | | | Age 1 | | | | | Age 2 | | | | | Age 3 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 275 | 22 | 172 | 0 | 17 | 266 | 21 | 285 | 0 | 17 | 256 | 21 | 5 | 0 | 17 | 247 | 20 | 62 | 0 |
| 4 | 35 | 547 | 52 | 90 | 0 | 35 | 527 | 50 | 130 | 0 | 35 | 508 | 48 | 156 | 0 | 35 | 489 | 48 | 167 | 0 |
| 5 | 53 | 799 | 68 | 98 | 0 | 54 | 784 | 66 | 224 | 0 | 54 | 755 | 64 | 22 | 0 | 54 | 726 | 61 | 199 | 0 |
| | | | Age 4 | | | | | Age 5 | | | | | Age 6 | | | | | Age 7 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 238 | 19 | 87 | 0 | 17 | 229 | 18 | 83 | 0 | 17 | 220 | 17 | 65 | 0 | 17 | 211 | 16 | 42 | 0 |
| 4 | 35 | 471 | 44 | 163 | 0 | 35 | 452 | 42 | 152 | 0 | 35 | 434 | 40 | 144 | 0 | 36 | 429 | 39 | 161 | 0 |
| 5 | 54 | 698 | 59 | 30 | 0 | 54 | 670 | 56 | 248 | 0 | 55 | 655 | 55 | 14 | 0 | 55 | 629 | 52 | 276 | 0 |
| | | | Age 8 | | | | | Age 9 | | | | | Age 10 | | | | | Age 11 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 203 | 15 | 25 | 0 | 17 | 195 | 14 | 36 | 0 | 17 | 187 | 13 | 93 | 0 | 17 | 180 | 12 | 207 | 0 |
| 4 | 36 | 412 | 37 | 188 | 0 | 36 | 396 | 35 | 266 | 0 | 35 | 370 | 33 | 64 | 0 | 35 | 357 | 31 | 285 | 0 |
| 5 | 55 | 605 | 50 | 214 | 0 | 54 | 571 | 47 | 329 | 0 | 54 | 550 | 46 | 7 | 0 | 54 | 531 | 44 | 101 | 0 |
| | | | Age 12 | | | | | Age 13 | | | | | Age 14 | | | | | Age 15 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 173 | 12 | 17 | 0 | 17 | 167 | 11 | 261 | 0 | 17 | 161 | 11 | 202 | 0 | 17 | 156 | 11 | 185 | 0 |
| 4 | 35 | 344 | 30 | 208 | 0 | 35 | 332 | 29 | 189 | 0 | 35 | 311 | 27 | 287 | 0 | 34 | 301 | 26 | 353 | 0 |
| 5 | 54 | 512 | 42 | 243 | 0 | 53 | 486 | 40 | 214 | 0 | 53 | 468 | 39 | 65 | 0 | 53 | 453 | 37 | 298 | 0 |
| | | | Age 16 | | | | | Age 17 | | | | | Age 18 | | | | | Age 19 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 150 | 11 | 208 | 0 | 17 | 145 | 14 | 240 | 0 | 17 | 140 | 11 | 267 | 0 | 17 | 135 | 11 | 278 | 0 |
| 4 | 34 | 291 | 26 | 65 | 0 | 34 | 281 | 25 | 144 | 0 | 34 | 271 | 24 | 219 | 0 | 34 | 261 | 23 | 285 | 0 |
| 5 | 53 | 437 | 36 | 175 | 0 | 53 | 422 | 35 | 58 | 0 | 53 | 407 | 33 | 308 | 0 | 53 | 392 | 32 | 190 | 0 |
| | | | Age 20 | | | | | Age 21 | | | | | Age 22 | | | | | Age 23 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 131 | 11 | 265 | 0 | 17 | 126 | 11 | 221 | 0 | 17 | 121 | 11 | 240 | 0 | 17 | 117 | 11 | 42 | 0 |
| 4 | 34 | 252 | 22 | 340 | 0 | 35 | 249 | 22 | 214 | 0 | 35 | 240 | 21 | 234 | 0 | 35 | 231 | 20 | 247 | 0 |
| 5 | 53 | 378 | 31 | 72 | 0 | 53 | 363 | 29 | 315 | 0 | 53 | 349 | 28 | 194 | 0 | 54 | 342 | 27 | 211 | 0 |
| | | | Age 24 | | | | | Age 25 | | | | | Age 26 | | | | | Age 27 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 112 | 10 | 227 | 0 | 17 | 108 | 10 | 131 | 0 | 17 | 103 | 9 | 334 | 0 | 17 | 99 | 9 | 163 | 0 |
| 4 | 35 | 222 | 19 | 258 | 0 | 35 | 213 | 18 | 267 | 0 | 36 | 210 | 18 | 65 | 0 | 36 | 202 | 17 | 73 | 0 |
| 5 | 54 | 329 | 26 | 192 | 0 | 54 | 316 | 24 | 345 | 0 | 55 | 309 | 23 | 359 | 0 | 55 | 296 | 22 | 260 | 0 |
| | | | Age 28 | | | | | Age 29 | | | | | Age 30 | | | | | Age 31 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 18 | 101 | 9 | 162 | 0 | 18 | 97 | 8 | 337 | 0 | 18 | 93 | 8 | 145 | 0 | 18 | 89 | 7 | 322 | 0 |
| 4 | 36 | 194 | 16 | 88 | 0 | 36 | 186 | 15 | 111 | 0 | 36 | 179 | 14 | 144 | 0 | 37 | 178 | 13 | 303 | 0 |
| 5 | 55 | 284 | 21 | 173 | 0 | 56 | 278 | 20 | 201 | 0 | 56 | 267 | 19 | 135 | 0 | 56 | 256 | 18 | 85 | 0 |
| | | | Age 32 | | | | | Age 33 | | | | | Age 34 | | | | | Age 35 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 18 | 86 | 7 | 136 | 0 | 18 | 82 | 6 | 322 | 0 | 18 | 79 | 6 | 148 | 0 | 18 | 76 | 5 | 350 | 0 |
| 4 | 37 | 169 | 12 | 353 | 0 | 37 | 162 | 12 | 50 | 0 | 37 | 156 | 11 | 127 | 0 | 38 | 154 | 10 | 310 | 0 |
| 5 | 56 | 246 | 17 | 50 | 0 | 57 | 240 | 16 | 136 | 0 | 57 | 230 | 15 | 110 | 0 | 57 | 221 | 14 | 122 | 0 |
| | | | Age 36 | | | | | Age 37 | | | | | Age 38 | | | | | Age 39 | | |
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 18 | 73 | 5 | 193 | 0 | 19 | 74 | 5 | 143 | 0 | 19 | 71 | 5 | 43 | 0 | 19 | 68 | 4 | 234 | 0 |
| 4 | 38 | 148 | 10 | 47 | 0 | 38 | 142 | 9 | 163 | 0 | 38 | 136 | 8 | 256 | 0 | 39 | 134 | 8 | 148 | 0 |
| 5 | 59 | 216 | 13 | 223 | 0 | 59 | 208 | 12 | 267 | 0 | 59 | 203 | 12 | 26 | 0 | 59 | 195 | 11 | 99 | 0 |

## POLICY SPECIFICATION SCHEDULE

| | |
|---|---|
| POLICY NUMBER | ████1562 |

POLICY DATE          : SEPTEMBER 9, 1997

INSURED          :ANTOUN GEBRAN BOUSTANI
OWNER            :ANTOUN GEBRAN BOUSTANI

AGE              : 50
MATURITY DATE    : SEPTEMBER 9, 2022

BENEFICIARY(IES)  : AS STATED ON APPLICATION

CURRENCY OF PAYMENT: UNITED STATES DOLLARS

BASIC POLICY
FACE AMOUNT      :*******50,000.00****
                  FIFTY THOUSAND U.S. DOLLARS ONLY

COUNTRY OF PAYMENT : WILMINGTON U.S.A.

PLAN             :FLEX PLAN (OPTION A)

BASIC PREMIUM :      **********1,700.00

SUPPLEMENTARY
CONTRACTS ATTACHED :

PREMIUM PAYABLE EVERY TWELVE MONTHS IS **********1,700.00

<<SEE WAR RISK ENDORSEMENT - FORM 984 ATTACHED HERETO>>

DATE OF ISSUE    :NOVEMBER 18, 1997          REGISTRAR

## ENDORSEMENTS

### (TO BE MADE BY COMPANY ONLY)

1. The Company guarantees that the Minimum investment yield on the Guaranteed Return Account (GRA) will not be less than 4 1/2% per annum.

2. The Company guarantees that the Dividend to be declared at the end of the 5th Policy year shall not be less than 20% of the 5th year Cash Value.

3. The Maturity benefit of the Policy can be used to buy a pension from the Company at the rates applied by the Company at that time.

REGISTRAR



## AMERICAN LIFE INSURANCE COMPANY
### War Risk Endorsement - Form No. 984

AMENDMENT to Policy No. ▮▮▮ 1 562 and Supplementary Contract Form No(s). XXX
_____ attached thereto and forming an integral part thereof:

In this endorsement:

War means: War or War like operations ( whether war be declared or not ) or invasion, act of foreign enemy, hostilities, mutiny, riot, civil commotion, civil war, rebellion, revolution, insurrection, conspiracy, military or unsurped power, martial law or state of siege, or any of the events or causes which determine the proclamation or maintenance of martial law or state of siege.
Equivalent Lump Sum Benefit means : In respect of Term Insurance supplementary contract, its face amount. In respect of supplementary contracts providing annual benefit on death in the form of income and/or waiver of premium, 50% of such annual benefit times the period over which this benefit is payable.

### CLAUSE (1) (War Exclusion Clause)

It is hereby agreed that, notwithstanding the provisions of this Policy and any Supplementary Contract made a part thereof, ( excluding Accidental Death Benefit Supplementary Contracts ), if the Insured/Payor dies or is totally and permanently disabled as a direct or indirect consequences of war or as a result of his directly or indirectly taking an active part in war, the Company's liability under this Policy shall be limited to the reserves under the Policy, if any, reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.

### CLAUSE (2) (War Coverage Clause)

This Clause will apply only if the War Risk Endorsement Form No. 984 is endorsed on the policy specification schedule and the war premium stated therein is paid.

i) Notwithstanding the provisions of CLAUSE (1) above, if the Insured/Payor dies as a direct or indirect consequence of war, the Company's liability under this Policy and any Supplementary Contracts made a part of this Policy shall be limited to the larger amount of :
   (a) The reserves under the Policy, if any; and
   (b) The aggregate of the death benefit under the Policy and the Equivalent Lump Sum Benefit under such Supplementary Contracts made a part of the Policy, if any, due at that time, provided that such an aggregate is limited to a maximum amount of XXX plus the reserves corresponding to the difference, if any, between the actual face amount of the Policy and the face amount of the Policy included in the said maximum amount.
   The amount payable under (a) or (b) above shall be reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.
   Provided that if the Insured's/Payor's death was due directly or indirectly to his taking an active part in war as defined above, the liability of the Company shall be limited only to the reserves under (a) above, if any, less any indebtedness to the Company exisiting against the Policy including interest due or accrued.

ii) Notwithstanding anything to the contrary under this Policy or under any other policy ( Life, PA or Group Policy ), the total amount of the war cover granted thereunder by the Company on the life of the Insured/Payor shall not exceed in any case the maximum amount of XXX inclusive of any Equivalent Lump Sum Benefit.

iii) The war coverage may be renewed from term to term on each Policy anniversary thereafter with the consent of the Company by the payment in advance of the Company's premium rate in force at the time of renewal. The effective date shall be the Policy date unless a different date is shown here.

### CLAUSE (3):

Notwithstanding anything in the foregoing to the contrary, Clause 2 is inapplicable to and provides no War Coverage under the Company's Accidental Death Benefit Supplementary Contract and the Supplementary Contract(s) covering total and permanent disability of the Insured/Payor.

DATE : NOV 18, 1997



**alico**

## AMERICAN LIFE INSURANCE COMPANY

☑ Medical     ☐ Non-Medical

**APPLICATION FOR LIFE AND PERSONAL ACCIDENT INSURANCE**

Agent's Code: G0K 03 00 E

Agency's / Unit's Name: Hamid / HHNASL

Application Number: **0124**

Agent's Name: H-H Sahm

### A. PERSONAL DETAILS ( Please write in Block )

a. Name of Proposed Insured ( shown in Identification Document, underline surname / Family Name ):
ANTOUN CEGEAN | COUSTANI

☑ Male    Date of Birth: ▓▓▓▓ 46
☐ Female    D D M M Y Y

b. Identification Document Number: 4731

ID. Date: Ehef / 4/3 DAC

Age Last Birthday: 51   ☐ Single   ☐ Widowed
☑ Married   ☐ Divorced / Separated

c. Residence Address: Bldg. Flakion Bldg

Nationality: LEBANESE   Place of Birth: Beirut

Quarter / Area: Adani veu   Street:
City: Zouk Mikael / Keseroucnany Lebanon

Contact Numbers:
Residence: 03 / 760 15
Office: 09 / 21 / 735

d. Occupation: Operation Mang ( State Exact Daily Duties ) Parking

Send Correspondence to:   ☐ Residence   ☑ Office

e. Employer's Name: Banque de la Neditecrane
f. Nature of Business: operation Mfg. Rou
g. Business Address Bldg. ____ Quarter / Area: Verd

☐ P.O.Box / Other:

Street: ____ City: Bitrrt Country: Lebanon

Average Monthly Income in the past 12 months: Exed 4000/m

Existing Insurance Policy No. 1012659 Company: A   Amount 50,000   Annual Premium 1350

Applicant / Owner Name ( if other than Insured ):

Relationship of Owner to Insured:

### B. DETAILS OF LIFE INSURANCE APPLIED FOR
If approved, a Life policy will be issued.

Life File Number: 0100P562
(Where Applicable)

1. Plan of Insurance: Flex   2. Amount of Insurance in US$: Fifty thousand   3. Currency:   4. Mode of Payment:   5. Amount paid with this Application ( Life ):

If plan of insurance is FLEX, indicate Death Benefit option ☐ A or ☐ B and Allocation Percentages GRA: ____% Investment Sub-Accounts ____% ( in multiples of 5% )

6. Supplementary Contracts:

| | | | | | |
|---|---|---|---|---|---|
| ☐ WP | ____ | M.A.R., R.S.B. ____ / Surgical ____ | Doctor's Visits ____ | | |
| ☐ PTD | ____ | L.T.R. ____ | for ____ | Years | |
| ☐ ADB | ____ | R.S.B. ____ | for ____ | Years | |
| ☐ AI | ____ | F.P.A. ____ | for ____ | Years | |
| ☐ WCC | ____ | IBR ____ | for ____ | Years | |

Non-Forfeiture Options:   ☑ Automatic Premium Loan   ☐ Paid- Up   ☐ Extended Term Insurance

### C.
a. Name of Beneficiary for Life: Gabriel Antoun Coustan   Relationship: Son   Age: 19

b. Name of Beneficiary for PA ( if applied for ):   Relationship:   Age:

Unless otherwise requested, multiple certificates will share equally and the right to change the beneficiary is reserved.

### D. DETAILS OF PERSONAL ACCIDENT INSURANCE APPLIED FOR
If approved, a PA policy will be issued. Effective Date for PA must match Payment Date.

PA File Number:
(Where Applicable)

| PA BENEFITS: Currency: | Proposed Insured Class: | | Proposed Spouse Class: | | Proposed Dependent(s) | | Complete only if to be insured: |
|---|---|---|---|---|---|---|---|
| | Amount | Premium | Amount | Premium | Amount | Premium | Name of Spouse: |
| AD, PPD, PTD   ☐ DI - CC   ☐ DI - CC - FL | | | | | | | |
| Accident Disability Income | | | | | | | Date of Birth: |
| Accident Medical Reimbursement | | | | | | | Height: ____ Weight: ____ |
| A & S In-Hospital Income | | | | | | | Occupation: |
| A & S In-Hospital Surgical Expense | | | | | | | Beneficiary: |
| Lifetime Income AD, PPD, PTD Annuity | | | | | | | Relationship: |
| Other Plans or Comments | | | | | | | Dependent(s): Order Height Weight |
| TOTAL PREMIUM | Insured: ____ | | Spouse: ____ | | Each Dependant: ____ | | Mode of Payment: |
| Total Premium ( all Proposed Insureds ) | | | | No. of Dependents ____ | | | |
| Duty, Taxes & Fees | | | | Total for Dependents ____ | | | Amount Paid with this Application ( PA ) |
| Model Premium | | | | | | | |

C4M (6-87)

## E. Health Details ( Questions pertain to all proposed insureds named in the first page of this Application )

| Height ( Cm ) | Weight ( Kg ) | Weight Change in Past Year | Reason for Change | 2 Name and address of your Physician |
|---|---|---|---|---|
| 170 | 78 | | none | |

(3) a. Do you smoke cigarettes or any other form of tobacco ? — [ ] Yes / Number / Day ____ [✓] No.

b. Did you smoke cigarettes / other forms of tobacco and stopped? If yes, please state reason and date under "Remarks" below. [ ] Yes [✓] No.

(4) Have you EVER used any habit forming drugs or narcotics, consumed alcohol excessively or been treated for alcoholism or drug habits ? [ ] Yes [✓] No.

(5) Have you any physical defects or limb impairments ? [ ] Yes [✓] No.

(6) Have you EVER sought, or had, treatment or advice for any of the following :

a. asthma, tuberculosis, respiratory or lung disease ? [ ] Yes [✓] No.
b. rheumatic fever, high blood pressure, chest pain, heart murmur, disease of the heart, blood or blood vessels ? [ ] Yes [✓] No.
c. ulcer or bowel, Hepatitis, liver or gall-bladder disease ? [ ] Yes [✓] No.
d. renal stone or any disorder of the genito-urinary system, stomach or any other abdominal organ ? [ ] Yes [✓] No.
e. epilepsy, mental or nervous disorder ? [ ] Yes [✓] No.
f. diabetes, sugar in the urine, venereal disease, cancer, tumour, or any other disease, disorder or severe injury ? [ ] Yes [✓] No.
g. any form of eye, hearing or speech disorder or disease ? [ ] Yes [✓] No.
h. any disease or disorder of muscles, spine, bones, joints and limbs including loss of sensation, tremor or paralysis ? [ ] Yes [✓] No.
i. illness, operation, medical advice, hospital treatment of any other condition not mentioned above ? [ ] Yes [✓] No.

(7) Have you had any diagnostic tests such as X-ray, Ultrasonogram, C.T. scan, biopsy, electrocardiogram, blood or urine test or any other diagnostic tests ? [ ] Yes [✓] No.

(8) FEMALE ONLY

a. Are you now pregnant ? How many months ? [ ] Yes [ ] No.
b. Have you ever had any complication at childbirth or disorder of the breast or female organs ? [ ] Yes [ ] No.
c. Have you ever had a Pap Smear which you were advised to repeat within 6 months, or was found to be abnormal ? [ ] Yes [ ] No.
d. Name of Husband ?
e. Amount of insurance on Husband's Life
f. No. of children & their ages

(9) a. Are you currently receiving any form of medical treatment ? [ ] Yes [✓] No.
b. Have you been advised to have an organ transplantation ? [ ] Yes [✓] No.
c. Have you ever undergone any organ transplantation ? [ ] Yes [✓] No.
d. Do you intend to seek or have you been asked to seek medical advice, treatment, or have any medical tests performed ? [ ] Yes [✓] No.

(10) Have you received any medical advice, counselling or treatment in connection with AIDS, AIDS Related Complex or any other AIDS related condition or sexually transmitted disease, been told you have any of these; OR that you had HIV testing done. ( Please state reason & results. ) OR have you had any of the following symptoms and are still unexplained :

fatigue, weight loss, diarrhea, enlarged lymph nodes or unusual skin lesions ? [ ] Yes [✓] No.

(11) To the best of your knowledge and belief, has any member of your immediate family ever had tuberculosis, diabetes, heart or cardiovascular disease, mental disease or suffered from any AIDS related condition ? [ ] Yes [✓] No.

(12) a. Are you now a member of any military force, do you undertake / participate or expect to undertake / participate in any hazardous sport or undertaking ( examples : sky-diving, underwater diving, hand-gliding, parachuting, mountain climbing, auto, cycle or boat racing / surfing or skiing on land or water, etc. ) or flying ( other than as a fare paying passenger on a regular scheduled airline ) ? ( If yes, please complete related questionnaire ) [ ] Yes [✓] No.
b. Have you in the last 5 years engaged in such activities ? [ ] Yes [✓] No.

(13) Has any Application for insurance or reinstatement of a policy on your Life or Accident insurance ever been declined, postponed, rated or modified in any way? [ ] Yes Which Company ? [✓] No.

REMARKS : If any of the answers to questions in section E is "Yes", give full details as indicated.

| Question No. | Date | Nature of illness, Hospitals, nature of consultation, tests, results, diagnosis, treatment |
|---|---|---|
| | | Orford Hospital in 94 treated for AIDS Clinic |
| | | feb — feb 94 9,000,000 |

**Special Instructions** | **Company Endorsements Only**

DECLARATION : I HEREBY declare that I and my family members proposed for insurance are in good health and agree that except as provided in a duly executed Conditional Receipt bearing the same date and printed number as this application there shall be no contract of insurance unless a policy is issued and delivered on this application and full first premium actually paid thereon provided no change shall have occurred in the insurability of any Proposed Insured(s) since completion of this application; that all statements and answers in this application together with those in any required medical examination, questionnaire or amendments are full, complete and true and shall apply to any policy herein applied for; that no agent or medical examiner or other person except an authorized officer of the Company is permitted to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy or receipt, or to accept risks or pass upon insurability; that notice to or knowledge of any agent or medical examiner is not notice to or knowledge of the Company unless stated in either this application or in any medical examination; that no right to below; surrender or assign or change of beneficiary may be exercised by a minor; and that acceptance of any policy issued on this application shall be a ratification of any correction or changes to this application which the Company may make in the space entitled "Company Endorsements Only".

I hereby authorize any Physician, Hospital, Insurance Company or other Organization, Institution, person or body who has any records or knowledge of me or my family members proposed for insurance to give to American Life Insurance Company any and all information about me or my family with reference to any health and medical history, including hospitalisation. A photo copy of this authorization shall be as valid as the original.

**IMPORTANT : BEFORE SIGNING THIS DECLARATION PLEASE CHECK THAT THE ANSWERS GIVEN IN THIS APPLICATION ARE CORRECT, AND INCORRECT ANSWER MAY INVALIDATE THE POLICY.**

Date at Beirut 9th day of Sept. 19 95

Signature of Proposed Insured

Witness: _____

Agent | Signature of Owner if other than Proposed Insured

Only agents of the Company are authorized to accept payment of initial deposit and issue Conditional Receipt and any such payment made to an unauthorized person or without obtaining Receipt will be at the proposer's own risk.

This application is valid only if received at the main office in Lebanon on or before 30/9/1995

# Exhibit F

№    059



American Life
Insurance Company
WILMINGTON, DELAWARE, U.S.A.
INCORPORATED 1921
(Registered in Lebanon, Sal. No. 730 on 29 Nov. 1956
Governed by Decree No. 9812)
therein called the Company

### WORLDWIDE COVERAGE
### "FLEX" LIFE INSURANCE PLAN

**HEREBY INSURES** the Insured stated in the Policy Specification Schedule and agrees to pay the benefits provided herein subject to the terms and conditions hereof.

**PREMIUMS** for the Basic Policy are payable as of the Policy Date and thereafter during the lifetime of the Insured as stated in the Policy Specification Schedule.

**ADDITIONAL PREMIUMS** for any Supplementary Contracts attached hereto are payable on the same date as the premium payment date of the Basic Policy, such payments to continue until termination of such Supplementary Contracts in accordance with the terms thereof.

**THIS CONTRACT** is made in consideration of the application for this Policy and the payment, in advance, of premiums as herein provided.

**POLICY YEARS**, months and anniversaries will be determined from the Policy Date stated on the Policy Specification Schedule.

**THE BENEFITS**, provisions and conditions set forth in the Policy Specification Schedule and on this and the following pages are a part of this Contract.

**ALL SUMS** payable hereunder by or to the Company shall be payable in the currency stated in the Policy Specification Schedule and shall be paid at the office of the Company in the Country of Payment stated in the Policy Specification Schedule.

**IN WITNESS WHEREOF, AMERICAN LIFE INSURANCE COMPANY** has caused this Policy to be executed as of the date of issue stated in the Policy Specification Schedule.

Registrar

CHAIRMAN AND CHIEF EXECUTIVE OFFICER

## GENERAL PROVISIONS

### DEFINITIONS

**Policy** or **Contract** means this "Flex" Life Insurance contract between American Life Insurance Company and the Owner.

**Owner** means the person who purchased this Policy as shown in the application, unless later changed. The Owner may be someone other than the Insured Person.

**Insured** means the person whose life is covered by the Policy.

**Beneficiary** means the person(s) entitled to the Death Benefit of this Policy.

**Issue Date** means the date the Policy is issued. It may be a later date than the Policy Date. Once issued, Policy coverage is retroactive to the Policy Date. The Issue Date is used to measure contestability and suicide periods.

**Attained Age** means the Insured Person's age on the Policy Date plus the number of full years since the Policy Date.

**Maturity Date** means the Policy Anniversary following the Insured's attained age 75.

**Death Benefit** means the amount of money payable to the Beneficiary if the Insured person dies while the Policy is in force.

### THE CONTRACT; ITS PROVISIONS AND LIMITATIONS:

This Policy and the application for it, a copy of which is attached hereto and made a part hereof, together with any Supplementary Contracts applied for which are attached hereto and stated to be a part hereof, constitute the entire Contract. All statements made in applying for the Contract will be deemed, in the absence of fraud, representations and not warranties. No statement will be used to invalidate the contract nor to defend against a claim under it unless contained in the written application.

**MODIFICATIONS:** Only the Chairman of the Board, President, Vice President, Regional Vice President, Actuary, Secretary, or Registrar of the Company can make or modify this Contract, extend the time for payment of any premium, or waive any of the Company's rights or requirements.

**CHANGE IN PLAN:** This Policy may be changed to another plan of insurance with the consent of the Company, subject to such requirements and upon payment of such cost, if any, as the Company shall determine.

**INCONTESTABILITY:** This Policy, but not any part hereof granting Disability or Accident Benefits, shall be incontestable after it has been in force, during the lifetime of the Insured, for two years from its Issue Date except for non-payment of premium. In addition, if the Owner elects to increase the Basic Face Amount, the increase shall be incontestable under this Contract, after it has been in force, during the lifetime of the Insured, for two years from the effective date of the increase.

**SUICIDE:** If the Insured commits suicide, while sane or insane, within two years from the Issue Date or from the date of any reinstatement of the Policy, the insurance under this Contract shall be a sum equal to the premiums paid, less any policy loans and accrued interest, and no more.

If the Insured commits suicide, while sane or insane, within two years from the effective date of an increase in the Basic

Face Amount, the insurance under this Contract shall be a sum equal to the original Basic Face Amount plus the premium increase amount paid which is related to the Basic Face Amount increase. If such increase in the Basic Face Amount became effective within the first two years from either the Issue Date or the reinstatement, then the insurance under this Contract shall be a sum equal to the premiums paid, less any policy loans and accrued interest, and no more.

**AGE:** If the age of the insured has been under-stated, any amount payable under this Policy shall be reduced to equal the amount the premium paid would have purchased at the correct age. If the age has been over-stated, the excess of the amount of premium paid over the premium at the correct age will be refunded without interest and there will be no change in the amount payable under the Policy.

**OWNERSHIP AND RIGHTS UNDER THIS POLICY:** Subject to any statutory restrictions, all rights, privileges and options provided under the Contract not specifically granted to any other person shall be reserved to the Owner alone, if the right to change the Beneficiary has been reserved; otherwise to the Owner and Beneficiary jointly.

**CHANGES IN OWNERSHIP AND BENEFICIARY:** At any time during the continuance of this Contract, by filing written notice satisfactory to the Company:

a) the Owner may transfer his entire ownership to take effect during his lifetime; and

b) unless otherwise provided herein the Beneficiary may be changed, with or without reserving the future right to change the Beneficiary in so far as the laws governing this Policy allow. No such transfer or change will take effect unless recorded by the Company, but when so recorded shall become effective as of the date the notice was signed, subject to any payment made or other action taken by the Company before such recording.

**RIGHTS IN EVENT OF DEATH OF OWNER OR BENEFICIARY:** The rights of an Owner other than the Insured whose death occurs during the continuance of this Contract shall pass to the Insured unless otherwise provided herein. The rights of a Beneficiary whose death occurs prior to the expiration of a period of fifteen days commencing with the death of the Insured shall pass to the Owner, unless payment has been made to such Beneficiary or unless otherwise provided herein.

**ASSIGNMENT:** No assignment of this Policy, or of any interest therein, shall be binding on the Company unless recorded by the Company. Any assignment shall be subject to any payment made or other action taken by the Company before the assignment is received and recorded by the Company. The Company assumes no responsibility for the validity, effect or sufficiency of any assignment.

**BENEFICIARY:** The Beneficiary is as stated in the application, unless later changed. The Beneficiary is entitled to the Death Benefit of this Policy. One or more beneficiaries for the Death Benefit may be named in the application.

**OTHER WAYS IN WHICH THE PROCEEDS OF THIS POLICY MAY BE PAID:** The whole or part of the proceeds of this Policy may, with the Company's consent, be settled under one of the Optional methods of settlement then made available by the Company.

**TRANSFER OF RESIDENCE:** In the event the Owner takes up residence outside the country of payment specified in the

Policy Specification Schedule; in a country where the Company writes the same Policy Plan, this Policy may be transferred, at the Company's sole discretion, to the Owner's new country of residence subject to and conditional upon the Company's ability to transfer this policy's reserves to the new country of residence. Any transfer effected shall be conditional upon the Owner paying any taxes or other expenses directly resulting from such transfer; provided however, that no such transfer shall be effected if it would be in violation of any law or Government regulation then in effect.

In applying for such transfer, the Owner understands and agrees that upon transfer, the Company will convert the Basic Face Amount, premium and Cash Values, if any, of the Policy to the official currency of the Owner's new country of residence in accordance with the rules of the Company then in effect. Because local laws and business conditions vary, when a transfer is requested the Company reserves the right to condition any offer to transfer made to the Owner upon the Owner agreeing to a change in the Policy Plan, and/or Basic Face Amount and/or premiums payable.

**GENERAL AND SPECIAL PROVISIONS REGULATING THE POLICY:** The above General Provisions shall apply to the Policy as long as the Contract is in force. The following Special Provisions - PART I and PART II - shall apply to the Policy depending on the period the Contract has been in force as provided in each of PART I and PART II .

**SPECIAL PROVISIONS - PART I**

The following Special Provisions - Part I shall apply to the Policy during the first five years of the continuance of the Contract and shall be of no effect at the expiry of said period, unless the Policy, at said Date, is under one of the Options 2 or 3 of the Elective Non-Forfeiture Provisions defined herebelow under this Part.

**DEATH BENEFIT:** Subject to the provisions of this Policy, in case of death of the Insured, the Company shall pay to the Beneficiary the Basic Face Amount indicated in the Policy Specification Schedule less any debt on the Policy.

**PAYMENT OF PREMIUMS AND GRACE PERIOD:** All premiums are payable in advance, in exchange for a receipt signed by an authorized Officer of the Company. A grace period of thirty-one (31 ) days from its due date will be allowed for payment of each premium after the first, during which period the Policy will remain in force. If death occurs within the Grace period any premium then due and unpaid will be deducted in settlement of this Policy.

**LAPSE:** If at the expiration of the Grace period, the premium remains unpaid and the Policy has not yet acquired a Basic Cash Value, the Policy shall lapse and have no further value.

**GUARANTEE OF MINIMUM BASIC VALUES:** The Company guarantees that the Basic Cash Value, the Basic Reduced Paid-Up Insurance and the Extended Term Insurance period will not be less than the values shown in the attached Table for the appropriate Plan, Age and Duration. The Basic Values shown assume (1) that premiums have been paid in full to the end of the period shown and (2) that there is no existing indebtedness.

**POLICY LOANS:** The Company will lend on sole security and proper assignment of this Policy an amount not exceeding the then Loan Value. The Loan Value of this Policy is ninety percent (90%) of the amount which with interest to the end of the policy year will equal the Basic Cash Value of the Policy less any existing indebtedness. The Company reserves the right to defer the granting of a loan,

other than a loan to pay premiums, for a period not exceeding six months. Interest on the loan will accrue from day to day at a rate of interest determined by the Company, payable on each anniversary of the Policy. The Company shall have the right to redetermine the rate of interest applicable to new and existing loans. Interest not paid when due will be added to the principal of the loan upon which interest is calculated. The loan principal and accrued interest thereon will be deducted from any settlement under the Policy.

**AUTOMATIC NON-FORFEITURE PROVISION:** If, at the expiration of the Grace period, the premium remains unpaid and no non-forfeiture provision has been elected and the Policy has acquired a Basic Cash Value, the Policy will automatically continue in force as follows:

a) If the Loan Value is equal to or greater than the unpaid premium the Company will advance the premium due as an Automatic Premium Loan (APL ).

b) If the Loan Value is insufficient to cover any premium in default the Policy shall be continued in force for such proportion of the period covered by the premium due as the loan value bears to the period premium.

**ELECTIVE NON-FORFEITURE PROVISIONS:**

**OPTION 1 - CASH SURRENDER:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can surrender the Policy and receive the Basic Cash Value, less any indebtedness.

**OPTION 2 - REDUCED PAID-UP INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner can continue the Policy as nonparticipating Reduced Paid-Up Insurance for such amount as the Basic Cash Value less any indebtedness would purchase at the attained age of the Insured and on a basis determined by the Company. The Reduced Paid-Up amount will be paid at age seventy-five (75) or upon earlier death of the Insured.

**OPTION 3 - EXTENDED TERM INSURANCE:** At any time after the Policy first has a Basic Cash Value, by filing written notice satisfactory to the Company, the Owner may continue the Policy as nonparticipating Extended Term Insurance in an amount equal to the Basic Face Amount less any existing indebtedness. The period for which such Extended Term Insurance will be continued shall be such as the Basic Cash Value less any indebtedness will purchase at the attained age of the Insured.

**REINSTATEMENT:** Unless this Policy has been cash surrendered, it may be reinstated at any time within three years after default in payment of premium upon written application to the Company with the production of evidence of insurability, including good health, satisfactory to the Company together with payment of all overdue premiums and repayment or reinstatement of any loan, both with interest to the date of reinstatement at a rate of interest determined by the Company, compounded annually. In addition to the provisions of the Incontestability clause herein, a reinstated Policy shall be contestable on account of fraud or misrepresentation of material facts pertaining to the reinstatement for two years from the date of reinstatement.

**SPECIAL PROVISIONS - PART II**

The following Special Provisions - Part II shall apply to the Policy after completion of the first five years of its continuance provided the Policy is not then under Option 2

or Option 3 of the Elective Non-Forfeiture Provision stated in PART I.

DEFINITIONS:
Administrative Office: It is the Company Administrative Office.
American Life Insurance Company (ALICO)
P.O. Box: 114-5644 – Beirut – Lebanon
Fax: 603143
Telephone: 865136 – 866995 – 863457 – 802225/6/7

Monthly Anniversary means the same day as the Policy Date for each succeeding month, except that for those months not having such a day, it is the last day of that month.

Grace Period means the period of time following a Monthly Anniversary during which this Policy will continue in force while the Net Cash Surrender Value is not sufficient to cover the total monthly deduction then due.

Wealth Accumulation and Protection Account (WAPA) Value means the total amounts in the Guaranteed Return Account and the Investment Subaccounts credited to a Policy.

Guaranteed Return Account (GRA) means a division of the WAPA value established as an investment option available which guarantees a minimum investment yield. This yield is shown on the Policy Specification Schedule. Yield in excess of the guaranteed minimum may be applied in calculation of the GRA value at such increased rates as the Company may determine.

Investment Subaccount or Subaccount means a division of the WAPA Account established to invest in a particular fund and available for investment under the Policy.

Cash Surrender Value means the Wealth Accumulation and Protection Account (WAPA) Value less any applicable processing fee that would be deducted upon surrender.

Net Cash Surrender Value means the Cash Surrender Value less any Policy Loan and accrued interest thereon.

DIVIDENDS: The company will declare a Dividend to the policyholders of record on the 5th policy anniversary. The Company will declare a Dividend to policyholders of record on the 7th and 10th policy anniversaries provided that the accumulative premiums paid, less any partial surrenders are equal to or greater than all billed premium up to the 7th or 10th years, respectively.

WEALTH ACCUMULATION AND PROTECTION AC-
COUNT (WAPA) PROVISIONS

TRANSFER TO THE WEALTH ACCUMULATION AND
PROTECTION ACCOUNT: On the 5th Policy Anniversary the net cash surrender value of the Policy, and the Dividend as at the end of the 5th Policy Year, will be transferred to the Wealth Accumulation and Protection Account (WAPA) as the opening balance of the Owner's account at the beginning of the 6th Policy Year. In addition, any dividends granted after completion of the 7th and 10th Policy Years will be transferred to the WAPA. All such transfers will be allocated to the available investment options according to the Owner's allocation percentages on record with the Company at the time of transfer.

WAPA INVESTMENT OPTIONS BEGINNING IN THE 6th
POLICY YEAR

The Owner shall have the option to allocate the WAPA balance between the Guaranteed Return Account (GRA) and

any Investment Subaccounts made available at that time.

Allocations: After completion of the 5th Policy Year, this Policy provides investment options for the opening balance of the WAPA. This WAPA opening balance will be allocated to the GRA and/or any of the Subaccounts then available based on the direction of the Owner. The initial allocation percentages will be as specified in the application for this Policy. Unless these are changed by written application to the Company, such percentages shall also apply to subsequent Net Premiums. If, for any reason, no allocation percentage is specified to the company the full value of the WAPA will be allocated 100% to the GRA.

No less than 10% of a Premium, subject to the dollar minimum amounts per account set by the Company, may be allocated to any one account. Allocation percentages must be zero or in increments of 10% up to 100%. The sum of the Premium allocation percentages must equal 100%. Allocation changes are subject to charges as determined by the company.

Transfers: Upon written request to the Company's Administrative Office, the Owner may transfer amounts within the WAPA between one or more of the Subaccounts offered or to the GRA. One transfer per Policy Year may be made without charge. Additional transfers may be made for a fee as determined by the Company subject to a maximum of three transfers, and subject to minimum and maximum amounts acceptable to the company at any time.

All allocation changes or transfers will be made based upon a written request to the Administrative Office, and will take effect on the first Monthly Anniversary after receipt of the request. A request must be received no less than 15 days prior to the Monthly Anniversary, or it shall then take effect on the following Monthly Anniversary.

Minimum amounts must be maintained in the GRA or each of the Subaccounts. These minimums will be determined by the Company.

The WAPA Value: The amount of WAPA value at any time is equal to the sum of the amounts in the GRA and the subaccounts under this Policy, less monthly deductions.

The Value of the GRA: The value in the GRA at any time is equal to the amounts allocated and transferred to it, plus the monthly interest credited to it, less monthly deductions, and amounts transferred and partially surrendered from it.

The GRA's guaranteed minimum investment yield is shown on the Policy Specification Schedule. Yield in excess of the guaranteed minimum may be applied in calculation of GRA Value at such increased rates as the Company may determine.

The Value of The Investment Subaccounts: The value of a Subaccount under this Policy at any time is equal to the number of units this Policy then has in that Subaccount multiplied by the Subaccount's unit value at that time, less monthly deductions. The value of the individual units for purchase or redemption will be determined by the company.

The number of units a Policy has in a Subaccount at any time is equal to the number of units purchased minus the number of units redeemed in that Subaccount to that time. The number of units purchased or redeemed in a Policy transaction is equal to the dollar amount of the Policy transaction divided by the Subaccount's unit value on the date of the Policy transaction. A Policy transaction occurs when units of a Subaccount are either purchased or

redeemed. Amounts allocated, transferred or added to a Subaccount are used to purchase units of that Subaccount: units are redeemed when amounts are deducted, transferred, or fully or partially surrendered. Policy transactions may be made on any business day; however the unit value that applies to any transaction made will be the unit value determined by the Company on the unit valuation date.

Each Subaccount invests its assets in shares of a designated investment company or companies. The Subaccounts chosen with the initial allocations are shown on the application for this Policy. The Company may from time to time make other Subaccounts available. The Company has the right to change, add or delete designated investment companies, to add or remove Subaccounts, and to combine any two or more Subaccounts.

The Company may in its discretion execute any strategy offered to the WAPA account by investing in the securities of collective investment vehicles managed in accordance with such strategy by a Company affiliate or third party. The Company has no obligation to select a third party in lieu of an affiliated manager; in fact, it is contemplated that most strategies will be implemented with affiliated managers without any consideration whatsoever of third party managers. If the manager is an affiliate of the Company, the WAPA account will not be "double charged". However, purchasers will have no beneficial interest in any underlying investment vehicle or right of action against any underlying manager.

The Investment Subaccounts offered are subject to the Company's ability, in the local territory within which this policy is sold, to invest without restriction, in international mutual funds. If, at any time after the end of the fifth policy year, any of such investments are restricted and particular investment Subaccounts are not available, then the policyholder shall have the right either to allocate the WAPA balance to the GRA and/or any available, unrestricted Investment Subaccount options.

NET PREMIUMS: The Net Premium is equal to the premium paid less insurance expenses as determined by the Company. The Net Premium shall be added to the WAPA Value of the Policy and allocated between the GRA and the Subaccounts as applied for in writing by the Owner.

MONTHLY DEDUCTIONS: The Company shall deduct monthly from the WAPA value, management expenses or fees as determined by the Company, the cost of life insurance, the extra premium for substandard risk, if any, and premium for additional benefits under the Supplementary Contracts, if any, attached to the Policy. The Monthly Deductions will be made from the WAPA, proportionate to the values in the GRA and Subaccounts in relation to the full WAPA value, subject to the Dollar minimums required in each. The cost of insurance rates for lives in the standard mortality class shall not be greater than the 1980 CSO Mortality Table.

INSURANCE COVERAGE PROVISIONS

DEATH BENEFIT: Subject to the provisions of this policy, in case of death of the Insured, the Company shall pay to the Beneficiary the benefit as determined under either Death Benefit Option A or Option B below. The use of Option A or B to determine the amount payable will be based on the benefit selection made by the Owner in the application for insurance, or in effect on the date of death if a change has been made after the application date. Any Death Benefit payable shall be reduced by any applicable policy debt and/or partial

surrenders. If no selection of the Death Benefit Option in the Application for insurance or at any time prior to the date of death has been made, then the payment of benefits to the beneficiary(ies) will be applied per Option A.

Under Death Benefit Option A, The Company agrees to pay to the Beneficiary the Basic Face Amount stated in the Policy Specification Schedule, or the WAPA Value, whichever is greater.

Under Death Benefit Option B, The Company agrees to pay to the Beneficiary the Basic Face Amount Plus the WAPA Value.

CHANGING THE FACE AMOUNT OR THE DEATH BENEFIT OPTION: At any time after the 5th Policy Year, while this Policy is in force, the Owner may change the Death Benefit Option or increase or decrease the Basic Face Amount by written request to the Company at its Administrative Office. Any increase in Basic Face Amount or change from option A to option B Death Benefit may require evidence of insurability, and is subject to the Company's consent. Any increase or decrease will become effective on the Premium due date following the date of approval.

MATURITY BENEFITS: The policy will mature on the Elective Maturity Date shown on the Policy Specification Schedule. The maturity benefit shall be the WAPA value less any indebtedness. The Owner can change the elective Maturity Date of the Policy by making a written request to the Company at least 3 months prior to the Elective Maturity Date. The Elective Maturity Date cannot be earlier than 10 years from the Policy date and later than the Policy Anniversary at age 75 last birthday of the Insured.

PREMIUM: Changes in frequency and increases and decreases in the amount of premium payments may be made at any time after the 5th Policy Year by the Owner subject to the minimum and maximum amounts acceptable by the Company at that time. Premiums or payments above the billed premium may be paid subject to acceptance by the Company.

GRACE PERIOD: If the Net Cash Surrender Value on any monthly due date is insufficient to cover the next monthly deduction, a grace period of 31 days shall be allowed for the payment of a premium sufficient to cover the monthly deduction. If the Insured dies within the grace period, the amount of the overdue monthly deduction will be deducted from the proceeds.

If sufficient premium is not paid by the end of the grace period, all coverage under this Policy will terminate and the Policy will end without value.

REINSTATEMENT: If the Policy is terminated because the grace period expired without sufficient premium being paid, this Policy may be reinstated during the Insured's lifetime within 3 years after the expiry of the grace period. The reinstatement is subject to production of evidence of insurability satisfactory to the Company, together with a payment of a minimum premium sufficient to keep the Policy in force for at least 12 months. Said minimum premium shall not be less than the minimum deposit acceptable by the Company. Any Policy debt which existed at the end of the grace period will be reinstated if it is not paid. The effective date of reinstatement will be the Premium due date following the date of approval of reinstatement. The Policy cannot be reinstated if it has been surrendered by the Owner for its Net Cash Surrender Value.

### THE CASH SURRENDER VALUE OF THIS POLICY

Cash Surrender Value: The Cash Surrender Value on any date is equal to the value of the WAPA on that date less any processing fee.

Net Cash Surrender Value: The Net Cash Surrender Value is equal to the Cash Surrender Value minus any Policy Loan and accrued loan interest. The Owner may give up this Policy for its Net Cash Surrender Value at any time while the Insured Person is living. This may be done by sending a written request and this Policy document to the Company's Administrative Office. The Company will compute the Net Cash Surrender Value as of the date the request is received along with this Policy document at the Company's Administrative Office. All insurance coverage under this Policy ends on such date, and the policy shall have no further value of any kind.

Partial Surrender: The Owner may partially surrender the value in the WAPA. A partial surrender will result in a reduction in the Cash Surrender Value and in the WAPA, equal to the partial surrender amount. It shall also reduce the Basic Face Amount under Death Benefit Option A. The Owner may ask for a partial surrender by written request to the Company's Administrative Office, no more than once during a Policy Year. All requests will be subject to the Company's approval based on the rules in effect when the request is received. The partial surrender amount deducted from the WAPA is equal to the amount requested plus the expense charge and a processing fee. The Company may defer payment of the partial surrender amount for a period not exceeding 6 months.

The Owner may determine how much of each partial surrender is to come from the GRA value or from values in each of the Subaccounts. If no specific request is made, the partial surrender will be deducted from the WAPA proportionate to the values in the GRA and Subaccounts in relation to the full WAPA value, and subject to the Dollar minimums required in each. Partial surrender will not be permitted if it will result in a reduction of Basic Face Amount to less than the minimum Basic Face Amount as determined by the Company.

Such partial surrender and resulting reduction in the Basic Face Amount for Death Benefit Option A, in the Cash Surrender Value, and in the WAPA will take effect on the first

Monthly Anniversary after receipt of the request. A request must be received no less than 15 days prior to the Monthly Anniversary, or it shall then take effect on the following Monthly Anniversary.

Policy Loans: The Policy Loan provisions of Part I shall apply to this section. In addition, no loan shall be made during the first 6 Policy Months immediately following an increase in the Basic Face Amount nor will more than two loans during a Policy Year be allowed.

The request for a Policy Loan must be made in writing to the Company's Administrative Office. The Owner may determine how much of the requested loan is to be allocated to the GRA or the Subaccounts. All values for loan purposes will be determined as of the most recent valuation date. If no specific request is made, the loan deduction will be based on the proportion that the unloaned value in the GRA and the values in the Subaccounts bear to the total unloaned value in WAPA.

The loaned portion of the WAPA will be maintained as a part of the GRA. If a loaned amount is allocated to a Subaccount, units of that Subaccount, sufficient in value to cover the amount of the loan so allocated, will be redeemed and transferred to the GRA.

Loan Repayment: Repayment of all or part of a Policy loan may be made at any time while the Insured Person is alive and this Policy is in force. Any payment received during the period in which a loan is outstanding, but the policy is not within a Grace Period, will be considered a loan repayment unless the Company is advised otherwise in writing. A loan repayment will reduce the loaned portion of the WAPA.

Failure to repay a Policy loan or to pay loan interest will not terminate this Policy unless, at the beginning of a Policy Month the Net Cash Surrender Value is less than the total monthly deduction then due. In that case, the Grace Period provision will apply.

A Policy loan may have a permanent effect on the benefits under this Policy even if it is repaid.

HOW THE BENEFITS ARE PAID : The Death Benefit, Net Cash Surrender Value or the WAPA Value payable on the Maturity Date will be paid, immediately in one sum, or in another form of payment available from the Company at that time.



American Life
Insurance Company
WILMINGTON, DELAWARE, U.S.A.
(INCORPORATED 1921)
Registered in Lebanon u/s No. 7307 on 29 Nov. 1956
Governed by Decree No. 9812 of May 4, 1968

10/95

# ALICO FLEX PLAN

## Table of Basic Cash Values, Paid-Up Values and Extended Term Insurance
### (Per Each 1000 Face Amount)

| End of Year | Age 0 CV | RPU | ETI YRS | ETI Days | PE | Age 1 CV | RPU | ETI YRS | ETI Days | PE | Age 2 CV | RPU | ETI YRS | ETI Days | PE | Age 3 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 275 | 22 | 172 | 0 | 17 | 265 | 21 | 285 | 0 | 17 | 256 | 21 | 5 | 0 | 17 | 247 | 20 | 62 | 0 |
| 4 | 35 | 567 | 52 | 90 | 0 | 35 | 527 | 50 | 130 | 0 | 35 | 508 | 48 | 150 | 0 | 35 | 489 | 46 | 167 | 0 |
| 5 | 53 | 799 | 68 | 88 | 0 | 54 | 784 | 66 | 224 | 0 | 54 | 755 | 64 | 22 | 0 | 54 | 726 | 61 | 199 | 0 |

| End of Year | Age 4 CV | RPU | ETI YRS | ETI Days | PE | Age 5 CV | RPU | ETI YRS | ETI Days | PE | Age 6 CV | RPU | ETI YRS | ETI Days | PE | Age 7 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 238 | 19 | 87 | 0 | 17 | 229 | 18 | 83 | 0 | 17 | 220 | 17 | 65 | 0 | 17 | 211 | 16 | 42 | 0 |
| 4 | 35 | 471 | 44 | 163 | 0 | 35 | 452 | 42 | 152 | 0 | 35 | 434 | 40 | 144 | 0 | 36 | 429 | 39 | 161 | 0 |
| 5 | 54 | 698 | 59 | 30 | 0 | 54 | 670 | 56 | 248 | 0 | 55 | 655 | 55 | 14 | 0 | 55 | 629 | 52 | 276 | 0 |

| End of Year | Age 8 CV | RPU | ETI YRS | ETI Days | PE | Age 9 CV | RPU | ETI YRS | ETI Days | PE | Age 10 CV | RPU | ETI YRS | ETI Days | PE | Age 11 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 203 | 15 | 25 | 0 | 17 | 195 | 14 | 36 | 0 | 17 | 187 | 13 | 93 | 0 | 17 | 160 | 12 | 207 | 0 |
| 4 | 36 | 412 | 37 | 188 | 0 | 36 | 396 | 35 | 265 | 0 | 35 | 370 | 33 | 84 | 0 | 35 | 357 | 31 | 285 | 0 |
| 5 | 55 | 605 | 50 | 214 | 0 | 54 | 571 | 47 | 329 | 0 | 54 | 550 | 46 | 7 | 0 | 54 | 531 | 44 | 101 | 0 |

| End of Year | Age 12 CV | RPU | ETI YRS | ETI Days | PE | Age 13 CV | RPU | ETI YRS | ETI Days | PE | Age 14 CV | RPU | ETI YRS | ETI Days | PE | Age 15 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 173 | 12 | 17 | 0 | 17 | 167 | 11 | 281 | 0 | 17 | 161 | 11 | 202 | 0 | 17 | 156 | 11 | 189 | 0 |
| 4 | 35 | 344 | 30 | 208 | 0 | 35 | 332 | 29 | 189 | 0 | 34 | 311 | 27 | 287 | 0 | 34 | 301 | 26 | 353 | 0 |
| 5 | 54 | 512 | 42 | 243 | 0 | 53 | 486 | 40 | 214 | 0 | 53 | 469 | 39 | 65 | 0 | 53 | 453 | 37 | 298 | 0 |

| End of Year | Age 16 CV | RPU | ETI YRS | ETI Days | PE | Age 17 CV | RPU | ETI YRS | ETI Days | PE | Age 18 CV | RPU | ETI YRS | ETI Days | PE | Age 19 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 150 | 11 | 208 | 0 | 17 | 145 | 11 | 240 | 0 | 17 | 140 | 11 | 267 | 0 | 17 | 135 | 11 | 278 | 0 |
| 4 | 34 | 291 | 26 | 65 | 0 | 34 | 281 | 25 | 144 | 0 | 34 | 271 | 24 | 219 | 0 | 34 | 261 | 23 | 265 | 0 |
| 5 | 53 | 437 | 36 | 175 | 0 | 53 | 422 | 35 | 59 | 0 | 53 | 407 | 33 | 308 | 0 | 53 | 392 | 32 | 190 | 0 |

| End of Year | Age 20 CV | RPU | ETI YRS | ETI Days | PE | Age 21 CV | RPU | ETI YRS | ETI Days | PE | Age 22 CV | RPU | ETI YRS | ETI Days | PE | Age 23 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 131 | 11 | 265 | 0 | 17 | 126 | 11 | 221 | 0 | 17 | 121 | 11 | 147 | 0 | 17 | 117 | 11 | 42 | 0 |
| 4 | 34 | 252 | 22 | 340 | 0 | 35 | 249 | 22 | 214 | 0 | 35 | 240 | 21 | 234 | 0 | 35 | 231 | 20 | 247 | 0 |
| 5 | 53 | 378 | 31 | 72 | 0 | 53 | 363 | 29 | 315 | 0 | 53 | 349 | 28 | 194 | 0 | 54 | 342 | 27 | 211 | 0 |

| End of Year | Age 24 CV | RPU | ETI YRS | ETI Days | PE | Age 25 CV | RPU | ETI YRS | ETI Days | PE | Age 26 CV | RPU | ETI YRS | ETI Days | PE | Age 27 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 17 | 112 | 10 | 277 | 0 | 17 | 108 | 10 | 131 | 0 | 17 | 103 | 9 | 334 | 0 | 17 | 99 | 9 | 163 | 0 |
| 4 | 35 | 222 | 19 | 258 | 0 | 35 | 213 | 18 | 267 | 0 | 36 | 210 | 18 | 65 | 0 | 36 | 202 | 17 | 73 | 0 |
| 5 | 54 | 329 | 26 | 92 | 0 | 54 | 316 | 24 | 345 | 0 | 54 | 309 | 23 | 359 | 0 | 55 | 296 | 22 | 260 | 0 |

| End of Year | Age 28 CV | RPU | ETI YRS | ETI Days | PE | Age 29 CV | RPU | ETI YRS | ETI Days | PE | Age 30 CV | RPU | ETI YRS | ETI Days | PE | Age 31 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 18 | 101 | 9 | 162 | 0 | 18 | 97 | 8 | 337 | 0 | 18 | 93 | 8 | 145 | 0 | 18 | 89 | 7 | 322 | 0 |
| 4 | 36 | 194 | 16 | 88 | 0 | 36 | 186 | 15 | 111 | 0 | 36 | 179 | 14 | 144 | 0 | 37 | 176 | 13 | 303 | 0 |
| 5 | 55 | 284 | 21 | 173 | 0 | 56 | 278 | 20 | 201 | 0 | 56 | 267 | 19 | 135 | 0 | 55 | 256 | 18 | 85 | 0 |

| End of Year | Age 32 CV | RPU | ETI YRS | ETI Days | PE | Age 33 CV | RPU | ETI YRS | ETI Days | PE | Age 34 CV | RPU | ETI YRS | ETI Days | PE | Age 35 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 18 | 86 | 7 | 136 | 0 | 18 | 82 | 6 | 322 | 0 | 18 | 79 | 6 | 148 | 0 | 18 | 76 | 5 | 350 | 0 |
| 4 | 37 | 169 | 12 | 353 | 0 | 37 | 162 | 12 | 50 | 0 | 37 | 156 | 11 | 127 | 0 | 38 | 154 | 10 | 310 | 0 |
| 5 | 56 | 248 | 17 | 50 | 0 | 57 | 240 | 16 | 116 | 0 | 57 | 230 | 15 | 110 | 0 | 57 | 221 | 14 | 322 | 0 |

| End of Year | Age 36 CV | RPU | ETI YRS | ETI Days | PE | Age 37 CV | RPU | ETI YRS | ETI Days | PE | Age 38 CV | RPU | ETI YRS | ETI Days | PE | Age 39 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 18 | 73 | 5 | 103 | 0 | 19 | 74 | 5 | 143 | 0 | 19 | 71 | 5 | 2 | 0 | 19 | 68 | 4 | 234 | 0 |
| 4 | 38 | 148 | 10 | 47 | 0 | 38 | 142 | 9 | 163 | 0 | 38 | 136 | 8 | 296 | 0 | 38 | 134 | 8 | 148 | 0 |
| 5 | 58 | 216 | 13 | 223 | 0 | 58 | 208 | 12 | 267 | 0 | 59 | 202 | 12 | 25 | 0 | 59 | 195 | 11 | 99 | 0 |

# ALICO FLEX PLAN

### Table of Basic Cash Values, Paid-Up Values and Extended Term Insurance
(Per Each 1000 Face Amount)

| End of Year | Age 40 CV | RPU | ETI YRS | ETI Days | PE | Age 41 CV | RPU | ETI YRS | ETI Days | PE | Age 42 CV | RPU | ETI YRS | ETI Days | PE | Age 43 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 19 | 65 | 4 | 111 | 0 | 19 | 63 | 3 | 364 | 0 | 39 | 60 | 3 | 259 | 0 | 20 | 61 | 3 | 226 | 0 |
| 4 | 39 | 129 | 7 | 303 | 0 | 39 | 124 | 7 | 100 | 0 | 40 | 122 | 6 | 343 | 0 | 40 | 118 | 6 | 162 | 0 |
| 5 | 59 | 188 | 10 | 187 | 0 | 60 | 184 | 9 | 344 | 0 | 61 | 180 | 9 | 141 | 0 | 61 | 173 | 8 | 265 | 0 |

| End of Year | Age 44 CV | RPU | ETI YRS | ETI Days | PE | Age 45 CV | RPU | ETI YRS | ETI Days | PE | Age 46 CV | RPU | ETI YRS | ETI Days | PE | Age 47 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 20 | 59 | 3 | 131 | 0 | 20 | 57 | 3 | 43 | 0 | 21 | 57 | 3 | 8 | 0 | 21 | 55 | 2 | 287 | 0 |
| 4 | 41 | 116 | 6 | 42 | 0 | 41 | 112 | 5 | 240 | 0 | 42 | 110 | 5 | 126 | 0 | 43 | 109 | 5 | 14 | 0 |
| 5 | 62 | 169 | 8 | 79 | 0 | 63 | 165 | 7 | 264 | 0 | 64 | 162 | 7 | 92 | 0 | 65 | 158 | 6 | 293 | 0 |

| End of Year | Age 48 CV | RPU | ETI YRS | ETI Days | PE | Age 49 CV | RPU | ETI YRS | ETI Days | PE | Age 50 CV | RPU | ETI YRS | ETI Days | PE | Age 51 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 21 | 53 | 2 | 205 | 0 | 22 | 53 | 2 | 167 | 0 | 22 | 51 | 2 | 92 | 0 | 23 | 52 | 2 | 56 | 0 |
| 4 | 44 | 107 | 4 | 270 | 0 | 45 | 103 | 4 | 132 | 0 | 45 | 101 | 4 | 38 | 0 | 46 | 100 | 3 | 315 | 0 |
| 5 | 66 | 154 | 6 | 138 | 0 | 67 | 151 | 5 | 358 | 0 | 69 | 150 | 5 | 249 | 0 | 70 | 147 | 5 | 119 | 0 |

| End of Year | Age 52 CV | RPU | ETI YRS | ETI Days | PE | Age 53 CV | RPU | ETI YRS | ETI Days | PE | Age 54 CV | RPU | ETI YRS | ETI Days | PE | Age 55 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 23 | 50 | 1 | 357 | 0 | 24 | 50 | 1 | 326 | 0 | 24 | 48 | 1 | 271 | 0 | 25 | 49 | 1 | 245 | 0 |
| 4 | 47 | 98 | 3 | 233 | 0 | 48 | 97 | 3 | 156 | 0 | 49 | 95 | 3 | 83 | 0 | 50 | 94 | 3 | 12 | 0 |
| 5 | 71 | 143 | 4 | 362 | 0 | 73 | 142 | 4 | 267 | 0 | 74 | 139 | 4 | 152 | 0 | 76 | 138 | 4 | 62 | 0 |

| End of Year | Age 56 CV | RPU | ETI YRS | ETI Days | PE | Age 57 CV | RPU | ETI YRS | ETI Days | PE | Age 58 CV | RPU | ETI YRS | ETI Days | PE | Age 59 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 | 26 | 49 | 1 | 219 | 0 | 27 | 49 | 1 | 191 | 0 | 27 | 47 | 1 | 145 | 0 | 28 | 47 | 1 | 245 | 0 |
| 4 | 52 | 94 | 2 | 326 | 0 | 54 | 94 | 2 | 274 | 0 | 55 | 93 | 2 | 206 | 0 | 57 | 92 | 2 | 156 | 0 |
| 5 | 79 | 138 | 3 | 356 | 0 | 81 | 136 | 3 | 268 | 0 | 83 | 135 | 3 | 184 | 0 | 86 | 135 | 3 | 119 | 0 |

| End of Year | Age 60 CV | RPU | ETI YRS | ETI Days | PE |
|---|---|---|---|---|---|
| 2 | 0 | 0 | 0 | 0 | 0 |
| 3 | 29 | 47 | 1 | 91 | 0 |
| 4 | 58 | 91 | 2 | 04 | 0 |
| 5 | 88 | 133 | 3 | 46 | 0 |

10/96

## POLICY SPECIFICATION SCHEDULE

| | |
|---|---|
| POLICY NUMBER ███1563 | POLICY DATE : SEPTEMBER 9, 1997 |
| INSURED :GABRIEL ANTOUN BOUSTANI | AGE : 20 |
| OWNER :ANTOUN GEBRAN BOUSTANI | MATURITY DATE : SEPTEMBER 9, 2052 |

BENEFICIARY(IES) : AS STATED ON APPLICATION    CURRENCY OF PAYMENT: UNITED STATES DOLLARS

BASIC POLICY
FACE AMOUNT     :******100,000.00****    COUNTRY OF PAYMENT : WILMINGTON U.S.A.
ONE HUNDRED THOUSAND U.S. DOLLARS ONLY

PLAN    :FLEX PLAN (OPTION A)    BASIC PREMIUM :    **********2,150.00

SUPPLEMENTARY
CONTRACTS ATTACHED :

PREMIUM PAYABLE EVERY TWELVE MONTHS IS **********2,150.00

<<SEE WAR RISK ENDORSEMENT - FORM 984 ATTACHED HERETO>>

DATE OF ISSUE    :SEPTEMBER 19, 1997    REGISTRAR

## ENDORSEMENTS
### (TO BE MADE BY COMPANY ONLY)

1. The Company guarantees that the Minimum investment yield on the Guaranteed Return Account (GRA) will not be less than 4 1/2% per annum.

2. The Company guarantees that the Dividend to be declared at the end of the 5th Policy year shall not be less than 20% of the 5th year Cash Value.

3. The Maturity benefit of the Policy can be used to buy a pension from the Company at the rates applied by the Company at that time.

REGISTRAR

# AMERICAN LIFE INSURANCE COMPANY
## War Risk Endorsement - Form No. 984

AMENDMENT to Policy No. ████1563 _____ and Supplementary Contract Form No(s). __XXX__
____ attached thereto and forming an integral part thereof :

In this endorsement:

War means: War or War like operations ( whether war be declared or not ) or invasion, act of foreign enemy, hostilities, mutiny, riot, civil commotion, civil war, rebellion, revolution, insurrection, conspiracy, military or unsurped power, martial law or state of siege, or any of the events or causes which determine the proclamation or maintenance of martial law or state of siege.

Equivalent Lump Sum Benefit means : in respect of Term Insurance supplementary contract, its face amount. In respect of supplementary contracts providing annual benefit on death in the form of income and/or waiver of premium, 50% of such annual benefit times the period over which this benefit is payable.

## CLAUSE (1) (War Exclusion Clause)

It is hereby agreed that, notwithstanding the provisions of this Policy and any Supplementary Contract made a part thereof, ( excluding Accidental Death Benefit Supplementary Contracts ), if the Insured/Payor dies or is totally and permanently disabled as a direct or indirect consequences of war, or as a result of his directly or indirectly taking an active part in war, the Company's liability under this Policy shall be limited to the reserves under the Policy, if any, reduced by any indebtedness to the Company existing against this Policy including interest due or accrued.

## CLAUSE (2) (War Coverage Clause)

This Clause will apply only if the War Risk Endorsement Form No. 984 is endorsed on the policy specification schedule and the war premium stated therein is paid.

i)    Notwithstanding the provisions of CLAUSE (1) above, if the Insured/Payor dies as a direct or indirect consequence of war, the Company's liability under this Policy and any Supplementary Contracts made a part of this Policy shall be limited to the larger amount of :

   (a).  The reserves under the Policy, if any, and

   (b).  The aggregate of the death benefit under the Policy and the Equivalent Lump Sum Benefit under such Supplementary Contracts made a part of the Policy, if any, due at that time, provided that such an aggregate is limited to a maximum amount of     XXX     plus the reserves corresponding to the difference, if any, between the actual face amount of the Policy and the face amount of the Policy included in the said maximum amount.

   The amount payable under (a) or (b) above shall be reduced by any indebtedness to the Company existing against this Policy including interest due or accured.

   Provided that if the Insured's/Payor's death was due directly or indirectly to his taking an active part in war as defined above, the liability of the Company shall be limited only to the reserves under (a) above, if any, less any indebtedness to the Company existing against the Policy including interest due or accrued.

ii)   Notwithstanding anything to the contrary under this Policy or under any other policy ( Life, PA or Group Policy ), the total amount of the war cover granted thereunder by the Company on the life of the Insured/Payor shall not exceed in any case the maximum amount of     XXX     inclusive of any Equivalent Lump Sum Benefit.

iii)  The war coverage may be renewed from term to term on each Policy anniversary thereafter with the consent of the Company by the payment in advance of the Company's premium rate in force at the time of renewal. The effective date shall be the Policy date unless a different date is shown here.

## CLAUSE (3):

   Notwithstanding anything in the foregoing to the contrary, Clause 2 is inapplicable to and provides no War Coverage under the Company's Accidental Death Benefit Supplementary Contract and the Supplementary Contract(s) covering total and permanent disability of the Insured/Payor.

DATE :   SEPT 19, 1997



984 (10/94)

**ALICO**

**AMERICAN LIFE INSURANCE COMPANY**

☒ Medical    ☐ Non-Medical

**APPLICATION FOR LIFE AND PERSONAL ACCIDENT INSURANCE**

Agent's Code _____
Agency's / Unit's Name _____
Agent's Name _____

Application Number    0126

## A. PERSONAL DETAILS ( Please write in Block )

1. Name of Proposed Insured (shown in identification Document, underline surname / Family Name)

☐ Male  ☐ Female   Date of Birth   D D M M Y Y

2. Identification Document (I.D.) No. _____   I.D. Type _____

Age Last Birthday ___  ☐ Single  ☐ Widowed  ☐ Married  ☐ Divorced / Separated

3. Residence address: Bldg. _____   Nationality _____   Place of Birth _____
District / Area _____   Street _____
City _____

Contact Numbers
Residence _____
Office _____

4. Occupation _____ (State Exact Daily Duties) _____

Send Correspondence to  ☒ Residence  ☐ Office

5. Employer's Name _____
6. Nature of Business _____

P.O. Box / Other _____
Average Monthly Income in the past 12 months _____

7. Business Address Bldg. _____   Quarter / Area _____
Street _____   City _____   Country _____

Existing Insurance:
Policy No. _____  Company _____  Amount _____  Annual Premium _____

8. Applicant / Owner Name ( other than Insured )

Relationship of Owner to Insured: _____

## B. DETAILS OF LIFE INSURANCE APPLIED FOR
If approved, a Life policy will be issued.

Life File Number: _____ ( Where Applicable )

1. Plan of Insurance _____   2. Amount of Insurance applied _____   3. Currency _____   4. Mode of Payment _____   5. Amount paid with this Application ( Life ) _____

If plan of insurance is FLEX, indicate Death Benefit option ☐ A or ☐ B and Allocation Percentage GRA _____  Investment Sub-Account _____

6. Supplementary Contracts
☐ WP
☐ PTD
☐ ADB
☐ AI
☐ WCC

M.A.H., R.&.B. _____ / Surgical _____ Doctor's Visits _____
T.T.R. _____ for _____ Years
R.B.R. _____ for _____ Years
F.P.A. _____ for _____ Years
I.B.R. _____ for _____ Years
_____ for _____ Years

Non-Forfeiture Options  ☒ Automatic Premium Loan  ☐ Paid-Up  ☐ Extended Term Insurance

## C.
a. Name of Beneficiary for Life _____   Relationship _____   Age _____

C. a. Name of Beneficiary for PA ( if applied for ) _____   Relationship _____   Age _____

Unless otherwise requested, multiple beneficiaries will share equally, and the right to change the beneficiary is reserved.

## D. DETAILS OF PERSONAL ACCIDENT INSURANCE APPLIED FOR
If approved, a PA policy will be issued. Effective Date for PA must match Payment Date.

PA File Number: _____ ( Where Applicable )

| PA BENEFITS Currency: | Proposed Insured : Class ___ Amount | Premium | Proposed Spouse : Class ___ Amount | Premium | Proposed Dependant(s) Amount | Premium | Complete only if to be Insured : |
|---|---|---|---|---|---|---|---|
| AD, PPD, PTD ☐ DI - CC ☐ DI - CC - TL ☐ | | | | | | | Name of Spouse : |
| Accident Disability Income | | | | | | | |
| Accident Medical Reimbursement | | | | | | | Date of Birth : |
| | | | | | | | Height : ___ Weight : ___ |
| A & S In-Hospital Income | | | | | | | Occupation : |
| A & S In-Hospital Surgical Expense | | | | | | | Beneficiary : |
| Lifetime Income AD, PPD, PTD Annuity | | | | | | | Relationship : |
| Other Plans or Comments: | | | | | | | Dependant(s) : D/Birth  Height  Weight |
| TOTAL PREMIUM : | Insured: ___ | | Spouse: ___ | | Each Dependant: ___ | | Mode of Payment : |
| Total Premium ( all Proposed Insureds ) | | | | No. of Dependants ___ | | | |
| Duty, Taxes & Fees | | | Total for Dependants ___ | | | | Amount Paid with this Application (PA): |
| Modal Premium | | | | | | | |

**E. Health Details ( Questions pertain to all proposed insureds named in the first page of this Application )**

| | | | | |
|---|---|---|---|---|
| | | | | |

1. Is the proposed insured now free of any form of illness? | | Yes | No

   b) Did you ever have any other forms of disease and stopped? If yes please state reason and date of discontinuance. | | Yes

2. Have you EVER used any habit forming drugs or narcotics, consumed alcohol excessively or been treated for alcoholism or drug abuse? | | Yes

3. Have you any physical defect or mental impairment? | | Yes

4. Have you EVER sought for, had, treatment or advice for any of the following:
   a. asthma, tuberculosis, respiratory, gland disease? | | Yes
   b. irregular, low or high blood pressure, chest pain, heart murmur, disease of the heart, blood or blood vessels? | | Yes
   c. ulcer or bowel, hepatitis, liver or gall-bladder disease? | | Yes
   d. renal stone or any disorder of the genito-urinary system, stomach or any other abdominal organs? | | Yes
   e. epilepsy, mental or nervous disorder? | | Yes
   f. diabetes, sugar in the urine, venereal disease, cancer, tumour or any other disease, reasons, or severe injury? | | Yes
   g. any form of eye, hearing or speech disorder or disease? | | Yes
   h. any disease or disorder of muscles, spine, brain, joints and limbs including loss of sensation, tremor or giddiness? | | Yes
   i. illness, operation, medical advice, hospital treatment or any other condition not mentioned above? | | Yes

5. Have you had any diagnostic tests such as X-ray, Ultrasonogram, C.T. scan, biopsy, electrocardiogram, blood or urine test or any other diagnostic tests? | | Yes

6. FEMALE ONLY
   a. Are you now pregnant ? How many months ? | | Yes
   b. Have you ever had any complication at childbirth or disorder of the breast or female organs ? | | Yes
   c. Have you ever had a Pap Smear which you were advised to repeat within 6 months, or was found to be abnormal ? | | Yes
   d. Name of Husband
   e. Amount of Insurance on Husband's Life
   f. No. of children & their ages

7. a. Are you currently receiving any form of medical treatment ? | | Yes
   b. Have you been advised to have an organ transplantation ? | | Yes
   c. Have you ever undergone any organ transplantation ? | | Yes
   d. Do you intend to seek or have you been asked to seek medical advice, treatment, or have any medical tests performed ? | | Yes

10. Have you received any medical advice, counselling or treatment in connection with AIDS, AIDS Related Complex or any other AIDS related condition or sexually transmitted disease, been told you had any of these; OR that you had HIV testing done ( if Please state reason & results )
    OR have you had any of the following symptoms and are still unexplained:
    fatigue, weight loss, diarrhoea, enlarged lymph nodes or unusual skin lesions? | | Yes

11. To the best of your knowledge and belief, has any member of your immediate family ever had tuberculosis, diabetes, heart or cardiovascular disease, mental disease or suffered from any AIDS related condition? | | Yes

12. a. Are you now a member of any military forces; do you undertake / participate or expect to undertake / participate in any hazardous sport or undertaking ( examples : sky-diving, underwater diving, hand-gliding, parachuting, mountain climbing, auto, cycle or boat racing, surfing or skiing on land or water, etc. ) or flying ( other than as a fare paying passenger on a regular scheduled airline )? ( If yes, please complete related questionnaire ) | | Yes
    b. Have you in the last 5 years engaged in such activities ? | | Yes

13. Has any Application for insurance or reinstatement of a policy on your Life or Accident insurance ever been declined, postponed, rated or modified in any way ? | | Yes Which Company ?

**REMARKS : If any of the answers to questions in section E is "Yes", give final details as indicated :**

| Question No. | Date | Names of doctors, hospitals, reason or consultation, date, results, diagnosis & treatment |
|---|---|---|
| | | |
| | | |
| | | |

**Special Instructions** | **Company Endorsements Only**

DECLARATION : I HEREBY declare that I and my family members proposed for insurance are in good health and agree that receipts provided in a duly executed Conditional Receipt bearing the same date and printed number as this application, there shall be no contract of insurance unless a policy is issued and delivered on this application and full first premium actually thereon provided no change shall have occurred in the insurability of the Proposed Insured(s) since completion of the application, that all statements and answers in this application together with those in any required medical examination, questionnaire or amendments are full, complete and true and bind all parties in interest, under the policy herein applied for that no act of medical examiner or other person, except an authorized officer of the Company is permitted to make or discharge contracts or waive or change any of the conditions or provisions of application, policy or receipt; or to accept risk or pass upon insurability; that notice or knowledge of any agent or medical examiner is not notice to or knowledge of the Company as stated in either the application or in any medical examination; that no right to borrow, surrender or assign or other privilege of ownership may be exercised by a minor and that acceptance of any policy issued on this application shall be a ratification of any correction or change to this application which the Company may make in the space entitled "Company Endorsements Only".

I hereby authorize any Physician, Hospital, Insurance Company or other Organization that has any records or knowledge of me or my family members proposed for insurance to give American Life Insurance Company any and all information about me or my family with reference to our health and medical history and any hospitalization. A photo copy of this authority shall be as valid as the original.

**IMPORTANT : BEFORE SIGNING THIS DECLARATION PLEASE CHECK THAT THE ANSWERS GIVEN IN THIS APPLICATION ARE CORRECT, AN INCORRECT ANSWER MAY INVALIDATE THE POLICY**

Date at _____ this _____ day of _____ 19___   Signature of Proposed Insured

Witness _____   Signature of Parent ( if only ) for Proposed Insured
Agent.

Only agents of the Company are authorized to accept payment of initial deposit and issue Conditional Receipt and any such payment to any other person or in any other manner will not be at the proposer's own risk.

This application is valid only if received at the main office in Lebanon on or before : 30 / 9 / 1998

# Exhibit G

**MetLife**

myMetLife - Policy Summary

# Policy Summary

## Owner Information

| | | | |
|---|---|---|---|
| Policy Number: | 2896 | Insured Name: | BOUSTANI, ANTOUN GEBRAN |
| Owner Name : | BOUSTANI, ANTOUN GEBRAN    0 | Gender: | Male |
| Address: | بنك البحر المتوسط<br>شارع كليمنصو مينا الحصن | Date of Birth: | 1946 |
| Phone: | 03-760303 | Mobile Number: | |
| Country: | | Fax: | . |
| Email: | | Zip Code: | |
| Agent Information: | 052699001-HITTI NAJIB | | |

## Plan Information

| | | | |
|---|---|---|---|
| Plan Name: | Income Growth Plan | Plan Currency: | US DOLLARS |
| Coverage Amount: | 50,000.00 | Issue Date: | Jun 28, 1988 |
| Maturity Date: | Jun 28, 2022 | Payment Frequency: | Annual |
| Total Premium Due: | 1,000.00 | Planned Premium: | 0.00 |
| Total Contributions: | 26,038.12 | Last Premium Paid: | Feb 3, 2021 |
| Modal: | 1000 | Capital Growth Dividend: | 0.00 |
| Cash Account Value: | 34,032.23 | Net Cash Surrender | 0.00 |
| Premium Payment Term: | 34 Year(s) 00 Month(s) | Reversionary Bonus: | 0.00 |
| Paid to Date: | Jun 28, 2022 | Accumulated Dividend: | 0.00 |
| Status: | 41 - Terminated - Expired | Loan: | 0.00 |
| Rating: | false | Benefits: | Income Growth Plan, SUPER PROTECTOR, AIG assis services |

Note : The Net Cash Surrender value may increase or decrease depending on the value of the Unit Price which is computed as of the next unit valuation date after the request is received and processed at administrative office.

# Rider Information

| Rider # | Description | Issue Date | Maturity | Coverage | ANP | Premium | Life Extra | Status |
|---------|-------------|------------|----------|----------|-----|---------|-----------|--------|
| 01 | Income Growth | Jun 28, 1988 | Jun 28, 2022 | 50,000.00 | | 1,000.00 | | 41 |
| 02 | SUPER PROTECT | Jun 28, 2004 | Jun 28, 2017 | 25,000.00 | | 51.50 | | 13 |
| 03 | AIG assis services | Jun 28, 2004 | Jun 28, 2017 | 1.00 | | 2.45 | | 13 |


**MetLife**

myMetLife - Policy Summary

# Policy Summary

## Owner Information

| | | | |
|---|---|---|---|
| Policy Number: | ███ S486 | Insured Name: | BOUSTANI, ANTOUN GEBRAN |
| Owner Name : | BOUSTANI, ANTOUN GEBRAN | Gender: | Male |
| Address: | 868987-01 | Date of Birth: | ███ 1946 |
| | شارع كليمنصومينا الحصن | | |
| Phone: | 03/760303 | Mobile Number: | |
| Country: | | Fax: | |
| Email: | | Zip Code: | |
| Agent Information: | 052699001-HITTI NAJIB | | |

## Plan Information

| | | | |
|---|---|---|---|
| Plan Name: | Income Growth Plan | Plan Currency: | US DOLLARS |
| Coverage Amount: | 50,000.00 | Issue Date: | Aug 20, 1991 |
| Maturity Date: | Aug 20, 2021 | Payment Frequency: | Annual |
| Total Premium Due: | 1,285.00 | Planned Premium: | 0.00 |
| Total Contributions: | 33,098.94 | Last Premium Paid: | Feb 3, 2021 |
| Modal: | 1285 | Capital Growth Dividend: | 0.00 |
| Cash Account Value: | 30,779.15 | Net Cash Surrender | 0.00 |
| Premium Payment Term: | 30 Year(s) 00 Month(s) | Reversionary Bonus: | 0.00 |
| Paid to Date: | Aug 20, 2021 | Accumulated Dividend: | 0.00 |
| Status: | 41 - Terminated - Expired | Loan: | 0.00 |
| Rating: | false | Benefits: | Income Growth Plan, WAR - Rider, SUPER PROTECTOR, AIG assis services |

Note : The Net Cash Surrender value may increase or decrease depending on the value of the Unit Price which is computed as of the next unit valuation date after the request is received and processed at administrative office.

# Rider Information

| Rider # | Description | Issue Date | Maturity | Coverage | ANP | Premium | Life Extra | Status |
|---|---|---|---|---|---|---|---|---|
| 01 | Income Growth | Aug 20, 1991 | Aug 20, 2021 | 50,000.00 | | 1,185.00 | | 41 |
| 02 | WAR - Rider | Aug 20, 1991 | Aug 20, 2021 | 50,000.00 | | 100.00 | | 41 |
| 03 | SUPER PROTECT | Aug 20, 2004 | Aug 20, 2016 | 25,000.00 | | 51.50 | | 41 |
| 04 | AIG assis services | Aug 20, 2004 | Aug 20, 2016 | 1.00 | | 2.45 | | 41 |

27 JUL 2022

 **MetLife®**
Navigating life together

AMERICAN LIFE INSURANCE COMPANY
P O BOX 14-5644

BEIRUT, LEBANON

ANNUAL STATEMENT FOR THE PERIOD: 06 AUG 2021 TO 05 AUG 2022

| | |
|---|---|
| INSURED: BOUSTANI, GABRIEL ANTOINE | CURRENCY:  STATES DOLLARS |
| OWNER:  BOUSTANI, GABRIEL ANTOINE | FACE AMOUNT: 50,000.00 |
| ADDRESS: P O BOX 11-248 | ANNUAL PREMIUM: 415.00 |
| بيروت لبنان        E  03-760  ███ 5677 | BEGINNING ACCOUNT VALUE: 18,452.38 |
| 0001 | LOAN BALANCE: .00 |

POLICY NUMBER  ███ 5677
PLAN: I. P. A. PLAN
EFFECTIVE DATE: 06 SEP 1991
MATURITY DATE: 06 SEP 2052

| MONTH ENDING | PREMIUMS RECEIVED REGULAR | ADDITIONAL | EXPENSE CHARGES | INSURANCE DEDUCTIONS | INVESTMENT EARNINGS | % RATE | PARTIAL WITHDRAWALS | END OF MONTH ACCOUNT VALUE |
|---|---|---|---|---|---|---|---|---|
| 05 SEP 21 | .00 | .00 | .00 | 10.60 | 69.16 | 4.50 | .00 | 18510.94 |
| 05 OCT 21 | .00 | .00 | .00 | 11.47 | 69.37 | 4.50 | .00 | 18568.54 |
| 05 NOV 21 | .00 | .00 | .00 | 11.45 | 69.59 | 4.50 | .00 | 18626.98 |
| 05 DEC 21 | .00 | .00 | .00 | 11.43 | 69.81 | 4.50 | .00 | 18685.36 |
| 05 JAN 22 | .00 | .00 | .00 | 11.40 | 70.03 | 4.50 | .00 | 18743.99 |
| 05 FEB 22 | .00 | .00 | .00 | 11.38 | 70.25 | 4.50 | .00 | 18802.86 |
| 05 MAR 22 | .00 | .00 | .00 | 11.36 | 70.47 | 4.50 | .00 | 18861.97 |
| 05 APR 22 | .00 | .00 | .00 | 11.34 | 70.69 | 4.50 | .00 | 18921.32 |
| 05 MAY 22 | .00 | .00 | .00 | 11.32 | 70.91 | 4.50 | .00 | 18980.91 |
| 05 JUN 22 | .00 | .00 | .00 | 11.30 | 71.14 | 4.50 | .00 | 19040.73 |
| 05 JUL 22 | .00 | .00 | .00 | 11.27 | 71.36 | 4.50 | .00 | 19100.84 |
| 05 AUG 22 | .00 | .00 | .00 | 11.25 | .00 | | .00 | 19089.59 |
| | .00 | .00 | .00 | 135.57 | 772.78 | | .00 | |

GUARANTEED INVESTMENT YIELD:  4.50% PER ANNUM.

INSURANCE DEDUCTIONS INCLUDE PREMIUMS FOR THE FOLLOWING
ADDITIONAL COVERAGES ATTACHED TO YOUR POLICY:

REPRESENTATIVE:  ABOU RAHHAL ZAITER                    052099115



American Life Insurance Company   إحدى شركات MetLife, Inc.   اميكان لايف انشورنس كومباني

Commercial register no 3623 on 13 July 1954 and registered in the register of insurance companies Sub No 20 on 29 November 1956, Governed by the insurance regulation law Decree no 9812 as of May 4 1968 and its amendments. Address JMA Plaza, Consorcio Square, Verdun, Beirut-Lebanon  Contact number +9614987757 (Fax ext. 1616) and E-mail: asmetad@mobile.com

**MetLife**

myMetLife - Policy Summary

# Policy Summary

## Owner Information

| | | | |
|---|---|---|---|
| Policy Number: | 5964 | Insured Name: | BOUSTANI, ANTOUN GEBRAN |
| Owner Name : | BOUSTANI, ANTOUN GEBRAN | Gender: | Male |
| Address: | بنك البحر المتوسط | Date of Birth: | 1946 |
| | شارع كليمنصو مينا الحصن | | |
| Phone: | 01-373937 | Mobile Number: | |
| Country: | | Fax: | |
| Email: | | Zip Code: | |
| Agent Information: | 052699002-HITTI SAMI | | |

## Plan Information

| | | | |
|---|---|---|---|
| Plan Name: | Income Growth Plan | Plan Currency: | US DOLLARS |
| Coverage Amount: | 50,000.00 | Issue Date: | Jul 17, 1995 |
| Maturity Date: | Jul 17, 2022 | Payment Frequency: | Annual |
| Total Premium Due: | 1,350.00 | Planned Premium: | 0.00 |
| Total Contributions: | 37,875.67 | Last Premium Paid: | Feb 3, 2021 |
| Modal: | 1350 | Capital Growth Dividend: | 0.00 |
| Cash Account Value: | 35,747.14 | Net Cash Surrender | 0.00 |
| Premium Payment Term: | 27 Year(s) 00 Month(s) | Reversionary Bonus: | 0.00 |
| Paid to Date: | Jul 17, 2022 | Accumulated Dividend: | 0.00 |
| Status: | 41 - Terminated - Expired | Loan: | 0.00 |
| Rating: | false | Benefits: | Income Growth Plan, PAL Add-On-Triple Millenium, SUPER PROTECTOR, AIG assis services |

Note : The Net Cash Surrender value may increase or decrease depending on the value of the Unit Price which is computed as of the next unit valuation date after the request is received and processed at administrative office.

# Rider Information

| Rider # | Description | Issue Date | Maturity | Coverage | ANP | Premium | Life Extra | Status |
|---------|-------------|------------|----------|----------|-----|---------|-----------|--------|
| 01 | Income Growth | Jul 17, 1995 | Jul 17, 2022 | 50,000.00 | | 1,350.00 | | 41 |
| 02 | PAL Add-On-Triple | Jul 17, 2000 | Jul 17, 2017 | 10,000.00 | | 33.60 | | 41 |
| 03 | SUPER PROTECT | Jul 17, 2004 | Jul 17, 2017 | 25,000.00 | | 51.50 | | 41 |
| 04 | AIG assis services | Jul 17, 2004 | Jul 17, 2017 | 1.00 | | 2.45 | | 41 |

**MetLife**

myMetLife - Policy Summary

---

# Policy Summary

---

## Owner Information

| | | | |
|---|---|---|---|
| Policy Number: | ███ 1562 | Insured Name: | BOUSTANI, ANTOUN GEBRAN |
| Owner Name : | BOUSTANI, ANTOUN GEBRAN | Gender: | Male |
| Address: | ص ب 11348 | Date of Birth: | ███ 1946 |
| Phone: | 01-373937 | Mobile Number: | |
| Country: | | Fax: | |
| Email: | | Zip Code: | |
| Agent Information: | 052699002-HITTI SAMI | | |

---

## Plan Information

| | | | |
|---|---|---|---|
| Plan Name: | Flex | Plan Currency: | US DOLLARS |
| Coverage Amount: | 50,000.00 | Issue Date: | Sep 9, 1997 |
| Maturity Date: | Sep 9, 2032 | Payment Frequency: | Annual |
| Total Premium Due: | 1,824.67 | Planned Premium: | 1,812.00 |
| Total Contributions: | 43,483.60 | Last Premium Paid: | Feb 3, 2021 |
| Modal: | 1824.67 | Next Premium Due: | Sep 9, 2021 |
| Capital Growth Dividend: | 0.00 | Cash Account Value: | 48,393.27 |
| Net Cash Surrender | 48,393.27 | Premium Payment Term: | 35 Year(s) 00 Month(s) |
| Reversionary Bonus: | 0.00 | Paid to Date: | Aug 9, 2022 |
| Accumulated Dividend: | 0.00 | Status: | 20 - In force |
| Loan: | 0.00 | Rating: | false |
| Benefits: | Flex, PAL Add-On-Triple Millenium, | Policy Number: | ███ 1562 |

Note : The Net Cash Surrender value may increase or decrease depending on the value of the Unit Price which is computed as of the next unit valuation date after the request is received and processed at administrative office.

---

# Rider Information

| Rider # | Description | Issue Date | Maturity | Coverage | ANP | Premium | Life Extra | Status |
|---------|-------------|------------|----------|----------|-----|---------|-----------|--------|
| 01 | Flex | Sep 9, 1997 | Sep 9, 2032 | 50,000.00 | | 1,700.00 | | 20 |
| 02 | PAL Add-On-Triple | Sep 9, 2000 | Sep 9, 2017 | 10,000.00 | | 33.60 | | 13 |
| 03 | | Sep 9, 2014 | Sep 9, 2022 | 25,000.00 | | 112.00 | | 20 |

# MetLife

## myMetLife – Policy Summary

# Policy Summary

## Owner Information

| | | | |
|---|---|---|---|
| Policy Number: | ████1563 | Insured Name: | BOUSTANI, GABRIEL ANTOUN |
| Owner Name: | BOUSTANI, GABRIEL AMTOUN | Gender: | Male |
| Address: | P O BOX 11-348 | Date of Birth: | ████1977 |
| Phone: | 03-760303 | Mobile Number: | |
| Country: | | Fax: | |
| Email: | | Zip Code: | |
| Agent Information: | 052699002-HITTI SAMI | | |

## Plan Information

| | | | |
|---|---|---|---|
| Plan Name: | Flex | Plan Currency: | US DOLLARS |
| Coverage Amount: | 100,000.00 | Issue Date: | Sep 9, 1997 |
| Maturity Date: | Sep 9, 2052 | Payment Frequency: | Annual |
| Total Premium Due: | 2,150.00 | Planned Premium: | 2,150.00 |
| Total Contributions: | 54,494.36 | Last Premium Paid: | Feb 3, 2021 |
| Modal: | 2150 | Next Premium Due: | Sep 9, 2021 |
| Capital Growth Dividend: | 0.00 | Cash Account Value: | 80,330.52 |
| Net Cash Surrender: | 80,330.52 | Premium Payment Term: | 55 Year(s) 00 Month(s) |
| Reversionary Bonus: | 0.00 | Paid to Date: | Aug 9, 2022 |
| Accumulated Dividend: | 0.00 | Status: | 20 - In force |
| Loan: | 0.00 | Rating: | false |
| Benefits: | Flex, PAL Add-On Triple Millenium | Policy Number: | ████1563 |

Note : The Net Cash Surrender value may increase or decrease depending on the value of the Unit Price which is computed as of the next unit valuation date after the request is received and processed at administrative office.

# Rider Information

| Rider # | Description | Issue Date | Maturity | Coverage | ANP | Premium | Life Extra | Status |
|---------|-------------|------------|----------|----------|-----|---------|------------|--------|
| 01 | Flex | Sep 9, 1997 | Sep 9, 2052 | 100,000.00 | | 2,150.00 | | 20 |
| 02 | PAL Add-On-Triple | Sep 9, 2000 | Sep 9, 2047 | 10,000.00 | | 33.60 | | 13 |

# Exhibit H

# DEMEO LLP

66 Long Wharf
Boston, MA 02110

Telephone: 617-263-2600
Fax: 617-263-2300
email: mperne@demeollp.com

March 18, 2022

*Via Certified Mail and Regular Mail*

Mr. Stephen W. Gauster
Executive Vice President and General Counsel
MetLife, Inc.
200 Park Ave
New York, NY 10017

RE:    *93A Demand for Distribution on Policy Nos.* ████ *2896,* ████ *5486,* ████ *5677,* ████ *5964,* ████ *1562, and* ████ *1563*

Dear Mr. Gauster:

This firm represents Gabriel Boustani in connection with six separate life insurance policies[1] (the "Policies," attached hereto as Exhibit A) naming him and his father, Antoun Boustani, as their insured. This letter constitutes a written demand for payment of the Policies' full cash surrender value, pursuant to Section 9 of Chapter 93A of the Massachusetts General Laws ("M.G.L."). MetLife's continuing failure to honor the Policies is unacceptable and now warrants legal action.

The Policies were originally issued by the American Life Insurance Company (ALICO) between 1988 and 1997 to Antoun Boustani in Lebanon. In 2010, MetLife, Inc. ("MetLife") purchased ALICO from American International Group, Inc. ("AIG"). In 2021, Antoun Boustani, who resides part-time in Lebanon, contacted MetLife agents in Lebanon to receive distributions owed to him under the Policies, but was unsuccessful. Each of the Polices explicitly states that the Currency of Payment and Country of Payment are the United States Dollar and United States respectively.

On December 9, 2021, Antoun Boustani executed a Limited Power of Attorney (attached hereto as Exhibit B) at the United States Embassy in Lebanon granting Gabriel Boustani authority to conduct business with MetLife related to the Policies on his behalf. This was done at the suggestion of MetLife customer service representatives to facilitate an easier distribution of funds in the United States where Gabriel resides.

---

[1] The policy numbers are ████ 2896, ████ 5486, ████ 5677, ████ 5964, ████ 1562, and ████ 1563.

On January 24, 2022, also at the suggestion of MetLife customer service representatives, this firm submitted a policy surrender request (the "Request") using the appropriate MetLife form. To date, our Request has gone unanswered and our attempts to follow-up have been met with confusion and inconsistent feedback from MetLife customer services representatives. We have been unable to establish a consistent point of contact at MetLife but remain willing to work collaboratively with MetLife to find a solution.

MetLife's poor communication with its policy holder has led to needless frustration and to this 93A demand letter. If I do not hear back from you within 30 days, I will not hesitate to pursue all available remedies against MetLife, both at law and in equity, including but not limited to my client's claims for unfair and deceptive trade practices under M.G.L. c. 93A. If suit is filed against MetLife under Chapter 93A, MetLife may be liable for three times actual damages, court costs, and attorneys' fees. I look forward to hearing from you promptly so that we may resolve this matter.

Very truly yours,

Mitchell J. Perne

cc:     Joseph L. Demeo (email)
        Gabriel Boustani (email)

Date Filed 12/14/2022 10:48 AM
Superior Court - Suffolk
Docket Number 2284CV02613

LW



12/20

3

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                               Superior Court Department
                                                          of the Trial Court

GABRIEL BOUSTANI and            )
ANTOUN BOUSTANI,                )
                                )
            Plaintiffs,          )
                                )
v.                              )           Civil Action No. 2284CV02613 G
                                )
METLIFE, INC.,                  )
                                )
            Defendant.          )
                                )

### MOTION FOR SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, Plaintiffs Gabriel

Boustani and Antoun Boustani hereby move this Court to appoint the Constable Offices of

Desrosiers & Associates, LLC ("Desrosiers"), of Cambridge, Massachusetts (an entity who

employs individuals over the age of 18 who are disinterested parties), as Special Process Server to

serve all documents requiring service of process on the Defendant in the above-captioned case.

As grounds for this Motion, the Plaintiffs state that Desrosiers will effect swift service on the

Defendant, which will assist in resolving this case fairly and efficiently.

NOTICE SENT
12.  .22

1